Ilonka Aylward
v.
City of Charlotte
and
Charlotte-Mecklenburg Stormwater Services (a.k.a. "Charlotte Stormwater Services,"
a.k.a. "Charlotte/Mecklenburg Storm Water," a.k.a. "Charlotte Storm Water Services,"
a.k.a. "City of Charlotte Storm Water Services")
and
Armstrong Glen, P.C.
and
Joseph ("Josh") H. Letourneau, P.E.

**Ilonka Aylward's Complaint**

# Exhibit 3



**CHARLOTTE** ㎰

# CONTRACT FOR
# ENGINEERING SERVICES

**PROJECT:**

Various Storm Water Services

**OWNER:**

City of Charlotte
c/o Engineering and Property Management

**ENGINEER:**

Armstrong Glen, P.C.

1

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **ARTICLE 1** | Description | 3 |
| **ARTICLE 2** | Engineer's Responsibilities | 3 |
| **ARTICLE 3** | Scope of Services | 4 |
| **ARTICLE 4** | Time of Beginning and Completion | 4 |
| **ARTICLE 5** | Personnel | 5 |
| **ARTICLE 6** | Points of Contact; Notification | 5 |
| **ARTICLE 7** | Compensation and Payments | 8 |
| **ARTICLE 8** | Items to be Furnished by the City | 11 |
| **ARTICLE 9** | Insurance | 11 |
| **ARTICLE 10** | Quality Control Program | 12 |
| **ARTICLE 11** | Ownership and Use of Work Products | 13 |
| **ARTICLE 12** | Termination | 14 |
| **ARTICLE 13** | Covenants and Representations | 17 |
| **ARTICLE 14** | Indemnification | 18 |
| **ARTICLE 15** | General Compliance with Laws | 19 |
| **ARTICLE 16** | Drug Free Work Place Requirement | 20 |
| **ARTICLE 17** | Miscellaneous Conditions | 21 |
| **ARTICLE 18** | Small Business Opportunity Program | 25 |
| **ARTICLE 19** | Commercial Non-Discrimination Policy | 29 |
| **ARTICLE 20** | Publicity and Statements to the Press | 30 |
| **ARTICLE 21** | Payment Affidavits | 31 |

## EXHIBITS

| | |
|---|---|
| **EXHIBIT 1** | Scope of Services – *Reserved* |
| **EXHIBIT 2** | Fee Schedule/Breakdown |
| **EXHIBIT 3** | Schedule |
| **EXHIBIT 4** | Organization Chart |
| **EXHIBIT 5** | Small Business Opportunity Program |
| **EXHIBIT 6** | Commercial Non-Discrimination Certification |
| **EXHIBIT 7** | Performance Expectations |

2

## CONTRACT FOR ENGINEERING SERVICES

**THIS CONTRACT**, made and entered into this _28_ day _November,_ 2011, ("Effective Date"), by and between the **CITY OF CHARLOTTE**, a North Carolina municipal corporation ("City"), and **ARMSTRONG GLEN, P.C.,** a South Carolina corporation with offices in Charlotte, North Carolina ("Engineer").

## GENERAL RECITALS

**WHEREAS**, the City desires to engage the Engineer to provide professional engineering services as outlined hereinafter upon the terms and conditions as set out herein;

**WHEREAS**, the City is authorized by the City Council to enter into a Contract for performance of such services;

**NOW THEREFORE**, the City and the Engineer, for consideration hereinafter stipulated, mutually agree that the Engineer shall perform the services provided under this Contract and shall do, perform and carry out in a satisfactory manner, as determined by the City, the following:

## AGREEMENT

## ARTICLE 1 – DESCRIPTION

This Contract is for professional engineering services (the "Services") for various unspecified storm drainage projects (collectively, the "Project").

## ARTICLE 2 – ENGINEER'S RESPONSIBILITIES

Upon receipt of a written Notice to Proceed, Engineer shall:

    a.    Provide for the City professional services in all phases of the Project to which this Contract applies;

    b.    Serve as City's design professional for the Project as directed by the City's Project Manager;

3

c.       Furnish professional consultation and advice and furnish customary civil, structural, and environmental engineering services incidental to the Project;

d.       Review available data and consult with City to clarify and define City's requirements;

e.       Obtain that information, conduct those investigations, and undertake other reasonable efforts necessary for the Engineer to become conversant with the philosophy and purpose of the Project and to carry out its responsibilities;

f.       Provide construction administration services; and

g.       Identify and analyze requirements of governmental authorities having jurisdiction and assist the City in obtaining required approval from such authorities.

## ARTICLE 3 – SCOPE OF SERVICES

The City will specify services to be performed by the Engineer in the form of written task orders. The Engineer will acknowledge all such written task orders within 24 hours of receipt and complete all services within the timeframe stated in each individual task order.

A task order scope will be provided to the Engineer and will be the basis of negotiations between the City's Project Manager and the Engineer regarding the fee, scheduling the proposed task, personnel and labor hours, an itemized list of deliverables, and other expenses (such as reimbursables) deemed necessary to accomplish the proposed work. Cost of services will be based on the hourly rates provided in **Exhibit 2**. This Contract does not grant the Engineer exclusive right to provide the specified services to the City. Similar services may be obtained from sources other than the Engineer at the discretion of the City.

## ARTICLE 4 – TIME OF BEGINNING AND COMPLETION

This Contract shall commence on the Effective Date and shall continue in full force until **December 31, 2016**, unless sooner terminated or extended in accordance with the

provisions of this Contract. All services shall be completed in accordance with the schedule provided in each respective task order. At the City's option, this Contract may be renewed twice by entering into a written amendment with the Engineer.

## ARTICLE 5 – PERSONNEL

The key personnel listed in the Engineer's organizational chart (**Exhibit 4**) shall be assigned to the Project until completion. No changes in Engineer's key personnel shall be made without prior written approval of the City.

The Engineer shall submit, for approval by the City, organization charts and qualifications of personnel for any portions of the work subcontracted to other firms. No changes in the personnel of subcontracting firms shall be made without prior written approval by the City.

5.1 *Addition, Removal and Replacement of Personnel*
The City has the right to require any additional personnel that the City deems necessary to maintain the Project schedule. The City also has the right to require removal and replacement of any personnel deemed unsatisfactory by the City.

5.2 *Subconsultant Employees*
For purposes of this section, Engineer's "employees" shall include employees and independent contractors of any subconsultant(s). The Engineers' employees and independent contractors who normally and regularly come in direct contact with the public shall be clearly identifiable by name badges, nametags, or identification cards.

## ARTICLE 6 – POINTS OF CONTACT; NOTIFICATION

6.1 *City's Point of Contact*
The City will designate a Project Manager who is authorized to act in the City's behalf with respect to the Project, except as otherwise limited by this Contract. The Project Manager will examine the documents submitted by the Engineer and will expedite decisions concerning the documents in order to avoid unreasonable delay in the progress of the Engineer's Services. The Project Manager will coordinate all communication between the Engineer and the City unless otherwise specified in writing. The Engineer shall contact the Project Manager prior to all meetings involving City personnel.

5

The City's Point of Contact is:

Amy Bice
Engineering & Property Management
City of Charlotte
600 E. 4th Street
Charlotte, NC  28202
Phone:  704-432-0965
Fax:  704-353-0473
Email:  abice@charlottenc.gov

6.2  ***Engineer's Point of Contact***

The duties of the Engineer's Point of Contact include, but are not limited to:

- Coordinating Services and the Engineer's resource assignments based on the City's requirements;
- Providing consultation and advice to the City on matters related to the Services and the Project and acting as a conduit to the Engineer's specialist resources that may be needed to supplement the Engineer's regular staff;
- Acting as the Engineer's point of contact for all aspects of contract administration, including invoicing for services, and status reporting;
- Facilitating meetings and conferences between the City and the Engineer's staff when scheduled or requested by the City;
- Communicating among and between the City and the Engineer's staff;
- Promptly responding to the City's Project Manager when consulted in writing with respect to Service deviation and necessary documentation;
- Identifying and providing the City with written notice immediately after the Engineer becomes aware of any issue that may threaten the delivery of Services in the manner contemplated by this Contract; and
- Ensuring that adequate quality assurance procedures are in place for the performance of Services.

The Engineer's Point of Contact is:

William H. Armstrong, PE
Armstrong Glen, P.C.

6

9731-L Southern Pine Blvd.

Charlotte, NC  28273

Telephone:  704-529-0345

Fax:  704-529-0493

Email:  warmstrong@armstrongglen.com

6.3 **_Notices_**

Any notice, consent or other formal communication required or contemplated by this Contract shall be in writing and shall be delivered in person, by U.S. mail, by overnight courier, by electronic mail or by telefax to the intended recipient at the address set forth below:

**For the City:**

Engineering & Property Management

City of Charlotte

600 East Fourth Street

Charlotte, NC  28202

Attn:  Jennifer Smith, PE

Phone: 704-336-7924

Fax: 704-353-0473

Email:  jgsmith@charlottenc.gov

**For the Engineer:**

Armstrong Glen, P.C.

9731-L Southern Pine Blvd.

Charlotte, NC  28273

Attn:  William Armstrong, PE

Telephone:  704-529-0345

Fax:  704-529-0493

Email:  warmstrong@armstrongglen.com

Notice shall be effective upon the date of receipt by the intended recipient, provided that any notice that is sent by telefax or electronic mail shall also be simultaneously sent by mail deposited with the U.S. Postal Service or by overnight courier.  Each party may change its address for notification purposes

7

by giving the other party written notice of the new address and the date upon which it shall become effective.

## ARTICLE 7 – COMPENSATION AND PAYMENTS

7.1 ***Hourly and Unit Price Basis Allowances***
The Engineer shall be compensated for actual work performed on an hourly and unit price basis for the services listed in this Contract using the fee schedule in **Exhibit 2**; provided, however, that the total of payments to the Engineer shall not exceed **$1,000,000**.

7.2 ***Allowance for Additional Services*** - Reserved

7.3 ***Allowance for Reimbursable Expenses***
Reimbursable expenses shall be limited to the actual expenditures made by the Engineer during the performance of the work. The following expenses may be reimbursed at cost:

7.3.1. *Travel*
a. Vehicular transportation at the rate established by the Internal Revenue Service current at the time the travel occurs. The rate effective as of July 1, 2011 is $0.55 per mile; and
b. Parking fees.

7.3.2. *Communications*
a. Long-distance phone call expenses;
b. FAX expenses; and
c. Postage including express mail costs for sending Project documents.

7.3.3 *Permitting Fees*
Permit costs and fees paid for securing approval of authorities having jurisdiction over the Project.

8

7.3.4 *Reprographics*
  a. Copying and binding expenses for drawings, specifications, reports and other Project documents;
  b. Photography as approved by the City's Project Manager; and
  c. Renderings and models requested by the City if not specifically included in basic services.

7.4 **Summary of Fees and Allowances**

The maximum cumulative amount paid to the Engineer pursuant to this Contract for all services performed and all reimbursable expenses shall not exceed **$1,000,000**.

7.5 **Invoices**

Payment of the fees provided for under this Contract will be made to the Engineer on a monthly basis upon submission of an invoice stating the nature and quantity of work performed and accompanied by proper supporting documentation as the City may require, including a Monthly Project Status Report (see **Exhibit 7**). Any hourly basis fees and reimbursable expenses shall be itemized on each invoice. Payments will be made within 30 calendar days of the date of receipt of a correct payment request. A correct payment request is defined as an invoice that indicates only those work items that have been satisfactorily completed and accepted by the City. The Engineer waives the right to payment for all services that are not invoiced to the City within 90 days after the date on which they have been completed.

In order to assure timely payment, submit invoices in one of the following ways (send one copy only of each invoice with either option that is selected):

Option 1: Email invoices to cocap@charlottenc.gov. If this option is chosen, **do not** mail invoices. When emailing the invoice(s), the address is to be formatted the same as Option 2 below.

Option 2: Mail invoices to:
City of Charlotte Accounts Payable Department
Attn: E&PM – Amy Bice
P.O. Box 37979

9

Charlotte, NC  28237-7979

Each invoice shall include the contract number and shall be accompanied by a sales tax statement.

7.5   ***Cost Overruns***

If it appears during the course of the work that any of the estimated fees and allowances may be exceeded, the Engineer shall immediately notify the City's Project Manager in writing.  The estimated fees and allowances shall not be exceeded except by written amendment to this Contract.  Any work performed without prior written approval shall be at the Engineer's expense.

7.7   ***Accounting and Auditing***

The Engineer shall maintain complete and accurate records, using Generally Accepted Accounting Practices (GAAP), of all costs related to this Contract. Such records shall be open to inspection and subject to audit and/or reproduction, during normal working hours, by the City's agent or authorized representative to the extent necessary to adequately permit evaluation and verification of any invoices, payments, or claims submitted by the Engineer or any of his payees in connection with this Contract.  Records subject to examination will include, but are not limited to, those records necessary to evaluate and verify direct and indirect costs (including overhead allocations) as they may apply to costs associated with this Contract

For the purpose of such inspections, the City's agent or authorized representative shall have access to said records from the Effective Date of this Contract, for the duration of the Services, and until three (3) years after the date of final payment by the City to the Engineer pursuant to this Contract.

The City's agent or authorized representative shall have access to the Engineer's facilities and shall be provided an adequate and appropriate work place, in order to conduct audits in compliance with this Article.  The City will give the Engineer reasonable advance notice of planned inspections.  If, as the result of an audit hereunder, the Engineer is determined to have charged the City for amounts that are not allocable or verifiable, the Engineer shall promptly reimburse the City for said amount.

10

7.8 **Withholding of Periodic Payments**

The parties agree that the City shall be entitled to withhold periodic payments and final payment due to the Engineer under this Contract until the City has received in a form satisfactory to the City all claim releases and other documentation required by the City's Small Business Opportunity Program.

## ARTICLE 8 – ITEMS TO BE FURNISHED BY THE CITY

At the request of the Engineer and in connection with providing the services, the City will furnish the following items and/or services either directly or indirectly to the Engineer at no cost:

a. A reproducible set of readily available City standard drawings and details applicable to the Project.

b. Access to facilities to perform any inspections required in the development of the plans for the Project.

c. Background information on the Project.

## ARTICLE 9 – INSURANCE

The Engineer shall purchase and maintain during the life of this Contract with an insurance company acceptable to the City and authorized to do business in the State of North Carolina the following insurance:

9.1 *Automobile Liability*

Bodily injury and property damage liability covering all owned, non-owned and hired automobiles for limits of not less than $1,000,000 bodily injury each person, each accident and $1,000,000 property damage, or $1,000,000 combined single limit each occurrence/aggregate.

9.2 *Commercial General Liability*

Bodily injury and property damage liability as shall protect the Engineer and any subcontractor performing work under this Contract from claims of bodily injury or property damage which arise from operation of this Contract whether such operations are performed by Engineer, any subcontractor or any person directly or indirectly employed by either. The amounts of such insurance shall not be less than $1,000,000 bodily injury each occurrence/aggregate and $1,000,000 property damage each occurrence/aggregate or $1,000,000 bodily injury and property damage combined single limits each occurrence/aggregate. This

11

insurance shall include coverage for products/completed operation, personal injury liability and contractual liability assumed under the indemnity provision of this Contract.

