Ilonka Aylward
v.
City of Charlotte
and
Charlotte-Mecklenburg Stormwater Services (a.k.a. "Charlotte Stormwater Services,"
a.k.a. "Charlotte/Mecklenburg Storm Water," a.k.a. "Charlotte Storm Water Services,"
a.k.a. "City of Charlotte Storm Water Services")
and
Armstrong Glen, P.C.
and
Joseph ("Josh") H. Letourneau, P.E.


**Ilonka Aylward's Complaint**


# Exhibit 7

**STATE of NORTH CAROLINA**
**DEPARTMENT OF ENVIRONMENT QUALITY**
**DIVISION OF ENERGY, MINERAL, AND LAND RESOURCES**

**PERMIT NO. NCS000240**

**TO DISCHARGE STORMWATER UNDER THE**

**NATIONAL POLLUTANT DISCHARGE ELIMINATION SYSTEM**

In compliance with the regulations promulgated and adopted by the North Carolina Environmental Management Commission, and the Federal Water Pollution Control Act, as amended,

**City of Charlotte**

is hereby authorized to discharge stormwater from their municipal separate storm sewer system located within the City of Charlotte's corporate limits to receiving waters of the State, within the Catawba and Yadkin-Pee Dee River Basins in accordance with the discharge limitations, monitoring requirements, and other conditions set forth in Parts I, II, III, IV, V, VI, VII and VIII hereof.

In addition, the City of Charlotte is hereby authorized to operate, administer, and enforce Construction Site Runoff Control and Post Construction Site Runoff Control Programs as required and specified by this permit within the City's Extra Territorial Jurisdictional (ETJ) areas.

This permit shall become effective October 10, 2018.

This permit and the authorization to discharge shall expire at midnight on October 9, 2023.

Signed this day October 10, 2018.

*Original signed by William E. Toby Vinson, Jr.*
_____
William E. Toby Vinson, Jr., P.E., CPM, Interim Director
Division of Energy, Mineral and Land Resources
By the Authority of the Environmental Management Commission

Case 3:21-cv-00232-MOC-SCR   Document 1-7   Filed 05/19/21   Page 2 of 41

**THIS PAGE INTENTIONALLY BLANK**

## TABLE OF CONTENTS

**PART I**      PERMIT COVERAGE

**PART II**     FINAL LIMITATIONS AND CONTROLS FOR PERMITTED DISCHARGES

   **SECTION A:**  PROGRAM IMPLEMENTATION

   **SECTION B:**  PUBLIC EDUCATION AND OUTREACH

   **SECTION C:**  PUBLIC INVOLVEMENT AND PARTICIPATION

   **SECTION D:**  ILLICIT DISCHARGE DETECTION AND ELIMINATION (IDDE)

   **SECTION E:**  CONSTRUCTION SITE RUNOFF CONTROLS

   **SECTION F:**  POST-CONSTRUCTION SITE RUNOFF CONTROLS

   **SECTION G:**  POLLUTION PREVENTION AND GOOD HOUSEKEEPING FOR MUNICIPAL OPERATIONS

   **SECTION H**:  PROGRAM TO MONITOR AND CONTROL POLLUTANTS IN STORM WATER DISCHARGES TO MUNICIPAL SYSTEMS.

   **SECTION I:**  WATER QUALITY ASSESSMENT AND MONITORING

   **SECTION J:**  TOTAL MAXIMUM DAILY LOADS (TMDLS)

   **SECTION K:**  ELECTRONIC REPORTING OF REPORTS

**PART III**    PROGRAM ASSESSMENT

**PART IV**    REPORTING AND RECORD KEEPING REQUIREMENTS

**PART V**     STANDARD CONDITIONS

   **SECTION A:**  COMPLIANCE AND LIABILITY

   **SECTION B:**  OPERATION AND MAINTENANCE OF POLLUTION CONTROLS

   **SECTION C:**  MONITORING AND RECORDS

**PART VI**    LIMITATIONS REOPENER

**PART VII**   ADMINISTERING AND COMPLIANCE MONITORING FEE REQUIREMENTS

**PART VIII**  DEFINITIONS

**THIS PAGE INTENTIONALLY BLANK**

# PART I          PERMIT COVERAGE

A.      During the period beginning on the effective date of the permit and lasting until expiration, the City of Charlotte is authorized to discharge stormwater from the municipal separate storm sewer system (MS4) to receiving waters of the State within the Catawba and Yadkin-Pee Dee River Basins.  Such discharge will be controlled, limited and monitored in accordance with this permit and the permittee's Stormwater Quality Management Program, herein referred to as the Stormwater Management Plan.  The Stormwater Management Plan shall detail the permittee's stormwater management program for the five-year term of the stormwater permit.

B.      All discharges authorized herein shall be managed in accordance with the terms and conditions of this permit.  Any other point source discharge to surface waters of the state is prohibited unless it is an allowable non-stormwater discharge or is covered by another permit, authorization, or approval.

C.      This permit does not relieve the permittee from responsibility for compliance with any applicable federal, state, or local law, rule, standard, ordinance, order, judgment, or decree.

D.      This permit covers activities associated with the discharge of stormwater from the MS4 that are under the permittee's authority to control within the corporate limits of the permittee. Requirements under this permit for Construction Site Runoff Controls and Post Construction Site Runoff Controls also apply to the Permittee's Extra Territorial Jurisdictional (ETJ) to the extent allowable under State and local law.  The permit also applies to areas that seek coverage under this permit through inter-local or other similar agreements with permittee.  Agreements for coverage under this permit must be approved by the Division of Energy, Mineral and Land Resources, herein referred to as the Division.

E.      The Division may deny or revoke coverage under this permit for separate entities and require independent permit coverage as deemed necessary.  In addition, the permittee may petition the Division to revoke or deny coverage under this permit for specific entities.

F.      All provisions contained and referenced in the Stormwater Management Plan along with all provisions and approved modifications of the Stormwater Management Plan are incorporated by reference and are enforceable parts of this permit.

G.      To the extent allowable under State and local law, the permittee must develop and implement a Stormwater Management Plan in accordance with Section 402(p)(3)(B)(iii) of the Clean Water Act. The purpose of the Stormwater Management Plan is to establish the means by which the permittee will achieve compliance with the provisions of the Clean Water Act and this permit. The specific requirements of Section 402(p)(3)(B)(iii) of the Clean Water Act require the permittee, to the extent allowable under State or local law, to effectively prohibit non-storm water discharges into the storm sewers and controls to reduce pollutant discharges to the maximum extent practicable (MEP).

H.      Compliance with this permit constitutes compliance with the requirements of the Clean Water Act and 15 N.C. Administrative Code 02H .0126, .0150 - .0153 (NPDES) and 15A N.C. Administrative Code 02H .1000 to reduce the discharge of pollutants from the MS4 to the MEP.

I.    The permit authorizes the point source discharge of stormwater runoff from the MS4.  In addition, discharges of non-stormwater are also authorized through the MS4 of the permittee if such discharges are:

    1.    Permitted by, and in compliance with, another NPDES discharge permit including discharges of process and non-process wastewater, and stormwater associated with industrial activity; or

    2.    Determined to be incidental non-stormwater flows that do not significantly impact water quality and may include:

- water line flushing;
- landscape irrigation;
- diverted stream flows;
- rising groundwater;
- uncontaminated groundwater infiltration;
- uncontaminated pumped groundwater;
- discharges from potable water sources;
- foundation drains;
- air conditioning condensate (commercial/residential);
- irrigation waters;
- springs;
- water from crawl space pumps;
- footing drains;
- lawn watering;
- individual residential and charity car washing;
- flows from riparian habitats and wetlands;
- dechlorinated swimming pool discharges;
- street wash water;
- flows from emergency firefighting; and
- splash pad (spray ground) water from potable water source only.

    3.    The Division may require that non-stormwater flows of this type be controlled by the permittee's Stormwater Management Plan if it has been documented that the non-stormwater flow has been determined to be a significant impact.

J.    Unless otherwise stated, full compliance with the requirements of the permit is expected upon the effective date of the permit.  Should permit conditions change for any reason, due to annexations or otherwise, the permittee must notify DEQ and modify the Stormwater Management Plan within the time frame provided with the notice.