9.3 **Workers' Compensation Insurance**

   Meeting the statutory requirements of the State of North Carolina and Employers Liability - $100,000 per accident limit, $500,000 disease per policy limit, $100,000 disease each employee limit, providing coverage for employees and owners.

9.4 **Professional Liability Insurance**

   In an amount of not less than $1,000,000 each claim and $1,000,000 aggregate.

The City shall be exempt from, and in no way liable for, any sums of money that may represent a deductible in any insurance policy. The payment of such deductible shall be the sole responsibility of the Engineer and/or subconsultant providing such insurance.

The City of Charlotte shall be named as additional insured under the commercial general liability insurance for operations and services rendered under this Contract. Certificates of all required insurance shall be furnished to the City and shall contain the provision that the City will be given 30 day written notice of any intent to amend or terminate by either the insured or the insuring company.

If any part of the work under this Contract is sublet, the subconsultant shall be required to meet all insurance requirements set forth in this Contract. Nothing contained herein shall relieve the Engineer from meeting all insurance requirements or otherwise being responsible for the subconsultant.

## ARTICLE 10 – QUALITY CONTROL PROGRAM

The Engineer shall establish and follow a quality control program throughout the Project's progress. The Quality Control Program will identify review personnel and describe the procedures to be used to confirm, to independently check, and to review all drawings, reports, designs, specifications and other documentation prepared, as well as any function, activity, or task as part of this Contract. The Quality Control Program will specify the manner for documenting the check and review processes, recording required procedures, and confirmation of work activities. It will provide for internal

12

reviews and will detail the frequency and types of reviews to be conducted for the specific job to comply with quality standards. Within 30 days after receiving a notice to proceed, the Engineer shall submit a written Quality Control Program, to address all quality assurance/quality control issues in connection with the Project, for review and approval by the City's Project Manager.

Throughout the project development, the Engineer will maintain quality control procedures as covered in the approved Quality Control Program and documentation of the Engineer's internal design reviews for inspection by the City's Project Manager. The City's Project Manager will have the option to review planning and design documents in the Engineer's office periodically to verify that proper quality control procedures are employed in the development process.

## ARTICLE 11 – OWNERSHIP AND USE OF WORK PRODUCT

The City shall have exclusive ownership of all intellectual property rights in all designs, plans and specifications, documents and other work product prepared by, for or under the direction of the Engineer pursuant to this Contract (collectively, the "Design Work"), including without limitation the right to copy, use, disclose, distribute, and make derivations of the Design Work for any purpose or to assign such rights to any third party. The Design Work shall be prepared in the City's name and shall be the sole and exclusive property of the City, whether or not the work contemplated therein is performed. The City grants the Engineer a royalty-free, non-exclusive license to use and copy the Design Work to the extent necessary to perform this Contract. The Engineer shall not use or release any component of the Design Work by the Engineer to any other person, firm or corporation for any purpose other than performance of this Contract without the written approval of the City.

The Engineer hereby assigns and transfers all rights in the Design Work to the City. The Engineer further agrees to execute and deliver, and to cause its subconsultants and subcontractors to execute and deliver, such assignments and other documents as the City may later require to perfect, maintain and enforce the City's rights as sole owner of the City Intellectual Property, including all rights under copyright law. The Engineer hereby appoints the City as attorney in fact to execute all such assignments and instruments and agrees that its appointment of the City as an attorney in fact is coupled with an interest and is irrevocable.

13

The Engineer represents and warrants that the Design Work will not infringe or misappropriate the intellectual property or other rights of any person or entity, and that the City shall have the unrestricted right to use the Design Work for any purpose. The Engineer further represents and warrants that it has the right to grant the rights granted to the City in this Article on behalf of the Engineer's subconsultants and subcontractors.

11.1 **Work Product, Internet and CADD Related Liability**

The City recognizes that the Work Product may be generated, stored, transmitted or published in various media, including, but not limited to traditional hard-copy (i.e., blue prints), CADD formats, via Internet or Extranet websites or other electronic or other media and such Work Product may be subject to unauthorized tampering, modifications and alterations (collectively hereinafter referred to as "Unauthorized Use") by parties over whom the Engineer has no control. The Work Product is also subject to discrepancies as a result of numerous factors, including without limitation, transmission and translation errors resulting from differences in computer software, hardware and equipment-related problems, disk malfunctions, and user error (collectively hereinafter referred to as "Discrepancies").

Accordingly, the Engineer has no responsibility for any Discrepancies in the Work Product that are beyond the Engineer's reasonable control. The Engineer shall maintain a hard copy of the Work Product for three (3) years from the date it completes all work under this Contract. If requested, the Engineer shall provide the City with the Work Product in electronic form, and the City agrees to release the Engineer, from all claims, causes of action, suits, demands and damages, arising from or relating to any Discrepancies in such Work Product that are beyond the Engineer's reasonable control.

## ARTICLE 12 – TERMINATION

12.1 **Termination for Convenience**

The City may terminate this Contract for any reason or no reason by giving written notice of termination at least thirty (30) days before the date of termination. The notice shall specify the date upon which such termination becomes effective and the City shall pay the Engineer for Services rendered prior to the effective date of termination.

14

## 12.2  *Termination for Default*

By giving written notice, either party may terminate this Contract if the other party violates or fails to perform any covenant, provision, obligation, term, or condition contained in this Contract, provided that, unless otherwise provided in this Contract, such failure or violation shall not be cause for termination if the defaulting party cures such default (if the default is susceptible to cure) within thirty (30) days of receipt of written notice of default from the other party.  Any notice of default shall state the party's intent to terminate this Contract if the default is not cured within the specified time period.

## 12.3  *Additional Grounds for Termination by the City*

The City may terminate this Contract immediately by written notice to the Engineer upon the occurrence of one or more of the following events each of which shall also constitute a non-exclusive Event of Default:

a.  The Engineer makes or allows to be made any material written misrepresentation or provides any materially misleading written information in connection with this Contract, the Engineer's Proposal, or any covenant, agreement, obligation, term, or condition contained in this Contract; or

b.  The Engineer takes or fails to take any action which constitutes grounds for immediate termination under the terms of this Contract, including but not limited to failure to obtain or maintain the insurance policies and endorsements as required by this Contract, or failure to provide the proof of insurance as required by this Contract; or

c.  The Engineer ceases to do business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay debts as they become due, files a petition in bankruptcy or has an involuntary bankruptcy petition filed against it (except in connection with a reorganization under which the business of such party is continued and performance of all its obligations under this Contract shall continue), or if a receiver, trustee or liquidator is appointed for it or any substantial part of the other party's assets or properties.

15

12.4 **Obligations Upon Expiration Or Termination**

Upon expiration or termination of the Contract, the Engineer shall promptly provide or return to the City:

a.      All Deliverables, in whatever form;

b.      Documentation to evidence completion of matters covered by this Contract and setting forth progress in developing the Deliverables to the date of termination; and

c.      All equipment, materials, documents, or data, whether in written, graphic, machine readable or other form, supplied by the City in connection with this Contract, in as good condition as when delivered, reasonable wear and tear excepted.

Upon the request of the City, the Engineer agrees to provide reasonable assistance and cooperation to the City and City contractors for a period of up to twelve (12) months after expiration or termination of this Contract at its then-current rates.

12.5 **No Effect On Taxes, Fees, Charges Or Reports**

Any termination of this Contract shall not relieve the Engineer of the obligation to pay any fees, taxes, or other charges then due to the City, nor relieve the Engineer of the obligation to file any daily, monthly, quarterly, or annual reports covering the period to termination nor relieve the Engineer from any claim for damages previously accrued or then accruing against the Engineer.

12.6 **Substitute Performance**

In the event the Engineer fails to perform any part of the Scope of Services within the time frame set forth in this Contract without good cause, then, without limiting any other remedies available to the City, the City may take either or both of the following actions:

a.      Employ such means as it may deem advisable and appropriate to continue work until the matter is resolved and the Engineer is again able to carry out operations under this Contract; and

16

b.     Deduct any and all operating expenses incurred by the City from any money then due or to become due the Engineer and, should the City's cost of continuing the operation exceed the amount due the Engineer, collect the amount due from the Engineer.

12.7    **Cancellation of Orders and Subcontracts**

In the event this Contract is terminated by the City for any reason, the Engineer shall upon the effective date of termination (unless the City's notice of termination directs otherwise), immediately discontinue all service in connection with this Contract and promptly cancel all existing orders and subcontracts which are chargeable to this Contract. As soon as reasonable after receipt of notice of termination, the Engineer shall submit a statement to the City showing in detail the services performed under this Contract to the date of termination.

12.8    **Other Remedies**

Upon termination of this Contract, each party may seek all legal and equitable remedies to which it is entitled. The remedies set forth herein shall be deemed cumulative and not exclusive and may be exercised successively or concurrently, in addition to any other available remedies.

12.9    **Authority to Terminate**

The City Engineer will have authority, without the necessity of further action by City Council, to terminate this Contract on behalf of the City.

## ARTICLE 13 – COVENANTS AND REPRESENTATIONS

13.1    The Engineer covenants and represents that it shall exercise a customary degree of care and diligence in performing all services under this Contract. The Engineer shall render services under this Contract in accordance with the customary professional standards prevailing in the Mecklenburg County area.

13.2    The Engineer further covenants and represents that (i) the services performed by it under this Contract do not violate any contracts with third parties or any third party rights in any patent, trademark, copyright, trade secret or similar right, (ii) that the services performed hereunder shall be performed in a professional manner and by qualified staff and shall satisfy the requirements set forth in this

17

Contract, and (iii) that it has sufficient expertise and resources to perform under this Contract.

13.3    The Engineer further represents and covenants that:

    a.    It is validly existing and in good standing under the laws of North Carolina;

    b.    It has all the requisite power and/or authority to execute, deliver and perform its obligations under this Contract;

    c.    The execution, delivery, and performance of this Contract have been duly authorized by the Engineer;

    d.    No approval, authorization, or consent of any governmental or regulatory authority is required to be obtained or made by it in order for it to enter into and perform its obligations under this Contract; and

    e.    In connection with its obligations under this Contract, it shall comply with all applicable federal, state and local laws and regulations and shall obtain all applicable permits and licenses.

13.4    Any defective designs, specifications, plats or surveys furnished by the Engineer and any failure of any services performed by the Engineer to comply with any requirements set forth in this Contract shall be promptly corrected by the Engineer at no cost to the City. The City's approval, acceptance, use of, or payment for all or any part of the Engineer's services or of the Project itself shall in no way alter the Engineer's obligations or the City's rights under this Contract.

## ARTICLE 14 – INDEMNIFICATION

To the fullest extent permitted by law, the Engineer shall indemnify, defend and hold harmless each of the "Indemnitees" (as defined below) from and against any and all "Charges" (as defined below) paid or incurred any of them as a result of any claims, demands, lawsuits, actions, or proceedings: (i) alleging violation, misappropriation or infringement of any copyright, trademark, patent, trade secret or other proprietary rights with respect to the Work or any products or deliverables provided to the City pursuant to this Contract ("Infringement Claims"); (ii) seeking payment for labor or materials purchased or supplied by the Engineer or its subcontractors in connection with this Contract; or (iii) arising from the Engineer's failure to perform its obligations under this Contract, or from any act of negligence or willful misconduct by the Engineer or any of its agents, employees or subcontractors relating to this Contract, including but not

18

limited to any liability caused by an accident or other occurrence resulting in bodily injury, death, sickness or disease to any person(s) or damage or destruction to any property, real or personal, tangible or intangible; or (iv) alleging violation of any federal, state or local law or regulation by the Engineer or any of the Engineer's subcontractors; or (v) alleging that an employee or subcontractor of the Engineer is an employee of the City, including but not limited to claims relating to worker's compensation, failure to withhold taxes and the like. For purposes of this Section: (a) the term "Indemnitees" means the City and each of the City's officers, officials, employees, agents and independent contractors (excluding the Engineer); and (b) the term "Charges" means any and all losses, damages, costs, expenses (including reasonable attorneys' fees), obligations, duties, fines, penalties, royalties, interest charges and other liabilities (including settlement amounts).

If an Infringement Claim occurs, the Engineer shall either: (i) procure for the City the right to continue using the affected product or service; or (ii) repair or replace the infringing product or service so that it becomes non-infringing, provided that the performance of the overall product(s) and service(s) provided to the City shall not be adversely affected by such replacement or modification. If the Engineer is unable to comply with the preceding sentence within thirty days after the City is directed to cease use of a product or service, the Engineer shall promptly refund to the City all amounts paid under this Contract.

## ARTICLE 15 – GENERAL COMPLIANCE WITH LAWS

The Engineer shall comply with all Federal, State, and local laws, ordinances, and regulations applicable to the services provided herein. If, due to conflicts between two or more such ordinances, statutes, laws, rules, and regulations (the "Regulations") or due to conflicts in the interpretation or enforcement of such Regulations by courts or governing bodies having jurisdiction over the project, the Engineer is unable to comply with such Regulations, the Engineer shall exercise usual and customary professional care in complying with such conflicting Regulations.

The Engineer further agrees that it will at all times during the term of this Contract be in compliance with all applicable Federal, State and/or local laws regarding employment practices. Such laws include, but shall not be limited to workers' compensation, the Fair Labor Standards Act (FSLA), the Americans with Disabilities Act (ADA), the Family

and Medical Leave Act (FMLA), and all Occupational Safety and Health Administration (OSHA) regulations applicable to the work.

## ARTICLE 16 – DRUG FREE WORKPLACE REQUIREMENT

The Engineer shall provide a drug-free workplace during the performance of this Contract. This obligation is met by:

a.  Notifying employees that the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance is prohibited in the Engineer's workplace and specifying the actions that will be taken against employees for violations of such prohibition;

b.  Establishing a drug-free awareness program to inform employees about (i) the dangers of drug abuse in the workplace, (ii) the Engineer's policy of maintaining a drug-free workplace, (iii) any available drug counseling, rehabilitation, and employee assistance programs and (iv) the penalties that may be imposed upon employees for drug abuse violations;

c.  Notifying each employee that as a condition of employment, the employee will (i) abide by the terms of the prohibition outlined in this Article and (ii) notify the Engineer of any criminal drug statute conviction for a violation occurring in the workplace not later than five (5) days after such conviction;

d.  Notifying the City within ten (10) days after receiving from an employee a notice of a criminal drug statute conviction or after otherwise receiving actual notice of such conviction, unless otherwise forbidden to communicate such information to third parties under the Engineer's drug-free awareness program or other restrictions;

e.  Imposing a sanction on, or requiring the satisfactory participation in a drug counseling, rehabilitation or abuse program by an employee convicted of drug crime

f.  Making a good faith effort to continue to maintain a drug-free workplace for employees; and

20

g.      Requiring any party to which it subcontracts any portion of the work under the Contract to comply with the provisions above.

If the Engineer is an individual, the requirement is met by not engaging in the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance in the performance of this Contract.

Failure to comply with the above drug-free workplace requirements during the performance of the Contract shall be grounds for suspension, termination or debarment.