K.    Until the Division approves any revisions to the Stormwater Management Plan, the permittee shall continue to implement provisions of their current Stormwater Management Plan.  The Stormwater Management Plan is deemed approved if no response is received from the Division within 90 days of being received by the Division.  The Stormwater Management Plan shall detail the Permittee's stormwater management program for the five-year term of the stormwater permit including, for each of the measures identified in the permit, a narrative description of the program, a table that identifies each best management practice (BMP), the measurable goals for

each BMP, the implementation schedule and/or frequency of the BMP, and the person or position responsible for implementation.

Case 3:21-cv-00232-MOC-SCR   Document 1-7   Filed 05/19/21   Page 8 of 41

**PART II          FINAL LIMITATIONS AND CONTROLS FOR PERMITTED DISCHARGES**

**SECTION A:  PROGRAM IMPLEMENTATION**

The permittee will implement, manage and oversee all provisions of its Stormwater Management Plan to control to the maximum extent practical the discharge of pollutants from its municipal storm sewer system associated with stormwater runoff and illicit discharges, including spills and illegal dumping. The overall program implementation, however, will be subject to, at a minimum, either 1) an annual review by the Division to determine implementation status and progression toward meeting the pollutant control intent of the Stormwater Management Plan, i.e., a compliance audit, or 2) a voluntary assessment process that has been approved by the Division and is at least as stringent as the annual review described herein. The Stormwater Management Plan shall include, at a minimum, the following areas:

1.      The permittee will maintain adequate legal mechanism, such as regulations, ordinances, policies and procedures to implement all provisions of the Stormwater Management Plan.   If major modifications are proposed in the time line for development of these authorities, the Division must be notified of the changes, the reasons for the changes, and justifications for the changes. The Division may comment on the modifications and require changes as allowed by Federal and State and as deemed necessary to assure appropriate implementation of the Stormwater Management Plan.  The Permittee shall obtain prior approval of changes to the Stormwater Management Plan that eliminate or reduce any program or measure in an approved Stormwater Management Plan.

2.      The permittee will implement provisions of the Stormwater Management Plan and evaluate the performance and effectiveness of the program components.

3.      The permittee is required to keep the Stormwater Management Plan up to date with annual updates if any changes are warranted. The permittee is required to make available its Stormwater Management Plan to the Division upon request. At a minimum, the permittee shall include ordinances, or other regulatory mechanisms or a list identifying the ordinances, or other regulatory mechanisms providing the legal authority necessary to implement and enforce the requirements of the permit. The Division may review reports submitted by the permittee to assure that the Stormwater Management Plan is implemented appropriately to address the requirements of the permit.  The Division may require modifications to any part of the permittee's Stormwater Management Plan where deficiencies are found. If modifications to the Stormwater Management Plan are necessary then the Division will notify the permittee of the need to modify the Stormwater Management Plan to be consistent with the permit and will establish a deadline to finalize such changes to the program.

4.      The permittee shall maintain, and make available to the Division upon request, written procedures for implementing the six minimum control measures. Written procedures shall identify specific action steps, schedules, resources and responsibilities for implementing the six minimum measures.

**SECTION B:  PUBLIC EDUCATION AND OUTREACH**

**1.    Objectives for Public Education and Outreach**

   (a)    Distribute educational materials to the community.
   (b)    Conduct public outreach activities.
   (c)    Raise public awareness on the causes and impacts of stormwater pollution.
   (d)    Inform the public on steps they can take to reduce or prevent stormwater pollution.

**2.    BMPs for Public Education and Outreach**

The permittee shall implement the following BMPs to meet the objectives of the Public Education and Outreach Program.

| BMP | Measurable Goals |
|---|---|
| (a) Describe target pollutants and target pollutant sources | Describe the target pollutants and target pollutant sources the permittee's public education program is designed to address and why they are an issue. |
| (b) Describe target audiences | Describe the target audiences likely to have significant storm water impacts and why they were selected. |
| (c) Informational Web Site | The permittee shall promote and maintain, an internet web site designed to convey the program's message. |
| (d) Distribute public education materials to identified user groups. | Distribute general stormwater educational material to appropriate target groups as likely to have a significant stormwater impact. Instead of developing its own materials, the permittee may rely on state-supplied Public Education and Outreach materials, as available, when implementing its own program. |
| (e) Promote and maintain Hotline(s) or Helpline(s) | Promote and maintain a stormwater hotline(s) or helpline(s) for the public to request information about stormwater, public involvement & participation, and to report illicit connections & discharges, etc. |
| (f) Implement a Public Education and Outreach Program. | The permittee's outreach program, including those elements implemented locally or through a cooperative agreement, shall include a combination of approaches designed to reach the target audiences.  For each media, event or activity, including those elements implemented locally or through a cooperative agreement the permittee shall estimate and record the extent of exposure. |

**SECTION C: PUBLIC INVOLVEMENT AND PARTICIPATION**

1.  **Objectives for Public Involvement and Participation**

    Provide opportunities for the public, including major economic and ethnic groups, to participate in program development and implementation.

2.  **BMPs for Public Involvement and Participation**

    The permittee shall implement the following BMPs to meet the objectives of the Public Involvement and Participation Program.

| BMP | Measurable Goals |
|---|---|
| (a) Volunteer community involvement program | The permittee shall include and promote volunteer opportunities designed to promote ongoing citizen participation. |
| (b) Establish a Mechanism for Public involvement | The permittee shall provide and promote a mechanism for public involvement that provides for input on stormwater issues and the stormwater program. |
| (c) Establish Hotline(s) or Helpline(s) | The permittee shall promote and maintain a hotline(s) or helpline(s) for the public to request information about stormwater, public involvement & participation, and to report illicit connections & discharges, etc. |
| (d) Public Review & Comment | The permittee shall make their most recent Stormwater Management Plans available for public review and comment. |
| (a) Public Notice | Pursuant to 40 CFR 122.34 the permittee must, at a minimum, comply with State, Tribal and local public notice requirements when implementing a public involvement / participation program. |

**SECTION D:  ILLICIT DISCHARGE DETECTION AND ELIMINATION (IDDE)**

1.      **Objectives for Illicit Discharge Detection and Elimination**

(a)      Detect and eliminate illicit connections and discharges, including preventable spills and illegal dumping to the Permittee's MS4.

(b)      Implement appropriate enforcement procedures and actions.

(c)      Maintain a map showing the permittee's major outfalls to state waters receiving discharges.

(d)      Inform employees, businesses, and the general public of hazards associated with illegal discharges and improper disposal of waste.

2.      **BMPs for Illicit Discharge Detection and Elimination**

The permittee shall implement the following BMPs, to the extent authorized by law, to meet the objectives of the Illicit Discharge Detection and Elimination Program.

| BMP | Measurable Goals |
|---|---|
| (a) Maintain appropriate legal authorities | Maintain adequate ordinances or other legal authorities to prohibit illicit connections and discharges and enforce the approved IDDE Program. |
| (b) Maintain a Storm Sewer System Base Map of Major MS4 Outfall. | The permittee shall maintain a current map showing major outfalls and receiving streams. |
| (c) Inspection/detection program to detect dry weather flows at MS4 outfalls | Maintain written procedures and/or Standard Operating Procedures (SOPs) for detecting and tracing the sources of illicit discharges and for removing the sources or reporting the sources to the State to be properly permitted. Written procedures and/or SOPs shall specify a timeframe for monitoring and how many outfalls and the areas that are to be targeted for inspections. |
| (d) Employee Training | Conduct training for appropriate municipal staff on detecting and reporting illicit connections and discharges. |
| (e) Maintain a public reporting mechanism(s) | Maintain and publicize reporting mechanism(s) for the public to report illicit connections and discharges. |
| (f) Documentation | The permittee shall document the date of investigations, any enforcement action(s) or remediation that occurred. |

**SECTION E:  CONSTRUCTION SITE RUNOFF CONTROLS**

1. **Objectives for Construction Site Runoff Controls**

   a.    Reduce pollutants in stormwater runoff from construction activities, within the permittee's regulatory jurisdiction, disturbing one or more acres of land surface and those activities less than one acre that are part of a larger common plan of development.

   b.    Provide procedures for public input, sanctions to ensure compliance, requirements for construction site operators to implement appropriate erosion and sediment control practices, review of site plans which incorporates consideration of potential water quality impacts, and procedures for site inspection and enforcement of control measures.

   c.    A locally delegated program, that meets the state requirements and that covers the jurisdictional area of the permittee complies with the required minimum measures of this permit.