## ARTICLE 17 – MISCELLANEOUS CONDITIONS

17.1    *Relationship of the Parties*
The relationship of the parties established by this Contract is solely that of independent contractors, and nothing contained in this Contract shall be construed to (i) give any party the power to direct or control the day-to-day activities of the other; or (ii) constitute such parties as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking.

17.2    *Entire Contract*
This Contract is the entire Contract between the parties with respect to its subject matter, and there are no other representations, understandings, or agreements between the parties relative to such subject matter. This Contract supersedes all prior agreements, negotiations, representations, and proposals (prior agreements); written or oral, except to the extent such prior agreements are incorporated by reference into this Contract.

17.3    *Amendment*
No amendment or change to this Contract shall be valid unless in writing and signed by both parties to this Contract.

17.4    *Governing Law and Jurisdiction*
The parties acknowledge that this Contract is made and entered into in Charlotte, North Carolina. The parties further acknowledge and agree that North Carolina law shall govern all rights, obligations, duties, and liabilities of the

parties to this Contract, and that North Carolina law shall govern interpretation of this Contract and any other matters relating to this Contract (all without regard to North Carolina conflicts of laws principles).

The parties further agree that any and all legal actions or proceedings relating to this Contract shall be brought in a state or federal court sitting in Mecklenburg County, North Carolina. By execution of this Contract, the parties submit to the jurisdiction of said courts and hereby irrevocably waive any and all objections that they may have with respect to venue in any of the above courts.

17.5 **Binding Nature and Assignment**

This Contract shall bind the parties and their successors and permitted assigns. Neither party may assign this Contract without the prior written consent of the other. Any assignment attempted without the written consent of the other party shall be void.

17.6 **Delays and Extensions**

Reasonable extensions of time for unforeseen or unavoidable delays may be made by mutual consent of the parties involved.

17.7 **Force Majeure**

The Engineer shall not be liable for any failure or delay in the performance of its obligations pursuant to this Contract and such failure or delay shall not be deemed a default of this Contract or grounds for termination hereunder, except as set forth below, if all of the following conditions are satisfied:

a. If such failure or delay could not have been prevented by reasonable precautions;

b. If such failure or delay cannot reasonably be circumvented by the non-performing party through the use of alternate sources, work-around plans, or other means; and

c. If and to the extent such failure or delay is caused by fire, flood, earthquake, elements of nature or acts of God, acts of war, terrorism, riots, civil disorders, rebellions or revolutions, strikes, lockouts or court order (each, a "Force Majeure Event").

22

Upon the occurrence of a Force Majeure Event, the Engineer shall be excused from any further performance of those of its obligations pursuant to this Contract affected by the Force Majeure Event for as long as: (i) such Force Majeure Event continues and (ii) the Engineer continues to use commercially reasonable efforts to recommence performance whenever and to whatever extent possible without delay.

The Engineer shall promptly notify the City by telephone or other means available (to be confirmed by written notice within five (5) business days of the inception of the failure or delay) of the occurrence of a Force Majeure Event and describe in reasonable detail the nature of the Force Majeure Event. If any Force Majeure Event prevents the Engineer from performing its obligations for more than thirty (30) days, the City may terminate this Contract.

17.8 **Severability**

The invalidity of one or more of the phrases, sentences, clauses or sections contained in this Contract shall not affect the validity of the remaining portion of the Contract so long as the material purposes of the Contract can be determined and effectuated. If any provision of this Contract is held to be unenforceable, then both parties shall be relieved of all obligations arising under such provision, but only to the extent that such provision is unenforceable, and this Contract shall be deemed amended by modifying such provision to the extent necessary to make it enforceable while preserving its intent.

17.9 **Approvals**

All approvals or consents required under this Contract must be in writing. Electronic documents shall have the same validity as physical documents.

17.10 **Waiver**

No delay or omission by either party to exercise any right or power it has under this Contract shall impair or be construed as a waiver of such right or power. A waiver by either party of any covenant or breach of this Contract shall not constitute or operate as a waiver of any succeeding breach of that covenant or of any other covenant. No waiver of any provision of this Contract shall be effective unless in writing and signed by the party waiving the rights.

23

17.11 **Interest of the Parties**

The Engineer covenants that its officers, employees, shareholders and subconsultants have no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of services required to be performed under this Contract.

17.12 **Taxes**

The Engineer shall pay all applicable Federal, State and local taxes that may be chargeable against the performance of the Services.

17.13 **No Bribery or Lobby**

The Engineer certifies that to the best of its knowledge, information, and belief, neither it, any of its affiliates or subcontractors, nor any employees of any of the forgoing has bribed or lobbied, or attempted to bribe or lobby, an officer or employee of the City in connection with this Contract.

17.14 **Change in Control**

In the event of a change in "Control" of the Engineer (as defined below), the City shall have the option of terminating this Contract by written notice to the Engineer. The Engineer shall notify the City within ten (10) days of the occurrence of a change in control. As used in this Contract, the term "Control" shall mean the possession, direct or indirect, of either:

a.  The ownership of or ability to direct the voting of, as the case may be, fifty-one percent (51%) or more of the equity interests, value or voting power in the Engineer; or

b.  The power to direct or cause the direction of the management and policies of the Engineer whether through the ownership of voting securities, by contract or otherwise.

17.15 **Subcontracting**

Should the Engineer choose to subcontract, the Engineer shall remain fully responsible for performance of all obligations that it is required to perform under this Contract. Any subcontract entered into by the Engineer in connection with the Project shall name the City as a third party beneficiary.

24

17.16 **City Not Liable for Delays**

Except as expressly provided in this Contract, the City shall not be liable to the Engineer, its agents, representatives or subconsultants for or on account of any stoppages or delay in the performance of any obligations of the City or any other party hereunder.

17.17 **Survival of Provisions**

All definitions and express representations and indemnifications included in this Contract will survive its completion or termination. Those sections of this Contract including Exhibits that by their nature would reasonably be expected to continue after the termination of this Contract shall survive the termination of this Contract.

17.18 **Endorsement of Documents**

The Engineer shall sign and seal, or shall cause to be signed and sealed, with the appropriate North Carolina Professional Seal, all plans, specifications, calculations, reports, plats, and construction documents prepared by the Engineer under this Contract.

17.19 **CADD Standards; Final Plans**

The Engineer shall perform all services in accordance with the current version of the City's CADD standards available at:
http://charmeck.org/city/charlotte/epm/Resources/CAD/Pages/default.aspx

17.20 **Familiarity And Compliance With Laws And Ordinances**

In performing this Contract, the Engineer shall be aware of and comply with, and cause each of its subconsultants to comply with, all applicable federal, state and local laws and regulations (including without limitation obtaining all required permits and licenses).

## ARTICLE 18 – SMALL BUSINESS OPPORTUNITY PROGRAM

The City has adopted a Small Business Opportunity Program, which is posted on the City's website and available in hard copy form upon request to the City. The parties agree that:

(i)     The terms of the City's Small Business Program, as revised from time to time, together with all rules and guidelines established under such program (collectively, the "SBO Program") is incorporated into this Contract by reference; and

(ii)    A violation of the SBO Program shall constitute a material breach of this Contract, and shall entitle the City to exercise any of the remedies set forth in Part D of the SBO Program, including but not limited to liquidated damages; and

(iii)   Without limiting any of the other remedies the City has under the SBO Program, the City shall be entitled to withhold periodic payments and final payment due to the Engineer under this Contract until the City has received in a form satisfactory to the City all claim releases and other documentation required by the City's SBO Program (see **Exhibit 5**, and in the event payments are withheld under this provision, the Engineer waives any right to interest that might otherwise be warranted on such withheld amount under NCGS 143-134.1; and

(iv)    The remedies set forth in Part D Section 13 of the SBO Program shall be deemed cumulative and not exclusive and may be exercised successively or concurrently, in addition to any other available remedy; and

(v)     The City will incur costs if the Engineer violates the SBO Program, and such costs are difficult to ascertain due to their indefiniteness and uncertainty. Accordingly, the Engineer agrees to pay the City liquidated damages at the rates set forth in Part D of the SBO Program; and

(vi)    The Engineer agrees to participate in any dispute resolution process specified by the City from time to time for the resolution of disputes arising from the SBO Program; and

(vii)   Nothing in this Section shall be construed to relieve an Engineer from any obligation it may have under NCGS 143-134.1 regarding the payment of subcontractors.

26

18.1 **Remedies for Violation of SBO Program**

A violation of the SBO Program by an Engineer shall constitute a material breach of the Contract, and shall entitle the City or private owner to:

(i) Exercise all rights and remedies that it may have at law or at equity for violation of the SBO Program;

(ii) Terminate the Contract for default;

(iii) Suspend the Contract for default;

(iv) Withhold all payments due to the Engineer under the Contract until such violation has been fully cured or the City and the Engineer have reached a mutually agreeable resolution;

(v) Assess liquidated damages as provided in the following Part D Section 13.2; and/or

(vi) Offset any liquidated damages and/or any amounts necessary to cure any violation of the SBO Program from any retainage being held by the City on the Contract, or from any other amounts due to the Engineer under the Contract.

The remedies set forth herein shall be deemed cumulative and not exclusive, and may be exercised successively or concurrently, in addition to any other available remedy.

18.2 **Liquidated Damages**

The City and the Engineer acknowledge and agree that the City will incur costs if the Engineer violates the SBO Program in one or more of the ways set forth below. The parties further acknowledge and agree that the City will incur damages as a result of such failure, but that the costs the City might reasonably be anticipated to accrue as a result of such failures are difficult to ascertain due to their indefiniteness and uncertainty. Accordingly, the Engineer agrees to pay the City liquidated at the rates set forth below for each specified violation of the SBO Program. The Engineer further agrees that for each specified violation the agreed upon liquidated damages are reasonably proximate to the loss the City will incur as a result of such violation:

i. **Failure to meet the SBE Goal.** If the City determines upon completion or termination of a Contract that the Engineer did not meet the

27

Committed SBE Goal and that such failure is not otherwise excused under Part D Section 2, the City may assess the lesser of : (a) $30,000 or (b) the dollar difference between the Committed SBE Goal and the Engineer's actual SBE utilization;

ii. **Using SBE as a Conduit.** If the Engineer lists an SBE to receive credit toward a Committed SBE Goal with knowledge that the SBE will be acting as a Conduit or will not be performing a Commercially Useful Function reasonably commensurate with the payment amount for which the Engineer will be seeking credit, the City may assess the lesser of: (a) $20,000 or (b) the dollar amount the Engineer indicated that it would pay such SBE in the SBEs contract (or if no contract has been signed, the SBE's Letter of Intent);

iii. **Wrongful Termination or Replacement of SBE Services.** If the Engineer terminates or replaces an SBE in violation of the SBO Program, the City may assess the lesser of: (a) $20,000 or (b) the dollar amount of the work remaining to be performed by the terminated SBE at the time it was terminated (or if the SBE was not terminated because it was never retained, then, the dollar amount that the Engineer indicated it would pay the SBE in the SBE's letter of intent) or;

iv. **Failure to Comply with SBO Program upon Termination or Withdrawal by SBE.** If the Engineer fails to comply with Part D Section 5 of the SBO Program upon the termination or withdrawal of an SBE the City may assess the lesser of: (a) $20,000 or (b) the dollar amount of the work remaining to be performed by the SBE that withdrew or was terminated at the time of the termination or withdrawal;

v. **Failure to Comply with SBO Program to Add New Subcontractors.** If the Engineer fails to comply with Part D of the SBO Program in adding new subcontractors to a Contract, or in the event of a Contract amendment or increase in the scope of work on a contract, the City may assess the lesser of: (a) $20,000; or (b) the dollar amount of the new or additional work;

28

vi. **False Statements and Misrepresentations.** If the Engineer makes a false statement or material misrepresentation or material misleading omission regarding any matter relevant to the SBO Program (including but not limited to information provided regarding payments made to SBEs), the City may assess the lesser of: (a) $25,000; or (b) the dollar difference between what the Engineer represented and the **truth;**

vii. **Failure to Respond to Request for Information.** If the Engineer fails to provide any report, documentation, affidavit, certification or written submission required under the SBO Program within the time period ser forth therein, the City may assess $25 per day for each day that such report, documentation or written submission is overdue.

viii. **Seeking Credit for Use of An Affiliate to Meet the Committed SBE Goal.** If the City finds a violation of Section 3.3 of this part due to an Engineer seeking credit for utilizing an SBE that the City determines to be an Affiliate, the City may assess the lesser of: (a) $20,000 or (b) the dollar amount the Engineer counted towards its Committed SBE Goal for that SBE.

## ARTICLE 19 – COMMERCIAL NON-DISCRIMINATION POLICY

As a condition of entering into this Contract, the Engineer represents and warrants that it will fully comply with the City's Commercial Non-Discrimination Policy as described in Section 2, Article V of the Charlotte City Code, and consents to be bound by the award of any arbitration conducted thereunder. As part of such compliance, the Engineer shall not discriminate on the basis of race, gender, religion, national origin, ethnicity, age, or disability in the solicitation, selection, hiring, or treatment of subconsultants, vendors, suppliers, or commercial customers in connection with a City contract or contract solicitation process, nor shall the Engineer retaliate against any person or entity for reporting instances of such discrimination.

The Engineer shall provide equal opportunity for subconsultants, vendors and suppliers to participate in all of its subcontracting and supply opportunities on City contracts, provided that nothing contained in this clause shall prohibit or limit otherwise lawful efforts to remedy the effects of marketplace discrimination that has occurred or is occurring in the marketplace. The Engineer understands and agrees that a violation of

29

this clause shall be considered a material breach of this Contract and may result in termination of this Contract, disqualification of the Engineer from participating in City contracts or other sanctions.

As a condition of entering into this Contract, the Engineer agrees to: (a) promptly provide to the City all information and documentation that may be requested by the City from time to time regarding the solicitation, selection, treatment and payment of subconsultants in connection with this Contract; and (b) if requested, provide to the City within sixty days after the request a truthful and complete list of the names of all subconsultants, vendors, and suppliers that Engineer has used on City contracts in the past five years, including the total dollar amount paid by the Engineer or on each subcontract or supply contract.

The Engineer further agrees to fully cooperate in any investigation conducted by the City pursuant to the City's Commercial Non-Discrimination Policy as set forth in Section 2, Article V of the City Code, to provide any documents relevant to such investigation that are requested by the City, and to be bound by the award of any arbitration conducted under such Policy. The Engineer understands and agrees that violation of this clause shall be considered a material breach of this Contract and may result in contract termination, disqualification of the Engineer from participating in City contracts and other sanctions.

## ARTICLE 20 – PUBLICITY AND STATEMENTS TO THE PRESS

Advertising, sales promotion or other materials of the Engineer or its agents or representatives shall limit the identification or reference to this Contract to the general physical description and location of the approved final design/product of the Project. Descriptions of conceptual or alternative designs/products considered for the Project shall not be included in advertising, sales or other materials. As a condition of entering into this Contract, the Engineer further agrees to refrain from the following, absent the City's prior written approval: (1) making any statement to the media or public regarding the subject matter of this Contract or the City's position on any issue relating to this Contract; or (2) making any statement to the media or public on any issue which is in the City's judgment likely to cast doubt on the competence or integrity of the City or Engineer. Failure to comply with this Article by the Engineer shall constitute a material breach and, without limiting any other remedies the City may have, shall entitle the City to terminate this Contract for default.