2. **Construction Site Runoff Controls**

   a.    The permittee has a delegated or authorized Sediment and Erosion Control Program. As such, to the extent authorized by law, the permittee is responsible for compliance with the Sediment Pollution Control Act of 1973 and Chapter 4 of Title 15A of the North Carolina Administrative Code.  The delegated or authorized Sediment and Erosion Control Program effectively meets the MEP standard for Construction Site Runoff Controls by permitting and controlling development activities disturbing one or more acres of land surface and those activities less than one acre that are part of a larger common plan of development as authorized under the Sediment Pollution Control Act of 1973 and Chapter 4 of Title 15A of the North Carolina Administrative Code.

   b.    The NCG010000 permit establishes requirements for construction site operators to control waste such as discarded building materials, concrete truck washout, chemicals, litter, and sanitary waste at the construction site that may cause adverse impacts to water quality.

   c.    The permittee shall provide and promote a means for the public to notify the appropriate authorities of observed erosion and sedimentation problems.  The permittee may implement a plan promoting the existence of the NCDEQ "Stop Mud" hotline (1-866-STOPMUD) to meet the requirements of this paragraph.

   d.    For new development and redevelopment projects to be built within the permittee's planning jurisdiction by entities with eminent domain authority, the permittee shall, to the maximum extent practicable, coordinate the approval of the construction site runoff control with the DEMLR.

**SECTION F:  POST-CONSTRUCTION SITE RUNOFF CONTROLS**

1.      **Objectives for Post-Construction Site Runoff Controls**

(a)     Manage stormwater runoff from development that drains to the MS4 and disturbs an acre or more of land surface, including projects less than an acre that are part of a larger common plan of development or sale.

(b)     Provide a mechanism to require long-term operation and maintenance of SCMs.

(c)     Ensure controls are in place to minimize water quality impacts.

2.      **Post-construction Stormwater Management Program measures**

The permittee shall implement the following BMPs to meet the objectives of the Post-Construction Stormwater Management Program to the MEP and to the extent authorized by law.

| BMP | Measurable Goals |
|---|---|
| (a)  Post-Construction Stormwater Management Program | Maintain an ordinance (or similar regulatory mechanism) that authorizes a program to address stormwater runoff from new development and redevelopment to the extent allowable under State law. |
| (b)  Strategies which include Stormwater Control Measures (SCMs) appropriate for the MS4 | Maintain strategies that include a combination of structural and/or non-structural SCMs implemented in concurrence with (a) above.  Provide a mechanism to require long-term operation and maintenance of structural SCMs.  Require annual inspection reports of permitted structural SCMs performed by a qualified professional.<br><br>A qualified professional means an individual trained and/or certified in the design, operation, inspection and maintenance aspects of the SCMs being inspected, for example, someone trained and certified by NC State for BMP Inspection & Maintenance.<br><br>Within 12 months of the effective date of this permit, the permittee shall evaluate, and revise as needed, SCM requirements, to be at least as stringent as the minimum requirements in 15A NCAC 02H .1000. |
| (c)  Deed Restrictions and Protective Covenants | The permittee shall provide mechanisms such as recorded deed restrictions, plats, and/or protective covenants so that development activities maintain the project consistent with approved plans. |
| (d)  Operation and Maintenance Plan | The developer shall provide the permittee with an operation and maintenance plan for the stormwater system, indicating the operation and maintenance actions that shall be taken, specific quantitative criteria used for determining when those actions shall be taken, and who is responsible for those actions. The plan must clearly indicate the steps that shall be taken and who shall be responsible for restoring a stormwater system to design specifications if a failure occurs and must include a legally enforceable acknowledgment by the responsible party. Development must be maintained consistent with the requirements in the |

| BMP | Measurable Goals |
|---|---|
| | approved plans and any modifications to those plans must be approved by the Permittee. |
| (e)  Educational materials and training for developers | Provide educational materials and training for developers.  New materials may be developed by the permittee, or the permittee may use materials adopted from other programs and adapted to the permittee's new development and redevelopment program. |

3.    To meet the Post-construction Stormwater Runoff control requirements the permittee may use the Department's model ordinance, design its own post-construction practices that meet or exceed the rules found in 15A NCAC 02H .1000, or develop its own comprehensive watershed plan that is determined by the Department to meet the post-construction stormwater management measure required by 40 Code of Federal Regulations § 122.34(b)(5) (1 July 2003 Edition).

4.     To the extent allowable under State law, additional requirements shall apply to projects draining to certain sensitive receiving waters as set forth in 15A NCAC 02H .1017(9). For areas draining to Nutrient Sensitive Waters (NSW), where the Department has approved a locally implemented Nutrient Management Strategy that addresses post-construction runoff, the provisions of that Strategy fulfill the MS4 post-construction requirement.

5.    The permittee shall meet the requirements of the post-construction program for construction projects that are performed by, or under contract for, the permittee.  To meet this requirement, the permittee may either develop the necessary requirements for post-construction controls that will pertain to their own projects, or develop procedures to ensure that the permittee meets these requirements by complying with other entities' Phase I or Phase II Stormwater Management Programs for post-construction.  If the permittee decides to rely on another program for compliance with these program areas for their own projects, they shall indicate in their Stormwater Management Program that the permittee will fully comply with the requirements of the second party's post-construction programs.

6.    Pursuant to 15A NCAC 02H .1000, the water quality design volume of SCMs shall account for the runoff at build out from all surfaces draining to the system.   Drainage from off-site areas may be bypassed.

7.    Projects undertaken by an entity other than North Carolina Department of Transportation (NCDOT) fulfill the post-construction minimum control measure requirement for linear transportation projects if they are designed, constructed, and conveyed as set forth in 15A NCAC 02H .1001(1)(c).  The NCDOT Stormwater BMP Toolbox is available at:

https://connect.ncdot.gov/resources/hydro/Pages/Highway-Stormwater-Program.aspx

**SECTION G: POLLUTION PREVENTION AND GOOD HOUSEKEEPING FOR MUNICIPAL OPERATIONS**

1.  **Objective for Pollution Prevention and Good Housekeeping for Municipal Operations**

    a.  Prevent or reduce stormwater pollution from municipal operations that drain to the MS4 system.
    b.  Incorporate Pollution Prevention and Good Housekeeping techniques into municipal operations that drain to the MS4 system.

2.  **BMPs for the Pollution Prevention and Good Housekeeping for Municipal Operations**

    The permittee shall maintain, and to the extent necessary modify, its implementation of the following BMPs to meet the objectives of the Pollution Prevention and Good Housekeeping Program.

| BMP | Measurable Goals |
|---|---|
| (a) Inventory of municipal facilities and operations | Maintain an inventory of municipal facilities and operations owned and operated by the permittee that have been determined by the permittee to have significant potential for generating polluted stormwater runoff. Also maintain an inventory of municipally-owned structural SCMs. |
| (b) Inspection and maintenance program for municipal facilities and operations | Implement an inspection and maintenance program for facilities and operations owned and operated by the permittee for potential sources of polluted runoff, including stormwater controls and conveyance systems. The inspection program shall evaluate pollutant sources, document deficiencies, plan corrective actions, implement appropriate controls, and document the accomplishment of corrective actions. The maintenance program shall include maintenance activities and procedures aimed at preventing or reducing pollutants generated from municipal facilities and operations. |
| (c) Site Pollution Prevention Plans for municipal facilities. | Maintain and implement Site Pollution Prevention Plans for municipal facilities owned and operated by the permittee that have been determined by the permittee to have significant potential for generating polluted stormwater runoff that has the goal of preventing or reducing pollutant runoff. |
| (d) Spill Response Procedures for municipal facilities and operations. | Maintain spill response procedures for municipal facilities and operations owned and operated by the permittee that have been determined by the permittee to have significant potential for generating polluted stormwater runoff. |
| (e) Prevent or Minimize Contamination of Stormwater Runoff from all areas used for Vehicle and Equipment Cleaning | Describe measures that prevent or minimize contamination of the stormwater runoff from all areas used for vehicle and equipment cleaning, including fire stations that have more than three fire trucks and ambulances. Perform all cleaning operations indoors, cover the cleaning operations, ensure wash water drains to the sanitary sewer system, collect wash water and stormwater run-on from the cleaning area and provide treatment or recycling, or other equivalent measures. If sanitary sewer is not available to the facility and cleaning operations take place outdoors, wash water shall drain to an SCM for treatment, or else the cleaning operations shall take place on or drain directly to grassed or graveled areas to prevent point source discharges of the wash water into the storm |