30

## ARTICLE 21 – PAYMENT AFFIDAVITS

To determine whether disparities exist in City contracting based on race, gender or other factors, and also to measure the effectiveness of the City's Small Business Opportunity Program, the City tracks the utilization of first-tier subcontractors and suppliers on certain City contracts based on race, gender, small business status, and other factors. For analysis purpose, it is important that the City obtain this data not only for minority, female and small business suppliers and subcontractors, but also for other subcontractors and suppliers. As a condition to receiving payment under this Contract, the Engineer agrees to provide to the City with each invoice for payment submitted under this Contract, a written payment affidavit detailing the amounts paid by the Engineer to first tier subcontractors and suppliers in connection with this Contract ("Payment Affidavits"). Payment Affidavits shall be in the format specified by the City from time to time, and shall include all payments made to first tier subcontractors and suppliers under this Contract that are not included on a prior Payment Affidavit.

Failure to provide a properly completed version of each Payment Affidavit required by this Section shall constitute a default under this Contract, and shall entitle the City to: (a) withhold payment of any amounts due the Engineer (whether under this Contract or otherwise), or (b) exercise any other remedies legally available for breach of this Contract, or (c) impose any other sanctions permitted under the City's Small Business Opportunity Program. In order to have a properly completed Payment Affidavit, each prime contractor and first tier subcontractor identified must be registered in the City's Vendor Registration System. The City may request on a case-by-case basis that the Engineer require certain suppliers to be registered in the City's Vendor Registration System, and may withhold payment of any amounts due the Engineer in the event the Engineer fails to comply with such request.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

31

**THIS CONTRACT**, entered into as of the day and year first written above for Engineering Services for Various Storm Water Projects, **Contract Number 1200218** in an amount not to exceed **$1,000,000**.

**ARMSTRONG GLEN, P.C.**                    **ATTEST**

By: _[signature]_                           _[signature]_
President/Vice President

Date: _November 2, 2011_                    Date: _11/2/11_


**CITY OF CHARLOTTE**                        **ATTEST**

By: _[signature]_                           _[signature]_
Engineering Contracts Manager

Date: _11-28-2011_                          Date: _11/28/11_


This instrument has been
preaudited in the manner
required by the "Local
Government Budget and Fiscal
Control Act."
_[signature]_  12-2-11
Deputy Finance Officer

32

**EXHIBIT 1**
**SCOPE OF SERVICES**
- Reserved -

## EXHIBIT 2
## FEE SCHEDULE/BREAKDOWN

### Armstrong Glen, P.C.

| Classification | Hourly Rate |
|---|---|
| Principal Engineer | $159.00 |
| Senior Project Manager | 145.00 |
| Project Manager IV | 138.00 |
| Project Manager III | 135.00 |
| Project Manager II | 128.00 |
| Project Manager I | 115.00 |
| Project Engineer V | 137.00 |
| Project Engineer IV | 135.00 |
| Project Engineer III | 124.00 |
| Project Engineer II | 113.00 |
| Project Engineer I | 110.00 |
| Engineering Designer IV | 105.00 |
| Engineering Designer III | 94.00 |
| Engineering Designer II | 91.00 |
| Engineering Designer I | 87.00 |
| Technical Specialist | 87.00 |
| Technician III | 84.00 |
| Technician II | 80.00 |
| Administrative Assistant | 50.00 |

### Boyle Consulting Engineers, PLLC.

| Classification | Hourly Rate |
|---|---|
| Principal Engineer | $125.00 |
| Chief Engineer | 95.00 |
| Senior Registered Engineer | 95.00 |
| Registered Engineer or Geologist | 85.00 |
| Staff Engineer, Geologist, Professional | 65.00 |
| Special Inspector | 65.00 |
| Senior Technician | 42.00 |
| Project Technician | 39.00 |
| Staff Technician | 32.00 |
| GIS Technician | 45.00 |
| GIS Manager | 65.00 |
| Clerical Assistant | 35.00 |
| Project Administrator | 35.00 |
| Senior Administrator | 55.00 |

## Surveying and Mapping, Inc.

| Classification | Hourly Rate |
|---|---|
| Professional Land Surveyor | $95.00 |
| 2-Man Survey Crew | 118.00 |
| 3-Man Survey Crew | 145.00 |
| 2-Man Robotic Crew | 125.00 |
| GPS Crew | 150.00 |
| Survey/CAD Technician | 75.00 |


## Habitat Assessment & Restoration Program, Inc.

| Classification | Hourly Rate |
|---|---|
| Senior Scientist/Botanist/Biologist | $85.00 |
| Senior Scientist/Fluvial Geormorphologist/Hydrologist | 85.00 |
| Principal – Environmental Scientist | 75.00 |
| Environmental Scientist/Biologist | 75.00 |
| Geologist | 75.00 |
| Scientist – Biologist/Botanist | 65.00 |
| Environmental Specialist | 65.00 |
| Junior Scientist – Geology/Botany | 35.00 |


## On Target Utility Locate Services, Inc.

| Classification | Hourly Rate |
|---|---|
| Field Locates in North Carolina | $75.00 |
| Field Locates Outside of North Carolina | 80.00 |
| Including Transit Time (minimum charge $700) | |
| Research | 35.00 |
| Administration | 25.00 |
| Vertical locate of Utilities | $325 flat rate |

**EXHIBIT 3**
**SCHEDULE**


The Engineer and the City will develop a mutually-acceptable schedule for completion of the Services in each task order.

# EXHIBIT 4
# ORGANIZATION CHART



# EXHIBIT 5

## SMALL BUSINESS OPPORTUNITY PROGRAM

## REQUIREMENTS FOR PROFESSIONAL SERVICE CONTRACTS

The City's Small Business Opportunity Program (SBO Program) applies to all aspects of the City's contracting and procurement programs and its provisions are incorporated in their entirety into this Contract by reference. In order to comply with the SBO Program, the Engineer will need to complete the SBO Program forms referenced below at appropriate times during the term of the Contract.

**The SBE Utilization Commitment for this Contract is TBD%**

### SBO Program Form 3 – Subconsultant/Supplier Utilization Commitment
Once all subcontracts have been finalized, and prior to the finalization of the Contract, the Engineer will complete **SBOP Form 3** and submit it for inclusion in the Contract. This will constitute the Engineer's formal commitment to utilize the specified SBE and non-SBE firms as subconsultants or suppliers in the performance of the Contract.

### SBO Program Form 4 – Letter of Intent
For each SBE firm listed on **SBO Form 3**, the Engineer will complete a Letter of Intent in the form of **SBOP Form 4**. A copy of each Letter of Intent, properly signed by the Engineer and the SBE, will become part of the Contract. A copy of each Letter of Intent, signed by both the Engineer and the SBE, will be provided to the E&PM SBO Liaison and kept in the contract file as an official record.

### SBO Program Form 6 – Payment Affidavit - Subconsultant/Supplier Utilization
The Engineer must submit a completed **SBOP Form 6** with each invoice or payment request. All first tier subconsultants and suppliers to the contract must be listed on every SBOP Form 6 with current payment amount made by the Engineer. If no payment was made by the Engineer to a particular subconsultant or supplier the payment amount will be zero.

### SBO Program Provisions Applicable After Contract Award
Please note in particular the following Sections of the SBO Program that relate to post award requirements and activity:

- Compliance with committed SBE utilization level throughout the term of the Contract per Part D Section 2 of the SBO Program.
- Replacing an SBE on a Contract per Part D Section 5 of the SBO Program.
- Changes in Scope of Work or Adding Subcontracting Opportunities per Part D Section 6 of the SBO Program.
- Payments to subcontractors per Part D Section 7 of the SBO Program.
- Submittal of utilization reports and documentation of payments per Part D Section 8.



### Small Business Opportunity Program
SBOP Form 3
### Subcontractor / Supplier Utilization Commitment
(Page 1 of 2)
#### This form **MUST** be submitted within the time frame established by the City

Per Part C, Section 3.6 of the SBO Policy (v.2009)[1] *the Subcontractor/Supplier Utilization Commitment (Form 3), captures information regarding the SBEs and other subcontractors, subconsultants, and suppliers that the Proposer intends to use on the Contract.*

| | |
|---|---|
| **Consultant Name:** | Armstrong Glen, P.C. |
| **Project Name:** | Various Storm Water Services |
| **Contract Number:** | 1200218 |

1. List below all **SBEs** that you intend to use on this contract

| SBE Name | Description of Work / Materials | NIGP Commodity Code | VMS # | Total Projected Utilization ($) |
|---|---|---|---|---|
| Habitat Assessment & Restoration Program, Inc. | Environmental / Ecological Services | 92600 | 9102 | $TBD |
| Survey and Mapping Control | Surveying | 92586 | 8899 | $TBD |
| On-Target Utility Locate Services, Inc. | Utility Locate Services | 96291 | 9185 | $TBD |
| Boyle Consulting Engineers, PLLC. | Geotechnical Services | 90742 | 9322 | $TBD |
| | | | | |

**NOTE:** You will only receive credit for SBEs who have an active Certification with the City, as of the Proposal Due Date.

2. List below all **non-SBEs** that you intend to use on this contract

| Firm Name | Description of Work / Materials | NIGP Commodity Code | VMS # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| **Total Subconsultant / Supplier Utilization** (including SBEs and Non-SBEs) | $ TBD |
| **Total SBE Utilization** | $ TBD |
| **Total Contract Amount** (including Contingency) | $ 1,000,000 |
| **Percent SBE Utilization** (Total SBE Utilization *divided by* Total Contract Amount) | TBD % |

[1] SBO Policy v.2009 amended April 2011

### Letters of Intent submitted upon notice from the City

Per Part C, Section 3.7 of the SBO Policy (v.2009), *within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent (**SBOP Form 4**) for each SBE listed on **SBOP Form 3** and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer. The City shall not count proposed SBE utilization for which it has not received a Letter of Intent by this deadline unless the SBE certifies to the City that it originally agreed to participate in the Contract at the level reported by the Proposer, but subsequently declined to do so.*

### Adding subcontractors, subconsultants or suppliers after submitting this form

Nothing in this certification shall be deemed to preclude you from entering into subcontracting or subconsulting arrangements after submission of this form. However, per Part D of the SBO Policy (v.2009), you must comply with the following:

- You must maintain the level of SBE participation proposed on this form throughout the duration of the Contract, except as specifically allowed in Part D, Section 2.2.
- If you need to terminate or replace an SBE, you must comply with Part D, Section 5.
- If the scope of work on the Contract increases, or if you elect to subcontract any portion of work not identified on this form as being subcontracted, then you must comply with Part D, Section 6.
- A Letter of Intent (**SBOP Form 4**) must also be submitted for each SBE you add subsequent to contract award.

### All Subconsultants, Consultants and Suppliers must be registered with the City of Charlotte.

Pursuant to the City's Vendor Registration Policy, each subcontractor, subconsultant or supplier (non-SBE and SBEs) that you use on this contract must be registered in the City's vendor management system (VMS) database, indicated by a VMS Number. You will need to provide the VMS # for each subconsultant or supplier used on this contract as a condition for receiving final payment on this Contract.

### Signature

Your signature below indicates that the undersigned Company certifies and agrees that:

(a) It has complied with all provisions of the SBO Program; and

(b) Failure to properly document such compliance in the manner and within the time periods established by the SBO Program will entitle the City to reject your Bid/Proposal and recover damages.

| | | | |
|---|---|---|---|
| *William H. Wrigley* | *William H. Armstrong   Pres.* | | *Nov. 3, 2011* |
| Signature of Authorized Official | Printed Name | Title | Submittal Date |

40


**CHARLOTTE.**

## Small Business Opportunity Program
### Letter of Intent

SBOP Form 4

*Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on SBOP Form 3 and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

*Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, Proposers shall be required to provide a FORM 4 for each SBE added to a Contract subsequent to Contract award.*

| Project Name: | Various Storm Water Services |
|---|---|
| Contract Number: | 1200218 |

**To be completed by the Consultant**

Name of Consultant: Armstrong Glen, P.C.  VMS #: 10366

Address: 9771-D Southern Pine Blvd., Charlotte, NC 28273

Contact Person: William H. Armstrong, PE,  Email: warmstrong@armstrongglen.com

Telephone: 704.529.0345  Fax: 704.529.0493

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.  YES ☐  NO ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE. On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

Environmental and Ecological Services

Cost of work to be performed by SBE:  $ TBD

Cost of work to be performed by SBE as a percentage of total amount of City contract:  TBD %

**To be completed by SBE**

Name of SBE: HARP. Inc.  VMS #: 9102

Address: 9305-D Monroe Road, Charlotte, NC 28270

Contact Person: Karri Blackmon  Email: karri@habitatassessment.com

Telephone: 704.841.2841  Fax: 704.841.2447

**NOTE:** SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

Consultant: _William P Ortho MES_  Date: _NOV 21, 2011_
Signature and Title

SBE Firm: _K Blackmon President_  Date: _11/22/11_
Signature and Title

[1] SBO Policy v.2009 amended August 2009



**Small Business Opportunity Program**　　SBOP Form 4

Letter of Intent

*Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on **SBOP Form 3** and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

*Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, Proposers shall be required to provide a **FORM 4** for each SBE added to a Contract subsequent to Contract award.*

| Project Name: | Various Storm Water Services |
|---|---|
| Contract Number: | 1200218 |

**To be completed by the Consultant**

| Name of Consultant: Armstrong Glen, P.C. | VMS #: 10336 |
|---|---|

Address: 9771-D Southern Pine Blvd., Charlotte, NC 28273

| Contact Person: William H. Armstrong, PE, | Email: warmstrong@armstrongglen.com |
|---|---|

| Telephone: 704.529.0345 | Fax: 704.529.0493 |
|---|---|

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.　　YES ☐　　NO ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE. On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

Aerial Photogrammery and Aerial Photography

| Cost of work to be performed by SBE: | $ TBD |
|---|---|
| **Cost of work to be performed by SBE as a percentage of total amount of City contract:** | TBD % |

**To be completed by SBE**

| Name of SBE: Boyle Consulting Engineers, PLLC. | VMS #: 9322 |
|---|---|

Address: 4340 Taggart Creek Road, Charlotte, NC 28208

| Contact Person: Charles Boyle, P.E. | Email: cboyle@boyleconsulting.com |
|---|---|

| Telephone: 704.676.0778 | Fax: 704.676.0596 |
|---|---|

<u>NOTE:</u> **SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.**

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

Consultant: *William V Custy MCS*　　Date: *Nov. 28, 2011*

Signature and Title

SBE Firm: *Michelle Richard Sr Eng.*　　Date: *11-28-11*

Signature and Title

[1] SBO Policy v.2009 amended April 2011



**CHARLOTTE.**

### Small Business Opportunity Program
Letter of Intent

**SBOP Form 4**

Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], *within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on **SBOP Form 3** and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, *Proposers shall be required to provide a **FORM 4** for each SBE added to a Contract subsequent to Contract award.*

| Project Name: | Various Storm Water Services |
|---|---|
| Contract Number: | 1200218 |

| To be completed by the Consultant |
|---|

Name of Consultant: Armstrong Glen, P.C          VMS #: 10366

Address: 9771-D Southern Pine Blvd., Charlotte, NC 28273

Contact Person: William H. Armstrong, PE,          Email: warmstrong@armstrongglen.com

Telephone: 704.529.0345          Fax: 704.529.0493

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.     **YES** ☐   **NO** ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE. On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

Surveying Services

Cost of work to be performed by SBE: _____ **$ TBD**

Cost of work to be performed by SBE as a percentage of total amount of City contract: _____ **TBD %**

| To be completed by SBE |
|---|

Name of SBE: Survey and Mapping Control          VMS #: 8899

Address: 12727 Dorman Road, Pineville, NC 28134

Contact Person: Tony B. Sanders          Email: sandmc@bellsouth.net

Telephone: 704.542.9095          Fax: 704.542.9293

**NOTE:** SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

Consultant: _____          Date: *Nov. 21, 2011*
                    Signature and Title

SBE Firm: _____ *Pres.*          Date: *Nov 21, 2011*
              Tony B. Sanders    Signature and Title

44


CHARLOTTE.