| BMP | Measurable Goals |
|---|---|
| | drains or surface waters.<br><br>Where cleaning operations cannot be performed as described above and when operations are performed in the vicinity of a storm drainage collection system, the drain is to be covered with a portable drain cover during cleaning activities. Any excess standing water shall be removed and properly handled prior to removing the drain cover.<br><br>Facilities that have three or fewer fire trucks and ambulances should attempt to comply with the above requirements; however, those that cannot comply with these requirements due to existing limitations shall incorporate structural measures during facility renovation to the extent practicable. |
| (f) Streets, roads, and public parking lots maintenance | The permittee shall implement BMPs to reduce polluted stormwater runoff from municipally-owned streets, roads, and public parking lots within the corporate limits. |
| (g) Inspection and Maintenance (I&M) for municipally-owned or maintained stormwater control measures (SCMs) and the storm sewer system. | The permittee shall maintain and implement an inspection and maintenance program for stormwater control measures (SCMs) owned and operated by the municipality and the municipal storm sewer system (including catch basins, the conveyance system, and SCMs. |
| (h) Staff training | Maintain and implement a training plan that indicates when, how often, and who is required to be trained and what they are to be trained on. |

**SECTION H:   PROGRAM TO MONITOR AND EVALUATE STORM WATER DISCHARGES TO MUNICIPAL SYSTEMS.**

1.    **Objective**

Evaluate pollutants in storm water discharges to the permittee's MS4 from hazardous waste treatment, disposal, and recovery facilities, industrial facilities subject to Section 313 of Title III of the Superfund Amendments and Reauthorization Act of 1986 (SARA), and industrial facilities that the Permittee determines are contributing or have a potential to contribute a substantial pollutant loading to the municipal storm sewer system.

2.    **BMPs**

The permittee shall implement the following BMPs to meet the objective.

| BMP | Measurable Goals |
|---|---|
| (a)  Maintain an Inventory of Industrial Facilities | Maintain an inventory of permitted hazardous waste treatment, disposal, and recovery facilities, industrial facilities that are subject to Section 313 of Title III of the Superfund Amendments and Reauthorization Act of 1986 (SARA), and industrial facilities identified with an industrial activity permitted to discharge storm water to the permittee's MS4.<br><br>For the purposes of this permit, industrial activities shall mean all permitted industrial activities as defined in 40 CFR 122.26. |
| (b)  Inspection Program | Identify priorities and inspection procedures. At a minimum, priority facilities include those identified above in subsection II.H.2.a. |
| (c)  Evaluate Industrial Facilities discharging stormwater to the City's MS4 | The Permittee is required to evaluate control measures implemented at permitted hazardous waste treatment, disposal, and recovery facilities, industrial facilities that are subject to Section 313 of Title III of the Superfund Amendments and Reauthorization Act of 1986 (SARA), industrial facilities identified with an industrial activity permitted to discharge storm water to the permittee's MS4, or as identified as an illicit discharge under the IDDE Program.<br><br>For permitted facilities, the municipality shall establish procedures for reporting deficiencies and non-compliance to the permitting agency. Where compliance with an existing industrial stormwater permit does not result in adequate control of pollutants to the MS4, municipality will recommend and document the need for permit modifications or additions to the permit issuing authority.<br><br>For the purposes of this permit, industrial activities shall mean all permitted industrial activities as defined in 40 CFR 122.26.  For the purpose of this permit, the Permittee is authorized to inspect the permitted hazardous waste treatment, disposal, and recovery facilities as an authorized representative of the Director. |

**SECTION I:  WATER QUALITY ASSESSMENT AND MONITORING**

1.     **Objective for Water Quality Assessment and Monitoring**

Evaluate the impacts of MS4 discharges on surface water quality.

2.     **BMPs for Water Quality Assessment and Monitoring**

The permittee shall implement the following BMPs to meet the objectives of the Water Quality Assessment and Monitoring Program.

| | BMP | Measurable Goals |
|---|---|---|
| (a) | Water Quality Assessment and Monitoring Plan | Maintain a Water Quality Assessment and Monitoring Plan. The Plan shall include a schedule for implementing the proposed assessment and monitoring activities. |
| (b) | Water Quality Monitoring | Maintain and implement the Water Quality Assessment and Monitoring Plan submitted to DEMLR. |

3.     **Waiver**

Upon request, the requirement to maintain and implement a Water Quality Assessment and Monitoring Plan may be waived by the Division if stormwater control measures (SCM) are determined to be adequate to reduce the discharge of pollutants from the MS4 to the maximum extent practicable as required by the Clean Water Act.

**SECTION J:  TOTAL MAXIMUM DAILY LOADS (TMDLs)**

1.      **Objective**

    a.      The permittee shall determine whether the MS4 discharges to receiving waters within a TMDL watershed and identify the pollutant(s) of concern (POC).  For all TMDLs with a NPDES MS4 regulated stormwater waste load allocation (WLA) assigned to the permittee, the permittee shall determine whether the POC have potential to occur in MS4 stormwater discharges.

    b.      The permittee will utilize BMPs within the six minimum measures and the permittee's TMDL Plan(s) to meet the permittee's assigned NPDES MS4 regulated stormwater WLA identified in the approved TMDL, to the maximum extent practicable and to the extent allowable by law.

    c.      If subject to an approved TMDL with a NPDES MS4 regulated WLA assigned to the permittee, the permittee will be considered in compliance with the TMDL if the permittee complies with the conditions of this permit, including developing and implementing appropriate BMPs within the six minimum measures to address the permittee's MS4s NPDES regulated WLA to the maximum extent practicable (MEP).  While improved water quality is the expected outcome, the permittee's obligation is to implement BMP's designed to address the NPDES MS4 regulated WLA assigned to the permittee to the maximum extent practicable (MEP).  The permittee is not responsible for attaining water quality standards (WQS). The Division expects attaining WQS will only be achieved through reduction from all point and nonpoint source contributors identified in the approved TMDL.

2.      **TMDL Plans**

    a.      If the permittee has an existing TMDL Plan designed to address the NPDES MS4 regulated WLA assigned to the permittee, that includes monitoring to evaluate progress, and which addresses the POC through the six minimum control measures; it satisfies the objectives of this Section J.

    b.      The permittee may comply with a Department approved management strategy to address an impairment or TMDL, such as a Nutrient Management Strategy, to satisfy the objectives of this Section J.

    c.      The permittee may develop and submit to the Department for approval of an alternative approach, such as an Integrated Report - Category 4(b) watershed plan, to satisfy the objectives of this Section J.

    d.      For new TMDLs that are not addressed by J.2. a, b, or c above, a TMDL Plan shall be developed according to J.3 below, and submitted to the Division.  Time periods shown are from the later of the effective date of this permit or the TMDL as approved by EPA.