**Small Business Opportunity Program**  SBOP Form 4
Letter of Intent

*Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on **SBOP Form 3** and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

*Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, Proposers shall be required to provide a **FORM 4** for each SBE added to a Contract subsequent to Contract award.*

| Project Name: | Various Storm Water Services |
|---|---|
| Contract Number: | 1200218 |

**To be completed by the Consultant**

| | | | |
|---|---|---|---|
| Name of Consultant: | Armstrong Glen, P.C. | VMS #: | 10336 |
| Address: | 9771-D Southern Pine Blvd., Charlotte, NC 28273 | | |
| Contact Person: | William H. Armstrong, PE, | Email: | warmstrong@armstrongglen.com |
| Telephone: | 704.529.0345 | Fax: | 704.529.0493 |

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.     YES ☐   NO ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE.  On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

Utility Location Services

Cost of work to be performed by SBE: _____  $ TBD

Cost of work to be performed by SBE as a percentage of total amount of City contract: _____  TBD %

**To be completed by SBE**

| | | | |
|---|---|---|---|
| Name of SBE: | On-Target Utility Locate | VMS #: | 11259 |
| Address: | 14701 Albermarle Road, Charlotte, NC 28227 | | |
| Contact Person: | Richard Smurthwaite | Email: | rsmurthwaite@carolinarr.com |
| Telephone: | 704.545.9979 | Fax: | 704.545.9901 |

<u>NOTE</u>:  **SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.**

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

| | | |
|---|---|---|
| Consultant: *[signature]* Pres. | Date: *Nov 21, 2011* |
| Signature and Title | |
| SBE Firm: *[signature]* VP | Date: *11-28-2011* |
| Signature and Title | |

[1] SBO Policy v.2009 amended August 2009

45

# EXHIBIT 6

## *COMMERCIAL NON-DISCRIMINATION CERTIFICATION*

*Project*: **Various Storm Water Services**

*Name of Company (Proposer)*:  Armstrong Glen, P.C.

The undersigned Proposer hereby certifies and agrees that the following information is correct:

1.  In preparing the enclosed proposal, the Proposer has considered all proposals submitted from qualified, potential subconsultants and suppliers and has not engaged in discrimination as defined in Section 2.

2.  For purposes of this certification *discrimination* means discrimination in the solicitation, selection, or treatment of any subconsultant, vendor, supplier or commercial customer on the basis of race, ethnicity, gender, age, religion, national origin, disability or any other unlawful form of discrimination. Without limiting the foregoing, *discrimination* also includes retaliating against any person or other entity for reporting any incident of prohibited discrimination.

3.  Without limiting any other remedies that the City may have for a false certification, it is understood and agreed that, if this certification is false, such false certification will constitute grounds for the City to reject the proposal submitted with this certification and terminate any contract awarded based on such proposal.  It shall also constitute a violation of the City's Commercial Non-Discrimination Ordinance and shall subject the Proposer to any remedies allowed thereunder, including possible disqualification from participating in City contracts or bid processes for up to two years.

4.  As a condition of contracting with the City, the Proposer agrees to promptly provide to the City all information and documentation that may be requested by the City from time to time regarding the solicitation and selection of subconsultants in connection with this solicitation process.  Failure to maintain or failure to provide such information shall constitute grounds for the City to reject the proposal submitted by the Proposer and terminate any contract awarded on such bid.  It shall also constitute a violation of the City's Commercial Non-Discrimination Ordinance and shall subject the Proposer to any remedies allowed thereunder.

5.  As part of its proposal, the Proposer shall provide to the City a list of all instances within the past ten years where a complaint was filed or pending against the Proposer in a legal or administrative proceeding alleging that the Proposer discriminated against its subconsultants, vendors, suppliers, or commercial customers, and a description of the status or resolution of that complaint, including any remedial action taken.

6.  As a condition of submitting a proposal to the City, the Proposer agrees to comply with the City's Commercial Non-Discrimination Policy as described in Section 2, Article V of the Charlotte City Code, and consents to be bound by the award of any arbitration conducted thereunder.

By: _____
Signature Of Authorized Official

Title: *MES.*

46



## Small Business Opportunity Program

SBOP Form 6

Payment Affidavit - Subconsultant / Supplier Utilization

To be submitted with **each** request for payment from the City of Charlotte. *Copy this form as needed.*

**Project Name:** Various Storm Water Services

**Consultant Name:** Armstrong Glen, P.C.      **Payment / Invoice #** _____

**Contract Number:** 1200218      **Invoice Amount:** $ _____

**Payment Period:** From _____ To _____   **City KBU:** (Department) Engineering & Property Mgmt

**FINAL PAYMENT** ☐   Check this box **only** when submitting Final Pay request.

### Section 1: Payments to SUBCONSULTANTS

Complete the chart below for all subconsultants used on the Project/Contract regardless of dollar amount. All subconsultants must be registered in the City's Vendor Management System.

| Subconsultant Name | Description of Work Performed | NIGP Commodity Code | VMS # | Payments this Period | Cumulative Payments |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### Section 2: Payments to SUPPLIERS

All suppliers providing goods under City contracts must be listed on the Sales Tax Statement submitted with each pay request. The City may request on a case-by-case basis that the Consultant require certain suppliers to be registered in the City's Vendor Management System and may withhold payment of any amounts due the Consultant in the event the Consultant fails to comply with such request.

The undersigned Company certifies the preceding chart is a true and accurate statement of all payments that have been or will be made to subconsultants on this Project/Contract, and that all Suppliers providing goods under this contract have been listed in the Sales Tax Statements submitted to the City in connection with this Payment Affidavit. If no subconsultants or suppliers are listed on the preceding chart or Sales Tax Statements, the Company certifies that no subconsultants or suppliers were used in performing the Project/Contract for the payment period indicated. Failure to provide accurate and truthful information is a violation of the Small Business Opportunity Program and may result in the sanctions prescribed therein.

This _____ day of _____ 201 _____

_____      _____
Signature                                             Print Name and Title

**To be completed by KBU for FINAL PAYMENT**

SBE Goal: _____ %

Total Paid to Consultant: $ _____      SBE Goal Commitment: _____ %

Total Paid to SBEs: $ _____      SBE Goal Attainment: _____ %

Revised April 8, 2011

45

# EXHIBIT 7

# PERFORMANCE EXPECTATIONS

**FULFILLING CONTRACT OBLIGATIONS**
- The City's Project Manager and the Consultant's Project Manager shall be responsible to review these Performance Expectations periodically, and participate fully in the Project Team Evaluation process.

- The City's Project Manager and the Consultant's Project Manager shall be responsible to read, understand and fulfill all items in the contract.

- The Consultant is responsible to fulfill all of the requirements of the contract, including the QA/QC plan.

- The Consultant is responsible for the schedule, budget and quality of all of the work performed on the project, including that of their subcontractors.

- The Consultant shall maintain continuity of staff assignments. Written approval from the City's Project Manager is required prior to changing staff assignments.

**PROVIDING TIMELY/CLEAR COMMUNICATION**
This performance expectation relates to all forms of communication, and apply to both the City's and Consultant's Project Managers unless otherwise denoted.

**Timeliness/Responsiveness:**
- Phone calls shall be returned by the end of the next working day.
- All correspondence which includes a request for response shall be responded to within the specified time frame.
- The Consultant's Project Manager shall inform the City's Project Manager in a timely manner of upcoming concerns, problems, etc. such that they can be addressed by the Project Team without delaying the project schedule.

**Clarity:**
- The City's Project Manager shall clearly lay out the project goals at the beginning of the project, and communicate additional expectations as soon as they are known.
- The Consultant's Project Manager shall request clarification in a timely fashion from the City's Project Team whenever required in order to understand the City's expectations.
- All communication shall be presented in a clear and concise manner.
- Monthly Status Report: With each monthly invoice, the Consultant's Project Manager shall provide a signed *Monthly Status Report* and document in that report any project questions/issues/concerns to be addressed by the Project Team.
- Questions/problems identified in the *Monthly Status Report* shall be promptly addressed by the entire Project Team.

**Citizen Contacts:**
*Citizen Correspondence:*
- The Consultant shall provide copies of all correspondence with property owners and third parties associated with the project (other than subconsultants) according to contract requirements.
- The Consultant shall not convey to citizens information on City policies or procedures unless otherwise directed by the City's Project Manager.
- The Consultant shall represent the City in a professional manner.

*Public Meetings:*
- The Consultant shall participate in a professional manner in all public meetings at a level determined by the City's Project Manager (e.g. serve as main speaker, share speaking responsibilities with P.M., answers questions etc.).

- The Consultant shall prepare exhibits which are clear, understandable information meeting the specifications set forth by the City's P.M and the contract.

- The City's Project Manager will provide a clear description of all exhibits, Powerpoint presentations, handouts etc. to be included in the public meeting. The City's Project Manager will provide a clear explanation of which topics the Consultant will be responsible to present at the meeting.

## PROVIDING QUALITY SUBMITTALS
- The Consultant is responsible to ensure that their QA/QC plan is followed throughout the project.

- The Consultant shall provide recommendations/solutions that are innovative, appropriate, practical, feasible and cost effective that meet the goals of the project.

- The Consultant shall submit high quality work that meets all City standards, criteria and requirements as set forth in the Contract Scope.

- The City's Project Team shall provide to the Consultant's Project Manager clear, consistent, and timely written comments on submittals.

## MEETING MILESTONE DEADLINES
- The Consultant shall meet all milestone deadlines as identified in the Contract Scope.

- The City's Project Team shall meet all review milestone deadlines as identified in the Contract Scope.

## MEETING BUDGETS
- The Consultant shall work within the parameters of the budget and invoicing procedures as specified in the Contract Scope.

- No transition of funds from one task or another, or use of Specified or Unspecified Additional Services monies shall occur without prior written approval from the City's Project Manager.

- The Consultant's Project Manager is responsible for recommending alternative selections, design parameters, proposed alignments, major project features, special provisions etc. that follow City standard practices and meet the goals of the project. The Consultant's Project Manager is responsible to obtain clarification from the City's Project Manager prior to spending significant time on major tasks. The City will not compensate the Consultant for any alternatives, alignments, submittals etc., developed by the Consultant without prior approval from the City's Project Manager that do not meet the goals of the project.

# MONTHLY PROJECT STATUS REPORT



**CHARLOTTE.**

**PROJECT: Various Storm Water Services**   **Engineering Consultant: Armstrong Glen, P.C.**

**Reporting Month/Year:**                     **Consultant Project Manager:**

**Date Report Submitted:**                   **City Project Manager:**

**DIRECTIONS:**
- ► Consultant to fill out Sections I & II each month and submit with invoice (hard copy or digital).
- ► City Project Manager to review, make comments in Section III, provide a copy back to consultant, and keep a copy in project files.

**SECTION I – CONSULTANT PROJECT TASK STATUS:** Describe progress on tasks worked on in the last month, listed by contract subtask, and document the % complete for each task.

| Task | % of Total Task Work Complete |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |

**SECTION II – CONSULTANT'S ISSUE UPDATE:** Provide the status on all issues identified in Sections II and III of the previous month's report. Review performance expectations as listed in the Professional Services Contract and identify any new performance issues. Omit items identified as "Completed" in last month's report.

| Issue | New? | Action to be taken/By whom | Status |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |

**SECTION III – CITY PROJECT MANAGER'S COMMENTS:** Provide comments regarding the Consultant's report given above. Review performance expectations as listed in the Professional Services Contract and identify any new performance issues. Comments related to the City's Project Team performance may also be recorded here.

| Issue or Comment | Action to be taken/By whom |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| 6. | |
| 7. | |

 **REMEMBER OUR KEY PROJECT PERFORMANCE EXPECTATIONS** 
**Fulfilling Contract Obligations    Meeting Milestone Deadlines & Budgets**
**Providing Timely / Clear Communication & Quality Submittals**

FORM REVISED JULY 6, 2004



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
1/4/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: Debbie Ellerbe | | |
|---|---|---|---|---|
| Peoples First Insurance | | PHONE (A/C, No, Ext): (803)324-5262 | | FAX (A/C, No): (803)329-5301 |
| 466 Hood Center Dr. | | E-MAIL ADDRESS: dellerbe@peoplesfirstinsurance.com | | |
| P.O. Box 66 | | | | |
| Rock Hill     SC  29731 | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | | INSURER A: Hartford Fire Ins Co | | 19682 |
| Armstrong Glen, P.C. | | INSURER B: Hartford Underwriters | | 30104 |
| 9731-L Southern Pine Blvd | | INSURER C: | | |
| PO Box 7326 | | INSURER D: | | |
| Charlotte      NC  28241 | | INSURER E: | | |
| | | INSURER F: | | |

## COVERAGES    CERTIFICATE NUMBER:11-12 Master    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY CLAIMS-MADE X OCCUR | | X | 22SBAVE6616 | 4/25/2011 | 4/25/2012 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY PRO-JECT LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| B | **AUTOMOBILE LIABILITY** X ANY AUTO ALL OWNED AUTOS X HIRED AUTOS SCHEDULED AUTOS X NON-OWNED AUTOS | | | 22UECIA3775 | 4/25/2011 | 4/25/2012 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Uninsured motorist combined | $ 1,000,000 |
| A | X UMBRELLA LIAB X OCCUR EXCESS LIAB CLAIMS-MADE DED X RETENTION $ 10,000 | | | 22SBAVE6616 | 4/25/2011 | 4/25/2012 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | | $ |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) Y/N N N/A If yes, describe under DESCRIPTION OF OPERATIONS below | | | 22WECCC7809 | 4/25/2011 | 4/25/2012 | X WC STATU-TORY LIMITS / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 500000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Re:
Various Pond and Dam Rehabilitation Projects
Various Storm Drainage Services
CMU Dry Storage Shed
Prosperity Ridge Road Connection End Wall
Certificate Holder is Added as Additional Insured in respects to General Liability; per form IH 1200
(11-85).

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| (704)632-8309     erodriguez@charlottenc.gov City of Charlotte Engineering and Property Management Eugenia Rodriguez 600 E. Fourth Street Charlotte, NC  28202 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE Mac Ellerbe/DEBELL    *Clarence W. Ellerbe Jr. CPCU* |

ACORD 25 (2010/05)    © 1988-2010 ACORD CORPORATION. All rights reserved.
INS025 (201005).01    The ACORD name and logo are registered marks of ACORD

## COMMENTS/REMARKS

Form SS0008 includes Blanket Waiver of Subrogation when required in contract.
Forms attached

COPYRIGHT 2000, AMS SERVICES INC.