3.      **Best Management Practices (BMPs):**

| BMP | Measurable Goals |
|---|---|
| a.  Identify, describe and map watershed, outfalls, and streams | Within 12 months the permittee shall prepare a plan that:<br>• Identifies the watershed(s) subject to an approved TMDL with an approved Waste Load Allocation (WLAs) assigned to the permittee; and<br>• Includes a description of the watershed(s); and<br>• Includes a map of watershed(s) showing streams & outfalls |

Case 3:21-cv-00232-MOC-SCR   Document 1-7   Filed 05/19/21   Page 20 of 41

| BMP | Measurable Goals |
|---|---|
| | • Identifies the locations of currently known major outfalls within its corporate limits with the potential of contributing to the cause(s) of the impairment to the impaired segments, to their tributaries, and to segments and tributaries within the watershed contributing to the impaired segments; and<br>• Includes a schedule (not to exceed 6 months) to discover and locate other unknown major outfalls within its corporate limits that may be contributing to the cause of the impairment to the impaired stream segments, to their tributaries, and to segments and tributaries within the watershed contributing to the impaired segments. |
| b.  Evaluate existing measures | Within 12 months the Permittee's plan:<br>• Shall describe existing measures currently being implemented by the Permittee designed to achieve the <u>MS4's NPDES WLA</u> and to reduce the TMDL pollutant of concern to the MEP within the watershed to which the TMDL applies; and<br>• Provide an explanation as to how those measures are designed to reduce the TMDL pollutant of concern.<br>• The Permittee shall continue to implement the existing measures until notified by the Division. |
| c.  Assessment of available monitoring data | Within 24 months the permittee's plan shall include an assessment of available monitoring data.  Where long-term data is available, this assessment should include an analysis of the data to show trends. |
| d.  Monitoring Plan | Within 24 months the permittee shall develop a Monitoring Plan for the permittee's assigned NPDES regulated WLA as specified in the TMDL. The permittee shall maintain and implement the Monitoring Plan as additional outfalls are identified and as accumulating data may suggest. Following any review and comment by the Division the permittee shall incorporate any necessary changes to monitoring plan and initiate the plan within 6 months. Modifications to the monitoring plan shall be approved by the Division.  Upon request, the requirement to develop a Monitoring Plan may be waived by the Division if the existing and proposed measures are determined to be adequate to achieve the MS4's NPDES WLA to MEP within the watershed to which the TMDL applies. |
| e.  Additional Measures | Within 24 months the permittee's plan shall:<br>• Describe additional measures to be implemented by the permittee designed to achieve the permittee's MS4's NPDES WLA and to reduce the TMDL pollutant of concern to the MEP within the watershed to which the TMDL applies; and<br>• Provide an explanation as to how those measures are designed to achieve the permittee's MS4's NPDES regulated WLA to the MEP within the watershed to which the TMDL applies. |
| f.  Implementation Plan | Within 48 months the permittee's plan shall: |

| BMP | Measurable Goals |
|---|---|
| | • Describe the measures to be implemented within the remainder of the permit term designed to achieve the MS4's NPDES WLA and to reduce the TMDL pollutant of concern to the MEP; and<br>• Identify a schedule, subject to Division approval, for completing the activities.<br>• Implement the permittee's TMDL plan |
| g. Incremental Success | The permittee's plan must outline ways to track progress and report successes designed to achieve the MS4's NPDES regulated WLA and to reduce the TMDL pollutant of concern to MEP within the watershed to which the TMDL applies. |
| h. Reporting | The permittee shall conduct and submit to the Division an annual assessment of the program designed to achieve the MS4's NPDES WLA and to reduce the TMDL pollutant of concern to the MEP within the watershed to which the TMDL applies. Any monitoring data and information generated from the previous year are to be submitted with each annual report. |

**4.      If no MS4 NPDES regulated waste load allocation (WLA) is specified in the TMDL**

At any time during the effective dates of this permit, if a TMDL has been approved that does not assign a WLA for the POC to the MS4, or if there was no WLA specified for the POC in the TMDL assigned to the MS4, in lieu of developing a plan within this permit section: within 24 months the Permittee shall evaluate strategies and tailor BMP's within the Permittee's MS4 service area and in the context of the scope of the six minimum permit measures to address the POC in the watershed(s) to which the TMDL applies, to the MEP and to the extent allowable by law.

**5.      Information regarding North Carolina TMDLs**

Information regarding North Carolina TMDLs is available at:

https://deq.nc.gov/about/divisions/water-resources/planning/modeling-assessment

Case 3:21-cv-00232-MOC-SCR   Document 1-7   Filed 05/19/21   Page 22 of 41

**SECTION K:  ELECTRONIC REPORTING OF REPORTS** [General Statute **143-215.1(b)**]

1.    The final NPDES Electronic Reporting Rule was adopted and became effective on December 21, 2015.  These federal regulations require electronic submittal of all MS4 program reports by no later than December 21, 2020, and specify that, if a state does not establish a system to receive such submittals, then permittees must submit monitoring data and reports electronically to the U.S. Environmental Protection Agency (EPA).

2.    This special condition supplements or supersedes the following sections within Part IV of this permit (*Reporting and Record Keeping Requirements*):

- Paragraph A.          Records
- Paragraph B.          Annual Reporting
- Paragraph G.          Report Submittals

3.    Starting on December 21, 2020, the permittee shall electronically report the following compliance monitoring data and reports:  Separate Storm Sewer System (MS4) Program Reports (See Part III 2., Program Assessment annual report)

The permittee may seek an electronic reporting waiver from the Division (see "How to Request a Waiver from Electronic Reporting" section below).

4.    Electronic Submissions [Supplements Part IV].

In accordance with 40 CFR 122.41(l)(9), the permittee must identify the initial recipient at the time of each electronic submission. The permittee should use EPA's website resources to identify the initial recipient for electronic submission.

Initial recipient of electronic NPDES information from NPDES-regulated facilities (initial recipient) means the entity (EPA or the state, tribe, or territory authorized by EPA to implement the NPDES program) that is the designated entity for receiving electronic NPDES data [see 40 CFR 127.2(b)].  As of permit issuance, The NC DEQ anticipates that EPA will be the initial recipient for electronic MS4 Program Reports.

EPA plans to establish a website that will also link to the appropriate electronic reporting tool for each type of electronic submission and for each state.  Instructions on how to access and use the appropriate electronic reporting tool will be available as well.  Currently, Electronic Reporting Rule information is found at:  https://www.epa.gov/compliance/npdes-ereporting

Electronic submissions must start by the dates listed in the "Reporting Requirements" section above. The permittee must electronically submit MS4 annual program reports no later than October 31st following the completed reporting period.  The permittee must sign and certify all electronic submissions in accordance with the requirements of Part IV of this permit.

5.      How to Request a Waiver from Electronic Reporting

The permittee may seek a temporary electronic reporting waiver from the Division.  To obtain an electronic reporting waiver, a permittee must first submit an electronic reporting waiver request to the Division.  Requests for temporary electronic reporting waivers must be submitted in writing to the Division for written approval at least sixty (60) days prior to the date the facility would be required under this permit to begin submitting monitoring data and reports.  The duration of a temporary waiver shall not exceed 5 years and shall thereupon expire.  At such time, monitoring data and reports shall be submitted electronically to the Division unless the permittee re-applies for and is granted a new temporary electronic reporting waiver by the Division.  Approved electronic reporting waivers are not transferrable.  Only permittees with an approved reporting waiver request may submit monitoring data and reports on paper to the Division for the period that the approved reporting waiver request is effective.

Information on eDMR and the application for a temporary electronic reporting waiver are found on the following web page:

http://deq.nc.gov/about/divisions/water-resources/edmr

6.      Records Retention [Supplements Part IV]

The permittee shall retain records of all Program Assessment annual reports, including electronic submissions.  These records or copies shall be maintained for a period of at least five years from the date of the report.  This period may be extended by request of the Director at any time [40 CFR 122.41].

**PART III          PROGRAM ASSESSMENT**

The permittee's annual reporting and monitoring activities in support of this permit will be sufficient to document and indicate progress in the implementation of the Stormwater Management Plan and individual components of the program.  The Division may request additional reporting and monitoring information as necessary to assess the progress and results of the permittee's Stormwater Management Plan.

1.      Implementation of the Stormwater Management Plan will include documentation of all program components that are being undertaken including, but not limited to, inspections, maintenance activities, educational programs, monitoring and sampling, implementation of BMPs, enforcement actions, and other stormwater activities.  Documentation will be kept on-file by the permittee for a period of five years and made available to the Director or his authorized representative immediately upon request.

2.      The Permittee's Stormwater Management Plan will be reviewed and updated as necessary, but at least on an annual basis.  The permittee will submit a report of this evaluation and monitoring information to the Division on an annual basis.

3.      The Director may notify the permittee when the Stormwater Management Plan does not meet one or more of the requirements of the permit.  Within 90 days of such notice, the permittee will submit a plan and time schedule to the Director for modifying the Stormwater Management Plan to meet the requirements.  The Director may approve the plan, approve a plan with modifications, or reject the proposed plan.  The permittee will provide certification in writing in accordance with Part IV, Paragraph 2 to the Director that the changes have been made. Nothing in this paragraph shall be construed to limit the Director's ability to conduct enforcement actions for violations of this permit.