POLICY NUMBER: 22 SBA VE6616



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ADDITIONAL INSURED - PERSON-ORGANIZATION


CITY OF ROCK HILL
ATTN: SAFETY & INS DIVISION
P O BOX 11706
ROCK HILL, SC 29731

OWNERS OR CONTR.
PINE BROOK CENTER LTD, CHILDRESS KLEIN PROPERTIES
2800 ONE FIRST UNION CENTER
301 S COLLEGE ST
CHARLOTTE, NC 28202-6021


CD CAPITAL
1111 OLD EAGLE SCHOOL RD
WAYNE PA 19087

CITY OF CHARLOTTE
600 EAST FOURTH ST
CHARLOTTE NC 28202

# Amendment 1

# AMENDMENT NUMBER 1
## TO CONTRACT 1200218
## FOR ENGINEERING SERVICES

**THIS AMENDMENT 1** to the Contract for Engineering Services (the "Amendment") is made and entered into this _3 rd_ day of _October_, 2014, by and between the **CITY OF CHARLOTTE**, a North Carolina municipal corporation (the "City") and **ARMSTRONG GLEN, P.C.,** a South Carolina Corporation with offices in Charlotte, North Carolina (the "Engineer").

**WHEREAS**, the City and the Engineer entered into a written Contract for Various Storm Drainage Improvement Projects, dated November 28, 2011, **Contract Number 1200218** (the "Contract");

**WHEREAS**, the parties now desire to add funding by exercising the first renewal as approved by City Council on November 28, 2011;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, the parties hereby amend the Contract as follows:

1.  **ARTICLE 7 – COMPENSATION AND PAYMENTS,** Section 7.1, **"Hourly and Unit Price Basis Allowances"** is amended by adding **$1,000,000** to the original $1,000,000 allowance, for a new total of **$2,000,000**.

2.  **ARTICLE 7 – COMPENSATION AND PAYMENTS,** Section 7.4, **"Summary of Fees and Allowances"** is amended as follows:

|  | Original | Amendment 1 | New Total |
|---|---|---|---|
| Hourly and Unit Price Basis Allowances | $1,000,000 | $1,000,000 | **$2,000,000** |
| **Total Maximum Fees and Allowances** | $1,000,000 | $1,000,000 | **$2,000,000** |

The amended contract amount is **$2,000,000** and shall not be exceeded.

3.  **EXHIBIT 2 – FEE SCHEDULE/BREAKDOWN** is amended by incorporating Amendment 1 to Exhibit 2 for new task orders.

4.      **EXHIBIT 4 – <u>ORGANIZATION CHART</u>** is amended by incorporating Amendment 1 to Exhibit 4.

5.      **EXHIBIT 5 – <u>SMALL BUSINESS OPPORTUNITY PROGRAM</u>** is amended by incorporating **Amendment 1 to Exhibit 5**.

6.      The E-Verify Certification is incorporated into the Contract as **Exhibit 8.**

7.      Defined terms used and not defined herein shall have the meanings assigned to them in the Contract.

8.      In all other respects and except as modified herein, the terms of the Contract shall remain in full force and effect.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**THIS AMENDMENT** is made and entered into as of the day and year first written above for **Amendment Number 1** to the Contract for Engineering Services, **Contract Number 1200218,** in an amount not to exceed **$1,000,000**.

**ARMSTRONG GLEN, P.C.**

By: _[signature]_

WILLIAM H. ARMSTRONG
*Print Name*

Title: PRES.

Date: SEPT. 18, 2014

**ATTEST**

By: _[signature]_

JOSH LETOURNEAU
*Print Name*

Title: PM

Date: 9-18-14

**CITY OF CHARLOTTE**

By: _[signature]_

Debra D. Campbell
*Print Name*

Title: Assistant City Manager

Date: 10/3/2014

**ATTEST**

By: _[signature]_

Angela Maynard
*Print Name*

Title: Admin Asst.

Date: 10/3/14

# EXHIBIT 5

## SMALL BUSINESS OPPORTUNITY PROGRAM

## REQUIREMENTS FOR PROFESSIONAL SERVICE CONTRACTS

The City's Small Business Opportunity Program (SBO Program) applies to all aspects of the City's contracting and procurement programs and its provisions are incorporated in their entirety into this Contract by reference. In order to comply with the SBO Program, the Engineer will need to complete the SBO Program forms referenced below at appropriate times during the term of the Contract.

**The SBE Utilization Commitment for this Amendment #1 is <u>10%</u>.**

### SBO Program Form 3 – Subconsultant/Supplier Utilization Commitment
Once all subcontracts have been finalized, and prior to the finalization of the Contract, the Engineer will complete **SBOP Form 3** and submit it for inclusion in the Contract. This will constitute the Engineer's formal commitment to utilize the specified SBE and non-SBE firms as subconsultants or suppliers in the performance of the Contract.

### SBO Program Form 4 – Letter of Intent
For each SBE firm listed on **SBO Form 3**, the Engineer will complete a Letter of Intent in the form of **SBOP Form 4**. A copy of each Letter of Intent, properly signed by the Engineer and the SBE, will become part of the Contract. A copy of each Letter of Intent, signed by both the Engineer and the SBE, will be provided to the E&PM SBO Liaison and kept in the contract file as an official record.

### SBO Program Form 6 – Payment Affidavit - Subconsultant/Supplier Utilization
The Engineer must submit a completed **SBOP Form 6** with each invoice or payment request. All first tier subconsultants and suppliers to the contract must be listed on every SBOP Form 6 with current payment amount made by the Engineer. If no payment was made by the Engineer to a particular subconsultant or supplier the payment amount will be zero.

### SBO Program Provisions Applicable After Contract Award
Please note in particular the following Sections of the SBO Program that relate to post award requirements and activity:

- Compliance with committed SBE utilization level throughout the term of the Contract per Part D Section 2 of the SBO Program.
- Replacing an SBE on a Contract per Part D Section 5 of the SBO Program.
- Changes in Scope of Work or Adding Subcontracting Opportunities per Part D Section 6 of the SBO Program.
- Payments to subcontractors per Part D Section 7 of the SBO Program.
- Submittal of utilization reports and documentation of payments per Part D Section 8.

4



**Small Business Opportunity Program**         SBOP Form 6

*PAYMENT AFFIDAVIT - SUBCONSULTANT / SUPPLIER UTILIZATION*

To be submitted with **each** request for payment from the City of Charlotte.   *Copy this form as needed.*

**Project Name:** ___Storm Drainage Improvement Projects___

**Consultant Name:** ___Armstrong Glen, P.C.___     **Payment / Invoice #** _____

**Contract Number:** ___1200218___     **Invoice Amount:**     $ _____

**Payment Period:** From _____ To _____     **City KBU:** (Department) ___Engineering & Property Mgmt___

**FINAL PAYMENT** ☐   Check this box <u>only</u> when submitting Final Pay request.

| Section 1: Payments to SUBCONSULTANTS |
|---|

Complete the chart below for all subconsultants used on the Project/Contract regardless of dollar amount.  All subconsultants must be registered in the City's Vendor Management System.

| Subconsultant Name | Description of Work Performed | NIGP Commodity Code | VMS # | Payments this Period | Cumulative Payments |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Section 2: Payments to SUPPLIERS |
|---|

All suppliers providing goods under City contracts must be listed on the Sales Tax Statement submitted with each pay request.  The City may request on a case-by-case basis that the Consultant require certain suppliers to be registered in the City's Vendor Management System and may withhold payment of any amounts due the Consultant in the event the Consultant fails to comply with such request.

The undersigned Company certifies the preceding chart is a true and accurate statement of all payments that have been or will be made to subconsultants on this Project/Contract, and that all Suppliers providing goods under this contract have been listed in the Sales Tax Statements submitted to the City in connection with this Payment Affidavit.  If no subconsultants or suppliers are listed on the preceding chart or Sales Tax Statements, the Company certifies that no subconsultants or suppliers were used in performing the Project/Contract for the payment period indicated.  Failure to provide accurate and truthful information is a violation of the Small Business Opportunity Program and may result in the sanctions prescribed therein.

This _____ day of _____ 201 _____

_____          _____
Signature                                                    Print Name and Title

<u>To be completed by KBU for FINAL PAYMENT</u>

SBE Goal: _____ %

Total Paid to Consultant:  $ _____     SBE Goal Commitment: _____ %

Total Paid to SBEs:  $ _____     SBE Goal Attainment: _____ %

Revised April 8, 2011

5

Case 3:21-cv-00232-MOC-SCR   Document 1-3   Filed 05/19/21   Page 59 of 88

**EXHIBIT 8**

**E-VERIFY CERTIFICATION**

This E-Verify Certification is provided to the City of Charlotte (the "City") by the company signing below ("Company") as a prerequisite to the City considering Company for award of a City contract (the "Contract").

1. Company understands that:

    a.  E-Verify is the federal program operated by the United States Department of Homeland Security and other federal agencies to enable employers to verify the work authorization of employees pursuant to federal law, as modified from time to time.

    b.  Article 2 of Chapter 64 of the North Carolina General Statutes requires employers that transact business in this state and employ 25 or more employees in this state to: (i) verify the work authorization of newly hired employees who will be performing work in North Carolina through E-Verify; and (ii) maintain records of such verification (the "E-Verify Requirements").

    c.  North Carolina General Statute 160A-20.1(b) prohibits the City from entering into contracts unless the contractor and all subcontractors comply with the E-Verify Requirements.

2. As a condition of being considered for the Contract, Company certifies that:

    a.  If Company has 25 or more employees working in North Carolina (whether now or at any time during the term of the Contract), Company has complied and will comply with the E-Verify Requirements with respect to Company employees working in North Carolina; and

    b.  Regardless of how many employees Company has working in North Carolina, Company will take appropriate steps to ensure that each subcontractor performing work on the Contract that has 25 or more employees working in North Carolina complies with the E-Verify Requirements.

3. Company acknowledges that the City will be relying on this Certification in entering into the Contract, and that the City may incur expenses and damages if the City enters into the Contract with Company and Company or any subcontractor fails to comply with the E-Verify Requirements. Company agrees to indemnify and save the City harmless from and against all losses, damages, costs, expenses (including reasonable attorney's fees) obligations, duties, fines and penalties (collectively "Losses") arising directly or indirectly from violation of the E-Verify Requirements by Company or any of its subcontractors, including without limitation any Losses incurred as a result of the Contract being deemed void.

Signature of Company's Authorized Representative    Date: SEPT. 18, 2014

Print Name and Title: WILLIAM H. ARMSTRONG, PRES

6

# Amendment 2

| | |
|---|---|
| Purchase Order : | |
| Contract Number: | **1200218** |
| AWARD DATE: | **11/28/2011** |
| EXPIRATION DATE: | **12/31/2016** |
| Amendment # 1 Date: | **10/03/2014** |
| Amendment # 2 Date: | *10/26/2015* |
| NEW EXPIRATION DATE: | **12/31/2019** |



**CHARLOTTE**

**CONTRACT FOR ENGINEERING SERVICES**

**PROJECT:**
**VARIOUS STORM DRAINAGE SERVICES**

**OWNER:**
**CITY OF CHARLOTTE**
**ENGINEERING & PROPERTY MANAGEMENT**

**COMPANY:**
**ARMSTRONG GLEN P.C.**

*Version 14.5.16*

**AMENDMENT NUMBER 2**
**TO CONTRACT 1200218**
**FOR ENGINEERING SERVICES**

**THIS AMENDMENT 2** to the Contract for Engineering Services (the "Amendment") is made and entered into this _____ day of _____ October _____, 2015, by and between the **CITY OF CHARLOTTE**, a North Carolina municipal corporation (the "City") and **ARMSTRONG GLEN, P.C.,** a South Carolina Corporation with offices in Charlotte, North Carolina (the "Engineer").

**WHEREAS**, the City and the Engineer entered into a written Contract for Various Storm Water Services Project, dated November 28, 2011, **Contract Number 1200218** (the "Contract");

**WHEREAS**, the City has recently converted to new accounting software, **Contract 1200218** shall hereinafter be identified as **Contract 2015000322**;

**WHEREAS,** the parties now desire to add time and money by exercising the second renewal as approved by City Council on November 28, 2011;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, the parties hereby amend the Contract as follows:

1. Contract Section, **ARTICLE 4 – TIME OF BEGINNING AND COMPLETION,** is amended to extend the original end date of **December 31, 2016** to **December 31, 2019.**

2. Contract Section, **ARTICLE 7 – COMPENSATION AND PAYMENTS,** Section 7.1, **"Hourly and Unit Price Basis Allowances"** is amended as follows:

|  | Original | Amendment 1 | Amendment 2 | New Total |
|---|---|---|---|---|
| Hourly and Unit Price Basis Allowances | $1,000,000 | $1,000,000 | $1,000,000 | **$3,000,000** |
| **Total Maximum Fees and Allowances** | **$1,000,000** | **$1,000,000** | **$1,000,000** | **$3,000,000** |

3. **EXHIBIT 5 – SMALL BUSINESS OPPORTUNITY PROGRAM** is amended by incorporating **Amendment 1 to Exhibit 5**.

1

4.      Defined terms used and not defined herein shall have the meanings assigned to them in the Contract.

5.      In all other respects and except as modified herein, the terms of the Contract shall remain in full force and effect.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**THIS AMENDMENT** is made and entered into as of the day and year first written above for **Amendment Number 2** to the Contract for Engineering Services, **Contract Number 2015000322,** in an amount not to exceed **$1,000,000.**

**ARMSTRONG GLEN, P.C.**

By: _____

Print Name: _JOSH LETOURNEAU_

Title: _PROJECT MANAGER_

Date: _10-20-15_

**ATTEST**

By: _____

Print Name: _WILLIAM H. ARMSTRONG_

Title: _PRES_

Date: _OCT 20, 2015_

**CITY OF CHARLOTTE**

By: _____

Print Name: _HYONG LI_

Title: _ACM_

Date: _10.26.15_

**ATTEST**

By: _Angela Maynard_

Print Name: _Angela Maynard_

Title: _Admin Asst_

Date: _10.26.15_

3

**EXHIBIT 5**

**SMALL BUSINESS OPPORTUNITY PROGRAM**

**REQUIREMENTS FOR ENGINEERING SERVICES CONTRACTS**

The City's Small Business Opportunity Program (SBO Program) applies to all aspects of the City's contracting and procurement programs and its provisions are incorporated in their entirety into this Contract by reference. In order to comply with the SBO Program, the Engineer will need to complete the SBO Program forms referenced below at appropriate times during the term of the Contract.

**The SBE Utilization Commitment for this Amendment #2 is <u>10%.</u>**

**<u>SBO Program Form 3 – Subconsultant/Supplier Utilization Commitment</u>**
Once all subcontracts have been finalized, and prior to the finalization of the Contract, the Engineer will complete **SBOP Form 3** and submit it for inclusion in the Contract. This will constitute the Engineer's formal commitment to utilize the specified SBE and non-SBE firms as subconsultants or suppliers in the performance of the Contract.