4.      The Division may request additional reporting information as necessary to assess the progress and results of the permittee's Stormwater Management Plan.

**PART IV        REPORTING AND RECORD KEEPING REQUIREMENTS**

**A.        Records**

The permittee shall retain records of all monitoring information, including all calibration and maintenance records and copies of all reports required by this permit, for a period of at least five years from the date of the sample, measurement, report or application. This period may be extended by request of the Director.

**B.        Annual Reporting**

1.        The permittee must submit annual reports to the Department by October 31st of each calendar year that cover the previous fiscal year's activities from July 1st to June 30th of the permittee's fiscal year. Annual reports that include appropriate information to accurately describe the progress, status, and results of the permittee's Stormwater Management Plan and will include, but is not limited to, the following components:

a.        A detailed description of the status of implementation of the Stormwater Management Plan. This will include information on development and implementation of each major component of the Stormwater Management Plan for the past year and schedules and plans for the year following each report.

b.        Description and justification of any proposed changes to the Stormwater Management Plan. This will include descriptions and supporting information for the proposed changes and how these changes will impact the Stormwater Management Plan (results, effectiveness, implementation schedule, etc.).

c.        Any necessary changes to programs or practices for assessment of management measures implemented through the Stormwater Management Plan.

d.        A summary of data accumulated as part of the Stormwater Management Plan throughout the year along with an assessment of what the data indicates.

e.        An assessment of compliance with the permit, information on the establishment of appropriate legal authorities, inspections, and enforcement actions.

f.        Discussion of program funding.

2.        Completion and submittal of the reporting information contained within the online BIMS Stormwater Management Program Assessment (SMPA) satisfy Part IV.B..1 above and Part II Section K, Electronic Reporting of this permit through 2020.

**C.        Additional Reporting**

The Director may request reporting information on a more frequent basis as deemed necessary either for specific portions of the permittee's Stormwater Management Plan, or for the entire Program.

**D.        Other Information**

For discharges not required to be reported by condition of other permits, the Permittee shall maintain a record of any illicit discharge that reaches waters of the state and may cause or contribute to a violation of the water quality standards or constitute an imminent threat to health or the environment. The record shall include dates, identification of possible responsible parties, causes, and any action taken by the permittee or the responsible party. All discharges that

constitute an imminent threat to health or the environment shall be reported within 24 hours by phone or e-mail to the Division Regional Office during business hours, or to the NC Division of Emergency Management State Operations Center hotline outside of business hours. Upon request, the Permittee shall submit a written report to the Division Regional Office.

The Permittees shall give advance notice to the Director of any planned changes that may result in noncompliance with the permit requirements.

Where the permittee becomes aware that it failed to submit any relevant facts or submitted incorrect information in a permit application or in any report to the Director, it shall promptly submit such facts or information.

**E.      Report Submittals**

1.       All reports required herein, not submitted electronically shall be submitted to the following address:

> Department of Environmental Quality
> DEMLR – Stormwater Program
> 512 N. Salisbury Street
> 1612 Mail Service Center
> Raleigh, North Carolina 27699-1612

2.       All applications, reports, or information, other than those submitted electronically, shall be signed by a principal executive officer, ranking elected official or duly authorized representative. A person is a duly authorized representative only if:

     a.       The authorization is made in writing by a principal executive officer or ranking elected official;

     b.       The authorization specified either an individual or a position having responsibility for the overall operation of a regulated facility or activity or an individual or position having overall responsibility for environmental/stormwater matters; and

     c.       The written authorization is submitted to the Director.

3.       Any person signing a document under paragraphs (a) or (b) of this section shall make the following certification:

"I certify, under penalty of law, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations."

Case 3:21-cv-00232-MOC-SCR   Document 1-7   Filed 05/19/21   Page 27 of 41

# PART V    STANDARD CONDITIONS

## SECTION A:  COMPLIANCE AND LIABILITY

**1.    Duty to Comply**

The permittee must comply with all conditions of this permit to the extent authorized by law. Any permit noncompliance constitutes a violation of the Clean Water Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or denial of permit coverage upon renewal application.

(a)    The permittee shall comply with standards or prohibitions established under Section 307(a) of the Clean Water Act for toxic pollutants within the time provided in the regulations that establish these standards or prohibitions, even if the permit has not yet been modified to incorporate the requirement.

(b)    The Clean Water Act provides that any person who violates a permit condition is subject to a civil penalty not to exceed the maximum amounts authorized by Section 309(d) of the Act and the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. §2461 note) as amended by the Debt Collection Improvement Act (31 U.S.C. §3701 note) (currently $37,500 per day for each violation).  Any person who negligently violates any permit condition is subject to criminal penalties of $2,500 to $25,000 per day of violation, or imprisonment for not more than 1 year, or both.  Any person who knowingly violates permit conditions is subject to criminal penalties of $5,000 to $50,000 per day of violation, or imprisonment for not more than 3 years, or both.  Also, any person who violates a permit condition may be assessed an administrative penalty not to exceed $16,000 per violation with the maximum amount not to exceed $177,500. [Ref: Section 309 of the Federal Act 33 USC 1319 and 40 CFR 122.41(a).]

(c)    Under state law, a daily civil penalty of not more than twenty-five thousand dollars ($25,000) per violation may be assessed against any person who violates or fails to act in accordance with the terms, conditions, or requirements of a permit.  [Ref: North Carolina General Statutes 143-215.6A]

(d)    Any person may be assessed an administrative penalty by the Administrator for violating sections 301, 302, 306, 307, 308, 318 or 405 of this Act, or any permit condition or limitation implementing any of such sections in a permit issued under section 402 of this Act. Pursuant to 40 CFR Part 19 and the Act, administrative penalties for Class I violations are not to exceed the maximum amounts authorized by Section 309(g)(2)(A) of the Act and the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. §2461 note) as amended by the Debt Collection Improvement Act (31 U.S.C. §3701 note) (currently $11,000 per violation, with the maximum amount of any Class I penalty assessed not to exceed $27,500). Pursuant to 40 CFR Part 19 and the Act, penalties for Class II violations are not to exceed the maximum amounts authorized by Section 309(g)(2)(B) of the Act and the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. §2461 note) as amended by the Debt Collection Improvement Act (31 U.S.C. §3701 note) (currently $11,000 per day for each day during which the violation continues, with the maximum amount of any Class II penalty not to exceed $137,500).

2. **Duty to Mitigate**

The permittee shall take reasonable steps to minimize or prevent any discharge in violation of this permit that has a reasonable likelihood of adversely affecting human health or the environment.

3. **Civil and Criminal Liability**

Nothing in this permit shall be construed to relieve the permittee from any responsibilities, liabilities, or penalties for noncompliance pursuant to NCGS l43-2l5.3, l43-2l5.6A, 143-215.6B, 143-215.6C or Section 309 of the Federal Act, 33 USC 1319. Furthermore, the permittee is responsible for consequential damages, such as fish kills, even though the responsibility for effective compliance may be temporarily suspended.

4. **Oil and Hazardous Substance Liability**

Nothing in this permit shall be construed to preclude the institution of any legal action or relieve the permittee from any responsibilities, liabilities, or penalties to which the permittee is or may be subject to under NCGS l43-2l5.75 et seq. or Section 311 of the Federal Act, 33 USC 1321. Furthermore, the permittee is responsible for consequential damages, such as fish kills, even though the responsibility for effective compliance may be temporarily suspended.

5. **Property Rights**

The issuance of this permit does not convey any property rights in either real or personal property, or any exclusive privileges, nor does it authorize any injury to private property or any invasion of personal rights, nor any infringement of federal, state or local laws or regulations.

6. **Severability**

The provisions of this permit are severable, and if any provision of this permit, or the application of any provision of this permit to any circumstances, is held invalid, the application of such provision to other circumstances, and the remainder of this permit, shall not be affected thereby.

7. **Duty to Provide Information**

The permittee shall furnish to the Director, within a reasonable time, any information which the Director may request to determine whether cause exists for modifying, revoking and reissuing, or terminating the coverage issued pursuant to this permit or to determine compliance with this permit. The permittee shall also furnish to the Director upon request, copies of records required by this permit.