**<u>SBO Program Form 4 – Letter of Intent</u>**
For each SBE firm listed on **SBO Form 3**, the Engineer will complete a Letter of Intent in the form of **SBOP Form 4**. A copy of each Letter of Intent, properly signed by the Engineer and the SBE, will become part of the Contract. A copy of each Letter of Intent, signed by both the Engineer and the SBE, will be provided to the E&PM SBO Liaison and kept in the contract file as an official record.

**<u>SBO Program Form 6 – Payment Affidavit - Subconsultant/Supplier Utilization</u>**
The Engineer must submit a completed **SBOP Form 6** with each invoice or payment request. All first tier subconsultants and suppliers to the contract must be listed on every SBOP Form 6 with current payment amount made by the Engineer. If no payment was made by the Engineer to a particular subconsultant or supplier the payment amount will be zero.

**<u>SBO Program Provisions Applicable After Contract Award</u>**
Please note in particular the following Sections of the SBO Program that relate to post award requirements and activity:

- Compliance with committed SBE utilization level throughout the term of the Contract per Part D Section 2 of the SBO Program.
- Replacing an SBE on a Contract per Part D Section 5 of the SBO Program.
- Changes in Scope of Work or Adding Subcontracting Opportunities per Part D Section 6 of the SBO Program.
- Payments to subcontractors per Part D Section 7 of the SBO Program.
- Submittal of utilization reports and documentation of payments per Part D Section 8.

4



**Small Business Opportunity Program**　　SBOP Form 3
**SUBCONTRACTOR / SUPPLIER UTILIZATION COMMITMENT** (PAGE 1 OF 2)

This form **MUST** be submitted within the time frame established by the City

Per Part C, Section 3.6 of the SBO Policy (v.2009)¹ *the Subcontractor/Supplier Utilization Commitment (Form 3), captures information regarding the SBEs and other subcontractors, subconsultants, and suppliers that the Proposer intends to use on the Contract.*

| Consultant Name: | Armstrong Glen, P.C. |
|---|---|
| Project Name: | Storm Drainage Improvement Projects |
| Contract Number: | 2015000322 |

1.　List below all **SBEs** that you intend to use on this contract

| SBE Name | Description of Work / Materials | NIGP Commodity Code | VMS # | Total Projected Utilization ($) |
|---|---|---|---|---|
| Boyle Consulting Engineers, PLLC | Geotechnical – Soils Engineering | 90742 | 9322 | 10,000 |
| Habitat Assessment & Restoration Professionals | Environmental & Ecological Services | 92600 | 55809 | 5,000 |
| Survey & Mapping Control Inc. | Land Surveyor Services Mapping Services | 92586 96252 | 8899 | 75,000 |
| D&A Wolverine PLLC | Video Scanning of Sewers, Waterwells etc. | 96292 | 26581 | 10,000 |
| | | | | |

**NOTE**: You will only receive credit for SBEs who have an active Certification with the City, as of the Proposal Due Date.

2.　List below all **non-SBEs** that you intend to use on this contract

| Firm Name | Description of Work / Materials | NIGP Commodity Code | VMS # | Total Projected Utilization ($) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | |
|---|---|
| Total Subconsultant / Supplier Utilization (including SBEs and Non-SBEs) | $100,000 |
| Total SBE Utilization | $100,000 |
| Total Contract Amount (including Contingency) | $ 1,000,000 |
| Percent SBE Utilization (Total SBE Utilization *divided by* Total Contract Amount) | 10% |

5

Case 3:21-cv-00232-MOC-SCR　Document 1-3　Filed 05/19/21　Page 67 of 88

**Letters of Intent submitted upon notice from the City**

Per Part C, Section 3.7 of the SBO Policy (v.2009), *within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent (*SBOP Form 4*) for each SBE listed on* **SBOP Form 3** *and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer. The City shall not count proposed SBE utilization for which it has not received a Letter of Intent by this deadline unless the SBE certifies to the City that it originally agreed to participate in the Contract at the level reported by the Proposer, but subsequently declined to do so.*

**Adding subcontractors, subconsultants or suppliers after submitting this form**

Nothing in this certification shall be deemed to preclude you from entering into subcontracting or subconsulting arrangements after submission of this form. However, per Part D of the SBO Policy (v.2009), you must comply with the following:

- You must maintain the level of SBE participation proposed on this form throughout the duration of the Contract, except as specifically allowed in Part D, Section 2.2.
- If you need to terminate or replace an SBE, you must comply with Part D, Section 5.
- If the scope of work on the Contract increases, or if you elect to subcontract any portion of work not identified on this form as being subcontracted, then you must comply with Part D, Section 6.
- A Letter of Intent (**SBOP Form 4**) must also be submitted for each SBE you add subsequent to contract award.

**All Subconsultants, Consultants and Suppliers must be registered with the City of Charlotte.**

Pursuant to the City's Vendor Registration Policy, each subcontractor, subconsultant or supplier (non-SBE and SBEs) that you use on this contract must be registered in the City's vendor management system (VMS) database, indicated by a VMS Number. You will need to provide the VMS # for each subconsultant or supplier used on this contract as a condition for receiving final payment on this Contract.

**Signature**

Your signature below indicates that the undersigned Company certifies and agrees that:

(a) It has complied with all provisions of the SBO Program; and

(b) Failure to properly document such compliance in the manner and within the time periods established by the SBO Program will entitle the City to reject your Bid/Proposal and recover damages.

| JOSH LETOURNEAU | PROJECT MANAGER | 10-20-15 |
|---|---|---|
| Signature of Authorized Official | Printed Name | Title | Submittal Date |

6



**CHARLOTTE.**

**Small Business Opportunity Program**         **SBOP Form 4**
Letter of Intent

*Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on **SBOP Form 3** and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

*Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, Proposers shall be required to provide a **FORM 4** for each SBE added to a Contract subsequent to Contract award.*

| Project Name: | Various Storm Water Services |
|---|---|
| Contract Number: | 2015000322 |

| To be completed by the Engineer | | |
|---|---|---|
| Name of Consultant: Armstrong Glen, P.C. | VMS #: | 10366 |
| Address: 9731 Southern Pine Blvd., Suite L, Charlotte. NC 28273 | | |
| Contact Person: Josh Letourneau | Email: | jletourneau@armstrongglen.com |
| Telephone: 704-529-0345 | Fax: 704-529-0493 | |

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.          YES ☐   NO ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE.  On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

Cost of work to be performed by SBE:          10,000

Cost of work to be performed by SBE as a percentage of total amount of City contract:          1%

| To be completed by SBE | | |
|---|---|---|
| Name of SBE: Boyle Consulting Engineers, PLLC | VMS #: 9322 | |
| Address: 4340 Taggart Creek Rd., Suite H, Charlotte, NC 28208 | | |
| Contact Person: Charles G. Boyle | Email: | cboyle@boyleconsulting.com |
| Telephone: 704-676-0778 | Fax: 704-676-0596 | |

<u>NOTE</u>: SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

| Engineer: _signature_ *PROJECT MANAGER* | Date: 10-20-15 |
|---|---|
| Signature and Title | |
| SBE Firm: _signature_ *PRINCIPAL* | Date: 9/29/15 |
| Signature and Title | |

*p̸ 7*



**Small Business Opportunity Program**  **SBOP Form 4**
Letter of Intent

Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], *within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on SBOP Form 3 and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, *Proposers shall be required to provide a FORM 4 for each SBE added to a Contract subsequent to Contract award.*

| Project Name: | Various Storm Water Services |
|---|---|
| Contract Number: | 2015000322 |

---

**To be completed by the Engineer**

Name of Consultant: Armstrong Glen, P.C.   VMS #:   10366

Address:  9731 Southern Pine Blvd., Suite L, Charlotte. NC 28273

Contact Person:  Josh Letourneau   Email:  jletourneau@armstrongglen.com

Telephone:  704-529-0345   Fax:  704-529-0493

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.   YES ☐   NO ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE.  On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

Cost of work to be performed by SBE:  5,000

Cost of work to be performed by SBE as a percentage of total amount of City contract:  0.5%

---

**To be completed by SBE**

Name of SBE:  Habitat Assessment & Restoration Professionals   VMS #:  55809

Address:  301 McCullough Dr., Suite 400, Charlotte, NC 28262

Contact Person:  Karri Blackmon   Email:  karri@habitatassessment.com

Telephone:  704-841-2841   Fax:  704-841-2447

<u>NOTE</u>:  SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

Engineer:  _Jim Fortner_  PROJECT MANAGER  Date:  10-20-15
Signature and Title

SBE Firm:  _K Blackmon_  President   Date:  10/20/15
Signature and Title

8



**CHARLOTTE.**

### Small Business Opportunity Program
Letter of Intent

**SBOP Form 4**

Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], *within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on SBOP Form 3 and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, *Proposers shall be required to provide a FORM 4 for each SBE added to a Contract subsequent to Contract award.*

| Project Name: | Various Storm Water Services |
|---|---|
| Contract Number: | 2015000322 |

| To be completed by the Engineer | |
|---|---|
| Name of Consultant: Armstrong Glen, P.C. | VMS #: 10366 |
| Address: 9731 Southern Pine Blvd., Suite L, Charlotte. NC 28273 | |
| Contact Person: Josh Letourneau | Email: jletourneau@armstrongglen.com |
| Telephone: 704-529-0345 | Fax: 704-529-0493 |

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.    YES ☐    NO ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE.  On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

_____

| | |
|---|---|
| Cost of work to be performed by SBE: | 75,000 |
| Cost of work to be performed by SBE as a percentage of total amount of City contract: | 7.5% |

| To be completed by SBE | |
|---|---|
| Name of SBE: Survey & Mapping Control Inc. | VMS #: 8899 |
| Address: 12727 Dorman Rd., Pineville, NC 28134 | |
| Contact Person: Lisa L. Sanders | Email: lisa@sandmc.com |
| Telephone: 704-542-9095 | Fax: 704-542-9293 |

**NOTE:** SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

| Engineer: _____ PROJECT MANAGER Date: 10-20-15 |
|---|
| Signature and Title |
| SBE Firm: _____ President    Date: 9.30.2015 |
| Tony B Sanders Signature and Title |

8 9

1



**Small Business Opportunity Program**                         **SBOP Form 4**
Letter of Intent

Per Part C, Section 3.7 of the SBO Policy (v.2009)[1], *within three (3) Business Days after receiving a request from the City (or within such longer time as may be communicated by the City in writing), Proposers must submit a separate Letter of Intent for each SBE listed on **SBOP Form 3** and for any additional SBEs for which the Proposer seeks credit under the last sentence of Part C, Section 3.5. Each Letter of Intent must be executed by both the SBE and the Proposer.*

Per Part D, Section 5.3.1, in the event Modified GFEs are incorporated into a Project, *Proposers shall be required to provide a **FORM 4** for each SBE added to a Contract subsequent to Contract award.*

| **Project Name:** | Various Storm Water Services |
|---|---|
| **Contract Number:** | 2015000322 |

| To be completed by the Engineer | |
|---|---|
| Name of Consultant: Armstrong Glen, P.C. | VMS #: 10366 |
| Address: 9731 Southern Pine Blvd., Suite L, Charlotte. NC 28273 | |
| Contact Person: Josh Letourneau | Email: jletourneau@armstrongglen.com |
| Telephone: 704-529-0345 | Fax: 704-529-0493 |

I, the bidder, have provided a Quick Pay Commitment to this SBE for the work identified below. I have submitted, either previously or with this Form 4, a copy of said Agreement.    YES ☐    NO ☐

Identify in complete details the scope of work to be performed or item(s) to be supplied by the SBE.  On unit price bids, identify the bid line item the SBE's scope of work or supply corresponds:

_____

| Cost of work to be performed by SBE: | 10,000 |
|---|---|
| **Cost of work to be performed by SBE as a percentage of total amount of City contract:** | **1%** |

| To be completed by SBE | |
|---|---|
| Name of SBE: D&A Wolverine PLLC | VMS #: 26581 |
| Address: 4136 Brownwood Ln. NW, Concord, NC 28027 | |
| Contact Person: Christopher Fleck | Email: chris@dnawolverine.com |
| Telephone: 704-785-9664 / 517-404-6588 | Fax: |

<u>NOTE</u>: SBEs must be actively Certified with the City, as of the Bid Opening, in order to be counted towards the SBE Goal for the project.

Upon execution of a Contract with the City for the above referenced project, the Consultant certifies that it intends to utilize the SBE listed above, and that the description, cost and percentage of work to be performed by the SBE as described above is accurate. The SBE Firm certifies that it has agreed to provide such work/supplies for the amount stated above.

| Engineer: *[signature]* PROJECT MANAGER Date: 10-20-15 |
|---|
| Signature and Title |
| SBE Firm: *[signature]* Date: 9/29/2015 |
| Signature and Title |
| MANAGING MEMBER |



## Small Business Opportunity Program
*PAYMENT AFFIDAVIT - SUBCONSULTANT / SUPPLIER UTILIZATION*     SBO FORM 6

To be submitted with <u>each</u> request for payment from the City of Charlotte. Copy this form as needed.

| | | | |
|---|---|---|---|
| **Invoice Amount:** | | **Payment or Invoice #:** | |
| **Project Name:** | Storm Drainage Improvement Projects | **Contract Number:** | 2015000322 |
| **Payment Period:** | From _____ To _____ | **City KBU:** (Department) | Engineering & Property Management |

**FINAL PAYMENT** ☐

---

**Section 1: Payments to SUBCONSULTANTS**

Complete the chart below for all subconsultant used on the Project/Contract regardless of dollar amount.  All subconsultants must be registered in the City's Vendor Registration System.

| Subconsultant's Name | Description of Work Performed | NIGP Code | City VMS Number | Payment this Pay Period | Cumulative Payments |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

---

**Section 2: Payments to SUPPLIERS**

All suppliers providing goods under City contracts must be listed on the Sales Tax Statement submitted with each pay request.  The City may request on a case-by-case basis that the Contractor require certain suppliers to be registered in the City's Vendor Registration System and may withhold payment of any amounts due the Contractor in the event the Contractor fails to comply with such request.

The undersigned Company certifies the preceding chart is a true and accurate statement of all payments that have been or will be made to subconsultants and suppliers on this Project/Contract.  If no subconsultants or suppliers are listed on the preceding chart, the Company certifies that no subconsultants or suppliers were used in performing the Project/Contract for the payment period indicated.  Failure to provide accurate and truthful information is a violation of the Small Business Opportunity Program and is subject to the sanctions prescribed therein.

This _____ day of _____ 201 ____

| | |
|---|---|
| Name of Company | VMS # |
| Signature | Print Name and Title |

To be completed by KBU for FINAL PAYMENT

| | | | |
|---|---|---|---|
| Total Paid to Engineer | _____ | Total Paid to SBEs | _____ |
| SBE Goal | _____ | SBE Goal Attainment | _____ |
| SBE Goal Commitment | _____ | | |

11

Case 3:21-cv-00232-MOC-SCR   Document 1-3   Filed 05/19/21   Page 73 of 88

# Amendment 3

**AMENDMENT NUMBER 3**
**TO CONTRACT 2015000322**
**FOR ENGINEERING SERVICES**

**THIS AMENDMENT 3** to the Contract for Engineering Services (the "Amendment") is made and entered into this _____/_____ day of _____November_____, 2016, by and between the **CITY OF CHARLOTTE**, a North Carolina municipal corporation (the "City") and **ARMSTRONG GLEN, P.C.,** a South Carolina Corporation with offices in Charlotte, North Carolina (the "Engineer").