8. **Penalties for Tampering**

The Clean Water Act provides that any person who falsifies, tampers with, or knowingly renders inaccurate, any monitoring device or method required to be maintained under this permit shall, upon conviction, be punished by a fine of not more than $l0,000 per violation, or by imprisonment for not more than two years per violation, or by both. If a conviction of a person is for a violation committed after a first conviction of such person under this paragraph, punishment is a fine of not more than $20,000 per day of violation, or by imprisonment of not more than 4 years, or both.

**9.      Penalties for Falsification of Reports**

The Clean Water Act provides that any person who knowingly makes any false statement, representation, or certification in any record or other document submitted or required to be maintained under this permit, including monitoring reports or reports of compliance or noncompliance shall, upon conviction, be punished by a fine of not more than $l0,000 per violation, or by imprisonment for not more than two years per violation, or by both.

**10.     Permit Actions**

This permit may be modified, revoked and reissued, or terminated for cause.  The filing of a request by the permittee for a permit modification, revocation and reissuance, or termination, or a notification of planned changes or anticipated noncompliance does not stay any permit condition.

**11.     Duty to Reapply**

The permittee is not authorized to discharge after the expiration date.  To receive automatic authorization to discharge beyond the expiration date, the permittee shall submit a permit renewal application and fees as are required no later than 180 days prior to the expiration date of this permit (date).  Any permittee that has not requested renewal at least 180 days prior to expiration, or any discharge that does not have a permit after the expiration and has not requested renewal at least 180 days prior to expiration, will be subject to enforcement procedures as provided in NCGS 143-215.6 and 33 USC 1251 et seq.  The renewal application shall include a review of the Stormwater Program development and implementation over the life of this permit, the status of programs and a description of further program development to be implemented over the future permitting period.


**SECTION B:  OPERATION AND MAINTENANCE of POLLUTION CONTROLS**

**1.      Proper Operation and Maintenance**

The permittee shall properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are owned and/or operated by the permittee to achieve compliance with the conditions of this permit.  Proper operation and maintenance also includes adequate laboratory controls and appropriate quality assurance procedures. This provision requires the operation of back-up or auxiliary facilities or similar systems that are installed by a permittee only when the operation is necessary to achieve compliance with the conditions of the permit.

**2.      Need to Halt or Reduce not a Defense**

It shall not be a defense for a permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity to maintain compliance with the condition of this permit.

Case 3:21-cv-00232-MOC-SCR   Document 1-7   Filed 05/19/21   Page 30 of 41

**SECTION C: MONITORING AND RECORDS**

**l. Representative Sampling**

Samples collected and measurements taken, as required herein, shall be characteristic of the volume and nature of the permitted discharge. Samples shall be taken on a day and time that is characteristic of the discharge. All samples shall be taken at the monitoring points specified in the Stormwater Management Plan or suitable representative sites and, unless otherwise specified, before the discharge joins or is diluted by any waste stream, body of water, or substance. The Director may request information justifying changes to sampling locations and sampling methods. At a minimum, information on such changes shall be reported in the permittee's annual report. The Director may require that certain changes in the sampling program be submitted for approval prior to implementation of the changes.

**2. Flow Measurements**

Where required, appropriate flow measurement devices and methods consistent with accepted scientific practices shall be selected and used to ensure the accuracy and reliability of measurements of the volume of monitored discharges.

**3. Test Procedures**

Monitoring must be conducted according to laboratory and test procedures approved under NCGS l43-2l5.63 et. seq, and 40 CFR Part 136 and subsequent amendments, unless other test procedures have been specified in the permit.

The Permittee is authorized to use a more current or sensitive (i.e., lower) detection method than the one identified in NCGS l43-2l5.63 et. seq, and 40 CFR 136 for a particular parameter, including but not limited to PCBs (Method 1668B) and mercury (Method 1631E). If used, the permittee shall report using the more current and/or more sensitive method for compliance reporting and monitoring purposes. When no analytical method is approved, the permittee may use any suitable method but must provide a description of the method.

EPA and DEMLR reserve the right to modify the permit in order to require a more sensitive method for measuring compliance with any pollutant contamination levels, consistent with NCGS l43-2l5.63 et. seq, and 40 CFR Part 136, should it become necessary.

**4. Inspection and Entry**

The permittee shall allow the Director, or an authorized representative (including an authorized contractor acting as a representative of the Director), or in the case of a facility which discharges through a municipal separate storm sewer system, an authorized representative of a municipal operator or the separate storm sewer system receiving the discharge, upon the presentation of credentials and other documents as may be required by law, to;

(a) Enter upon the permittee's premises where a regulated facility or activity is located or conducted, or where records must be kept under the conditions of this permit;

(b) Have access to and copy, at reasonable times, any records of the permittee that must be kept under the conditions of this permit;

(c)      Inspect at reasonable times any facilities, equipment (including monitoring and control equipment), practices, or operations <u>of the permittee</u> regulated or required under this permit; and

(d)      Sample or monitor at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the Clean Water Act, any substances or parameters at any location under the control of the permittee.

**5.    Availability of Reports**

Except for data determined to be confidential under NCGS 143-215.3(a)(2) or Section 308 of the Federal Act, 33 USC 1318, all reports prepared in accordance with the terms of this permit shall be available for public inspection at the offices of the Division of Energy, Mineral and Land Resources.  As required by the Act, analytical data shall not be considered confidential. Knowingly making any false statement on any such report may result in the imposition of criminal penalties as provided for in NCGS 143-215.6B or in Section 309 of the Federal Act.

**THIS PAGE INTENTIONALLY BLANK**

## PART VI  LIMITATIONS REOPENER

The issuance of this permit does not prohibit the Director from reopening and modifying the permit, revoking and reissuing the permit, or terminating the permit as allowed by the laws, rules, and regulations contained in Title 40, Code of Federal Regulations, Parts 122 and 123; Title 15A of the North Carolina Administrative Code, Subchapter 02H .0100; and North Carolina General Statute 143-215.1 et. al.

## PART VII  ADMINISTERING AND COMPLIANCE MONITORING FEE REQUIREMENTS

The permittee must pay the administering and compliance monitoring fee within 30 (thirty) days after being billed by the Division.  Failure to pay the fee in a timely manner in accordance with 15A NCAC 02H .0105(b)(4) may cause this Division to initiate action to revoke the permit.

**THIS PAGE INTENTIONALLY BLANK**

# PART VIII     DEFINITIONS

1.  <u>Act</u>

    See Clean Water Act.

2.  <u>Best Management Practice (BMP)</u>

    Measures or practices used to reduce the amount of pollution entering surface waters.  BMPs can be structural or non-structural and may take the form of a process, activity, physical structure or planning.  See also Non-structural BMP and SCM.

3.  <u>Built-upon Area</u>

    "Built-upon area" or "BUA" has the same meaning as in General Statute 143-214.7, that is effective on the date that a project is received by the permittee for post-construction site runoff controls review.

4.  <u>Calculation of Means</u>

    (a)     Arithmetic Mean:  The arithmetic mean of any set of values is the summation of the individual values divided by the number of individual values.

    (b)     Geometric Mean:  The geometric mean of any set of values is the Nth root of the product of the individual values where N is equal to the number of individual values.  The geometric mean is equivalent to the antilog of the arithmetic mean of the logarithms of the individual values.  For purposes of calculating the geometric mean, values of zero (0) shall be considered to be one (l).

    (c)     Weighted by Flow Value:  Weighted by flow value means the summation of each concentration times its respective flow divided by the summation of the respective flows.

5.  <u>Clean Water Act</u>

    The Federal Water Pollution Control Act, also known as the Clean Water Act (CWA), as amended, 33 USC 1251, et. seq.

6.  <u>Common Plan of Development</u>

    "Common plan of development" means a site where multiple separate and distinct development activities may be taking place at different times on different schedules but governed by a single development plan regardless of ownership of the parcels. Information that may be used to determine a "common plan of development" include plats, blueprints, marketing plans, contracts, building permits, public notices or hearings, zoning requests, and infrastructure development plans.

7.  <u>Department (NCDEQ)</u>

    Department means the North Carolina Department of Environmental Quality

8.    Development

     "Development" means any land-disturbing activity that increases the amount of built-upon area or that otherwise decreases the infiltration of precipitation into the soil.