**WHEREAS**, the City and the Engineer entered into a written Contract for Various Storm Water Services Project, dated November 28, 2011, **Contract Number 1200218 (2015000322)** (the "Contract");

**WHEREAS,** the parties entered into a written contract amendment one exercising the first renewal as approved by City Council on November 28, 2011;

**WHEREAS,** the parties entered into a written contract amendment two exercising the second renewal as approved by City Council on November 28, 2011 and extending the contract end date to December 31, 2019;

**WHEREAS,** the parties now desire to add a new subconsultant to the project team and modify the rates of an existing subconsultant;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, the parties desire to amend the contract as follows:

1.  **ARTICLE 16 – <u>DRUG-FREE WORKPLACE</u>** is deleted in its entirety and RESERVED.

2.  **ARTICLE 19 – <u>COMMERCIAL NON-DISCRIMINATION</u>** is deleted in its entirety and replaced with the following:

    As a condition of entering into this Contract, the Company represents and warrants that it will fully comply with the City's Commercial Non-Discrimination Policy, as described in Section 2, Article V of the City Code, and consents to be bound by the award of any arbitration conducted thereunder. As part of such compliance, the Company shall not discriminate on the basis of race, gender, religion, national origin, ethnicity, age, marital status, familial status, sexual orientation, gender identity, gender expression, or disability in the solicitation, selection, hiring, or treatment of subcontractors, vendors or suppliers in connection with a City contract or contract solicitation process, nor shall the

1

Company retaliate against any person or entity for reporting instances of such discrimination. The Company shall provide equal opportunity for subcontractors, vendors and suppliers to participate in all of its subcontracting and supply opportunities on City contracts, provided that nothing contained in this clause shall prohibit or limit otherwise lawful efforts to remedy the effects of marketplace discrimination that has occurred or is occurring in the marketplace. The Company understands and agrees that a violation of this clause shall be considered a material breach of this Contract and may result in termination of this Contract, disqualification of the Company from participating in City contracts, or other sanctions.

As a condition of entering into this Contract, the Company agrees to: (a) promptly provide to the City all information and documentation that may be requested by the City from time to time regarding the solicitation, selection, treatment and payment of subcontractors in connection with this Contract; and (b) if requested, provide to the City within sixty days after the request a truthful and complete list of the names of all subcontractors, vendors, and suppliers that Company has used on City contracts in the past five years, including the total dollar amount paid by Company on each subcontract or supply contract. The Company further agrees to fully cooperate in any investigation conducted by the City pursuant to the City's Non-Discrimination Policy as set forth in Section 2, Article V of the City Code, to provide any documents relevant to such investigation that are requested by the City, and to be bound by the award of any arbitration conducted under such Policy. The Company understands and agrees that violation of this clause shall be considered a material breach of this Contract and may result in contract termination, disqualification of the Company from participating in City contracts and other sanctions.

The Company further agrees to provide to the City from time to time on the City's request, payment affidavits detailing the amounts paid by Company to subcontractors and suppliers in connection with this Contract within a certain period of time. Such affidavits shall be in the format provided by the City.

3.   **ARTICLE 22 – E-VERIFY** is a new article added to the Contract as follows:

Engineer shall comply with the requirements of Article 2 of Chapter 64 of the North Carolina General Statutes, and shall require each of its subcontractors to do so as well.

4.   **ARTICLE 23 – IRAN DIVESTMENT ACT** is a new article added to the Contract as follows:

The Consultant warrants and certifies as of the Effective Date, the Consultant is not identified on the Final Divestment Act List created by the North Carolina State

2

Treasurer pursuant to NCGS 143-6A-4. The person signing this Contract certifies that he or she is authorized by the Consultant to make the foregoing certification. The Consultant further agrees that it will not utilize on this Contract any subcontractor that is identified on the Final Divestment List.

5.  **EXHIBIT 2 – <u>FEE SCHEDULE/BREAKDOWN</u>** is amended by incorporating **Amendment 3 to Exhibit 2.**

6.  **EXHIBIT 4 – <u>ORGANIZATION CHART</u>** is deleted in its' entirety and replaced with **EXHIBIT 4 (Amendment 3) – <u>ORGANIZATION CHART.</u>**

7.  **EXHIBIT 5 – <u>SMALL BUSINESS OPPORTUNITY PROGRAM</u>** is amended by incorporating **Amendment 1 to Exhibit 5**.

8.  Defined terms used and not defined herein shall have the meanings assigned to them in the Contract.

9.  In all other respects and except as modified herein, the terms of the Contract shall remain in full force and effect.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

3

**THIS AMENDMENT** is made and entered into as of the day and year first written above for **Amendment Number 3** to the Contract for Engineering Services, **Contract Number 2015000322.**

**ARMSTRONG GLEN, P.C.**

By: _____

Print Name: _JOSH LETOURNEAU_

Title: _PROJECT MANAGER_

Date: _10-10-16_

**ATTEST**

By: _____

Print Name: _WILLIAM H. ARMSTRONG_

Title: _PRES_

Date: _10-11-2016_

**CITY OF CHARLOTTE**

By: _Maria N. Miles_

Print Name: _MARIA N. MILES_

Title: _Contracts Manager_

Date: _November 1, 2016_

**ATTEST**

By: _____

Print Name: _Alyota Brown_

Title: _Records Manager_

Date: _11/1/16_

4

**EXHIBIT 2**

**(Amendment 3)**

**FEE SCHEDULE/BREAKDOWN**

I.      The original hourly rates for Survey & Mapping Control, Inc. are deleted in their entirety and replaced with the following:

| | |
|---|---|
| Professional Land Surveyor | $115/hour |
| Two-man Survey Crew | $125/hour |
| Three-man Survey Crew | $150/hour |
| RTK GPS (VRS) Two-Man Survey Crew | $146/hour |
| CAD Survey Technician | $ 81/hour |
| Field Survey Technician | $ 92/hour |

II.     The following firm shall be added to the project team at the rates cited below:

**Spot'em Inc.**

| | |
|---|---|
| Utility Locates | $80/hour (4 hr minimum) |
| Soft Digs | $350/hole |
| Research Fee | $75 |
| Traffic Control | $55/hour |
| Vacuum Excavation: Trailer | $175/hour |
| Vacuum Excavation: Truck | $250/hour |

5

**EXHIBIT 4**
**(Amendment 3)**

**ORGANIZATION CHART**



# EXHIBIT 5

## SMALL BUSINESS OPPORTUNITY PROGRAM

## REQUIREMENTS FOR ENGINEERING SERVICES CONTRACTS

The City's Small Business Opportunity Program (SBO Program) applies to all aspects of the City's contracting and procurement programs and its provisions are incorporated in their entirety into this Contract by reference. In order to comply with the SBO Program, the Engineer will need to complete the SBO Program forms referenced below at appropriate times during the term of the Contract.

**The SBE Utilization Commitment for this Amendment #3 is <u>10%.</u>**

### <u>SBO Program Form 3 – Subconsultant/Supplier Utilization Commitment</u>
Once all subcontracts have been finalized, and prior to the finalization of the Contract, the Engineer will complete **SBOP Form 3** and submit it for inclusion in the Contract. This will constitute the Engineer's formal commitment to utilize the specified SBE and non-SBE firms as subconsultants or suppliers in the performance of the Contract.

### <u>SBO Program Form 4 – Letter of Intent</u>
For each SBE firm listed on **SBO Form 3**, the Engineer will complete a Letter of Intent in the form of **SBOP Form 4**. A copy of each Letter of Intent, properly signed by the Engineer and the SBE, will become part of the Contract. A copy of each Letter of Intent, signed by both the Engineer and the SBE, will be provided to the E&PM SBO Liaison and kept in the contract file as an official record.

### <u>SBO Program Form 6 – Payment Affidavit - Subconsultant/Supplier Utilization</u>
The Engineer must submit a completed **SBOP Form 6** with each invoice or payment request. All first tier subconsultants and suppliers to the contract must be listed on every SBOP Form 6 with current payment amount made by the Engineer. If no payment was made by the Engineer to a particular subconsultant or supplier the payment amount will be zero.

### <u>SBO Program Provisions Applicable After Contract Award</u>
Please note in particular the following Sections of the SBO Program that relate to post award requirements and activity:

- Compliance with committed SBE utilization level throughout the term of the Contract per Part D Section 2 of the SBO Program.
- Replacing an SBE on a Contract per Part D Section 5 of the SBO Program.
- Changes in Scope of Work or Adding Subcontracting Opportunities per Part D Section 6 of the SBO Program.
- Payments to subcontractors per Part D Section 7 of the SBO Program.
- Submittal of utilization reports and documentation of payments per Part D Section 8.

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 10/17/2016 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Cyndy Cagle | | |
|---|---|---|---|
| BB&T Insurance Services, Inc.<br>3318 West Friendly Avenue<br>Suite 400<br>Greensboro, NC 27410 | PHONE (A/C, No, Ext): 336-547-2137 | | FAX (A/C, No): 888-831-8409 |
| | E-MAIL ADDRESS: ccagle@bbandt.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : XL Specialty Insurance Company | | 37885 |
| INSURED<br>Armstrong Glen P.C.<br>PO Box 7326<br>Charlotte, NC 28241 | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liai Claims Made Form | | | DPS9716204 | 04/22/2016 | 04/22/2017 | 1,000,000 Each Claim 1,000,000 Annual Agg | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Various Storm Water Services
Amendment 3 to Contract #1200218 (2015000322)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| City of Charlotte<br>Contracts Administrator<br>600 East Fourth Street<br>Charlotte, NC 28202 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>*Cynthia P. Cagle* |

© 1988-2014 ACORD CORPORATION. All rights reserved.

# Amendment 4

|  |  |
|---|---|
| **PURCHASE ORDER :** | |
| **CONTRACT NUMBER:** | **2015000322** |
| **AWARD DATE:** | **11/28/2011** |
| **EXPIRATION DATE:** | **12/31/2022** |
| **AMENDMENT #1  AWARD DATE:** | **10/3/2014** |
| **AMENDMENT #2  AWARD DATE:** | **10/26/2015** |
| **AMENDMENT #3  AWARD DATE:** | **11/1/2016** |
| **AMENDMENT #4  AWARD DATE:** | 12/11/2018 |



**AMENDMENT #4**
**TO**
**CONTRACT FOR PROFESSIONAL SERVICES**


**PROJECT:**
**Storm Drainage Improvement Projects**

**OWNER:**
**CITY OF CHARLOTTE**


**ENGINEER:**
**Armstrong Glen, P.C.**

## AMENDMENT NUMBER 4
## TO CONTRACT 2015000322
## FOR PROFESSIONAL SERVICES

**THIS AMENDMENT 4** to the Contract for Professional Services (the "Amendment") is made and entered into this __11ᵗʰ__ day of __December__ , 2018, by and between the **CITY OF CHARLOTTE**, a North Carolina municipal corporation (the "City") and **ARMSTRONG GLEN, P.C.**, a South Carolina Corporation with offices in Charlotte, North Carolina (the "Engineer").

**WHEREAS**, the City and the Engineer entered into a written Contract for Storm Drainage Improvement Projects, dated November 28, 2011, **Contract Number 2015000322** (the "Contract");

**WHEREAS**, the parties entered into Amendment 1 to the Contract on October 3, 2014, to formalize the addition of funding as approved by City Council on November 28, 2011;

**WHEREAS**, the parties entered into Amendment 2 to the Contract on October 26, 2015, to add additional funding and extend original expiration date;

**WHEREAS**, the parties entered into Amendment 3 to the Contract on November 1, 2016, to formalize the changes to the Engineer's hourly billing rates and the addition of a subconsultant;

**WHEREAS**, the parties now desire to amend the Contract to formalize changes to the Engineer's hourly billing rates and extend the contract expiration date;

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements contained herein, the parties hereby amend the Contract as follows:

1.  **ARTICLE 4 – <u>TIME OF BEGINNING AND COMPLETION</u>,** is amended to extend the expiration date to December 31, 2022.

2.  **ARTICLE 7 – <u>COMPENSATION AND PAYMENTS</u>, Section 7.1, "Hourly and Unit Price Basis Allowances"** is amended to reflect the revised hourly rates for

2

the services listed in the contract using the revised Fee Schedule/Breakdown (Exhibit 2).

3.   **EXHIBIT 2 – <u>FEE COST/BREAKDOWN</u>** is amended by incorporating Amendment 4 to Exhibit 2.

4.   Defined terms used and not defined herein shall have the meanings assigned to them in the Contract.

5.   In all other respects and except as modified herein, the terms of the Contract shall remain in full force and effect.

3

**THIS AMENDMENT** is made and entered into as of the day and year first written above for **Amendment Number 4** to the Contract for Storm Drainage Improvement Projects, **Contract Number 2015000322,** in an amount not to exceed **$0.**

**ARMSTRONG GLEN, P.C.**

By: _____

Print Name: _WILLIAM H. ARMSTRONG_

Title: _PRES._

Date: _11-12-2018_

**ATTEST**

By: _____

Print Name: _JOSH LETOURNEAU_

Title: _PROJECT MANAGER_

Date: _11/12/2018_

**CITY OF CHARLOTTE**

By: _Maria N. Miles_

Print Name: _MARIA N. MILES_

Title: _Contracts Manager_

Date: _December 11, 2018_

**ATTEST**

By: _Kecia S Balese_

Print Name: _Kecia S Balese_

Title: _Contract Execution Coordination_

Date: _December 11, 2018_

4

# EXHIBIT 2 – FEE/COST BREAKDOWN
## (Amendment 4)

### Hourly and Unit Price Rates

| Classification | Hourly Rate |
|---|---|
| Administrative Assistant (Amy S. Benson) | $50.00 |
| Technician I (Diane Channell) | $70.00 |
| Technician II | $80.00 |
| Technician III | $84.00 |
| Technical Specialist | $87.00 |
| Engineering Designer I | $91.00 |
| Engineering Designer II (Donna Al Melhem) | $94.00 |
| Engineering Designer III | $97.00 |
| Project Engineer I (Emily K. Fender) | $110.00 |
| Project Engineer II (Will Armstrong, Russell Parker) | $118.00 |
| Project Engineer III | $125.00 |
| Project Engineer IV | $135.00 |
| Project Engineer V | $145.00 |
| Project Engineer VI (Josh Letourneau) | $150.00 |
| Project Engineer VII | $155.00 |
| Senior Project Engineer | $160.00 |
| Senior Structural Engineer (William H. Armstrong) | $170.00 |
| Project Manager I | $115.00 |
| Project Manager II | $128.00 |
| Project Manager III | $138.00 |
| Project Manager IV | $145.00 |
| Project Manager V (Josh Letourneau) | $150.00 |
| Project Manager VI | $155.00 |
| Senior Project Manager | $160.00 |
| Principal Engineer (William H. Armstrong) | $185.00 |