9.    Division (DEMLR)

     The Division of Energy, Mineral and Land Resources; Department of Environmental Quality.

10.   Director

     The Director of the Division of Energy, Mineral and Land Resources, the permit issuing authority.

11.   EMC

     The North Carolina Environmental Management Commission.

12.   Illicit Discharge

     Any discharge to a MS4 that is not composed entirely of stormwater except discharges pursuant to an NPDES permit (other than the NPDES MS4 permit), allowable non-stormwater discharges, and discharges resulting from fire-fighting activities.

13.   Industrial Activity

     For the purposes of this permit, industrial activities shall mean all industrial activities as defined in 40 CFR 122.26.

14.   Large or Medium Municipal Separate Storm Sewer System

     All municipal separate storm sewers that are either:

     (a)     Located in an incorporated place with a population of 100,000 or more as determined by the Decennial Census by the Bureau of Census; or

     (b)     Located in the counties with unincorporated urbanized populations of 100,000 or more, except municipal separate storm sewers that are located in the incorporated places, townships or towns within such counties; or

     (c)     Owned or operated by a municipality other than those described in paragraph (a) or (b) and that are designated by the Director as part of the large or medium separate storm sewer system.

15.   Major Municipal Separate Storm Sewer Outfall (or ``Major MS4 Outfall'')

     Major municipal separate storm sewer outfall (or ``Major MS4 Outfall'') means a municipal separate storm sewer outfall that discharges from a single pipe with an inside diameter of 36 inches or more or its equivalent (discharge from a single conveyance other than circular pipe which is associated with a drainage area of more than 50 acres); or for municipal separate storm

sewers that receive storm water from lands zoned for industrial activity (based on comprehensive zoning plans or the equivalent), an outfall that discharges from a single pipe with an inside diameter of 12 inches or more or from its equivalent (discharge from other than a circular pipe associated with a drainage area of 2 acres or more).

16. <u>Maximum Extent Practicable (MEP)</u>

MEP is defined in the *Federal Register* (U.S. EPA, 1999, p. 68754). This document says that Compliance with the conditions of this MS4 permit and the series of steps associated with identification and implementation of the minimum control measures will satisfy the MEP standard. Minimum control measures are defined in the *Federal Register* as (1) public education and outreach, (2) public participation/involvement, (3) illicit discharge detection and elimination, (4) construction site runoff control, (5) post-construction runoff control, and (6) pollution prevention/good housekeeping.

17. <u>Minimum Design Criteria (MDC)</u>

"Minimum Design Criteria" or "MDC" means the requirements set forth in 15A NCAC 02H .1050 through 15A NCAC 02H .1062 for siting, site preparation, design and construction, and post-construction monitoring and evaluation necessary for the Department to issue stormwater permits that comply with State water quality standards adopted pursuant to General Statute 143-214.1.

18. <u>Municipal Separate Storm Sewer System (MS4)</u>

Pursuant to 40 CFR 122.26(b)(8) means a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, manmade channels, or storm drains):

(a)     Owned or operated by the city or town (created by or pursuant to State law) having jurisdiction over disposal of sewage, industrial wastes, stormwater, or other wastes, including special districts under State law such as a sewer district, flood control district or drainage district, or similar entity, or a designated and approved management agency under Section 208 of the Clean Water Act (CWA) that discharges to waters of the United States or waters of the State.

(b)     Designed or used for collecting or conveying stormwater;

(c)     Which is not a combined sewer; and

(d)     Which is not part of a Publicly Owned Treatment Works (POTW) as defined in 40 CFR 122.2

19. <u>Non-stormwater Discharge Categories</u>

See Part I, Section I of this permit.

20. <u>Non-structural BMP</u>

Non-structural BMPs are preventive actions that involve management and source controls such as: (1) Policies and ordinances that provide requirements and standards to direct growth to

identified areas, protect sensitive areas such as wetlands and riparian areas, maintain and/or increase open space, provide buffers along sensitive water bodies, minimize impervious surfaces, and/or minimize disturbance of soils and vegetation;  (2) policies or ordinances that encourage infill development in higher density urban areas, and areas with existing storm sewer infrastructure;  (3) education programs for developers and the public about minimizing water quality impacts;  (4) other measures such as minimizing the percentage of impervious area after development, use of measures to minimize directly connected impervious areas, and source control measures often thought of as good housekeeping, preventive maintenance and spill prevention.

21.   Outfall

Outfall means a point source as defined by 40 CFR 122.2 at the point where a municipal separate storm sewer discharges to waters of the United States and does not include open conveyances connecting two municipal separate storm sewers, or pipes, tunnels or other conveyances which connect segments of the same stream or other waters of the United States and are used to convey waters of the United States.

22.   Permittee

The owner or operator issued this permit.

23.   Point Source Discharge of Stormwater

Any discernible, confined and discrete conveyance including, but not specifically limited to, any pipe, ditch, channel, tunnel, conduit, well, or discrete fissure from which stormwater is or may be discharged to waters of the state.

24.   Redevelopment

"Redevelopment" means any land-disturbing activity that does not result in a net increase in built-upon area and that provides greater or equal stormwater control than the previous development.

25.   Sensitive Waters

"Sensitive Waters" has the same meaning as in 15A NCAC 02H .0150(6). Sensitive waters include: waters classified as HQW, ORW, SA, Tr, or NSW, waters occupied or designated as critical habitat for aquatic animal species listed as federal threatened or endangered, or impaired waters.

26.   Six Minimum Measures, or Six Minimum Control Measures

As defined in 40 CFR §122.34(b).  They are Public Education and Outreach, Public Involvement/Participation, Illicit Discharge Detection and Elimination, Construction Site Runoff Controls, Post-Construction Runoff Controls, and Pollution Prevention and Good Housekeeping for Municipal Operations.

27. <u>Splash Pad (spray ground)</u>

An outdoor play area with sprinklers, fountains, nozzles, and other devices or structures that spray water.

28. <u>Storm Sewer System</u>

Is a conveyance or system of conveyances which are designed or used to collect or convey stormwater runoff that is not part of a combined sewer system or treatment works. This can include, but is not limited to, streets, catch basins, curbs, gutters, ditches, man-made channels or storm drains that convey stormwater runoff.

29. <u>Stormwater Associated with Industrial Activity</u>

The discharge from any point source which is used for collecting and conveying stormwater and which is directly related to manufacturing, processing or raw material storage areas at an industrial site. Facilities considered to be engaged in "industrial activities" include those activities defined in 40 CFR 122.26(b)(14). The term does not include discharges from facilities or activities excluded from the NPDES program.

30. <u>Stormwater Control Measure (SCM)</u>

As defined in 15A NCAC 02H .1002, also known as Best Management Practice (BMP), a permanent structural device that is designed, constructed and maintained to remove pollutants from stormwater runoff by promoting settling or filtration or mimic the natural hydrologic cycle by promoting infiltration, evapo-transpiration, post-filtration discharge, reuse of stormwater or a combination thereof.

31. <u>Stormwater Management Program (SWMP)</u>

The term Stormwater Management Program (SWMP) refers to the stormwater management program that is required by the Phase I and Phase II regulations to be developed by MS4 permittees.

32. <u>Stormwater Management Plan</u>

The Stormwater Management Plan is the written plan that is used to describe the various control measures and activities the permittee will undertake to implement the stormwater management program. The Stormwater Management Plan is a consolidation of the permittee's relevant ordinances or other regulatory requirements, the description of all programs and procedures (including standard forms to be used for reports and inspections) that will be implemented and enforced to comply with the permit and to document the selection, design, and installation of all stormwater control measures.

33. <u>Stormwater Runoff</u>

The flow of water which results from precipitation and which occurs immediately following rainfall or as a result of snowmelt.

34.  Total Maximum Daily Load (TMDL)

A TMDL is a calculation of the maximum amount of a pollutant that a waterbody can receive and still meet water quality standards, and an allocation of that amount to the pollutant's sources. A TMDL is a detailed water quality assessment that provides the scientific foundation for an implementation plan. The implementation plan outlines the steps necessary to reduce pollutant loads in a certain body of water to restore and maintain water quality standards in all seasons. The Clean Water Act, Section 303, establishes the water quality standards and TMDL programs.