# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:21-cv-00232-MOC-DSC

| | |
|---|---|
| **ILONKA AYLWARD,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )      ORDER<br>)<br>) |
| **CHARLOTTE MECKLENBURG STORM WATER SERVICES, ET AL.,** | )<br>)<br>)<br>) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Temporary Restraining Order and Prohibitive Preliminary Injunction. (Doc. No. 19).

Plaintiff filed her Complaint in this action against Defendants on May 19, 2021, and filed a Motion seeking a Preliminary Injunction and Temporary Restraining Order on July 7, 2021, to prevent Defendants from storing materials and constructions equipment on a slope near Plaintiff's home and grading a portion of that slope.

Upon considering the arguments presented by both parties, this Court denies Plaintiff's request for a temporary restraining order ("TRO") and preliminary injunction. The Court finds that Plaintiff has not presented evidence sufficient to satisfy the four factors of the Winter test to grant the "extraordinary remedy" of a preliminary injunction. All four factors must be satisfied for a TRO and preliminary injunction to be granted. Of those four factors, the Court especially emphasizes that Plaintiff has not presented sufficient evidence that the TRO and preliminary

-1-

injunction are needed to prevent irreparable harm. Plaintiff has not established that the harm she alleges could not be remedied in the ordinary course of litigation, if she were to prevail on the merits. Plaintiff is, of course, free to proceed with her suit to obtain relief. But because she has failed to satisfy the elements of the Winter test, Plaintiff's Motion for a TRO and Preliminary Injunction is **DENIED**.

## I. BACKGROUND

This case concerns the Hinsdale-Tinkerbell Storm Drainage Improvement Project ("Project"), a development project of the City of Charlotte and Charlotte-Mecklenburg Storm Water Services intended to reduce flooding and erosion and improve sanitary sewer infrastructure in an area that includes Plaintiff's home. Plaintiff's home is located at 2813 Hinsdale Street in Charlotte, North Carolina. As part of the Project, Defendant City of Charlotte condemned a portion of Plaintiff's property to obtain a temporary construction easement ("TCE") to facilitate the City's efforts to replace and update a deteriorated storm drainage culvert located near property owned by Plaintiff.

Plaintiff commenced this action on May 19, 2021. She named the City of Charlotte and Charlotte Mecklenburg Stormwater Services as Defendants, as well as Armstrong Glen, P.C. ("Armstrong Glen"), an engineering firm providing engineering services in connection with the Project, and Joseph H. Letourneau, P.E., an engineer at Armstrong Glen. (Doc. No. 12 at 16-19). In her Complaint, Plaintiff alleges violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (more commonly known as the Clean Water Act), and 42 U.S.C. § 1983 (Doc. No. 12 at 2-6). For her Clean Water Act claim, Plaintiff alleges that the Project will lead to erosion of land that will result in water pollution on Plaintiff's land and, ultimately, the Catawba

River. (Doc. No. 12 at 2-4). For her Section 1983 claim, Plaintiff alleges that Armstrong Glen's contract with the City of Charlotte contains a "gag provision," also characterized by plaintiff as a "conspiracy." (Doc. No. 12 at 4-6). Plaintiff alleges that this "gag provision" endangers infrastructure, "illegally restricts free speech," and violates state law as well as public policy. (Doc. No. 12 at 5). Plaintiff also alleges under Section 1983 that Defendants "apply law and policies in a discriminatory way and implement discriminatory policies and practices." (Doc. No. 12 at 6).

## II. LAW GOVERNING TROs AND PRELIMINARY INJUNCTIONS

Applications for issuance of a TRO are governed by FED. R. CIV. P. 65(b). However, "when the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction." Wright and Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.).

In evaluating a request for a TRO, the court considers the same factors applied for a preliminary injunction. Pettis v. Law Office of Hutchens, Senter, Kellam & Pettit, No. 3:13-CV-00147-FDW, 2014 WL 526105, at *1 (W.D.N.C. Feb. 7, 2014) (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999)). In assessing such factors, a plaintiff must demonstrate that: (1) she is likely to succeed on the merits; (2) she will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in her favor; and (4) the injunction is in the public interest. League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 236 (4th Cir. 2014), cert. denied, 135 S. Ct. 1735 (2015) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Preliminary injunctions should not be granted when there is only a "possibility of irreparable harm" because a preliminary injunction is "an

-3-

extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (emphasis added)). "Mere injuries, however substantial … are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

### III.     DISCUSSION

As explained above, a plaintiff is only entitled to a TRO and preliminary injunction if she can establish that she will likely suffer irreparable harm in the absence of such relief. Winter, 555 U.S. at 20. The Court will not grant a preliminary injunction or TRO when the plaintiff's injury could adequately be remedied in the ordinary course of litigation.

In the Memorandum supporting Plaintiff's Motion seeking a TRO and preliminary injunction, Plaintiff asserts that, according to her expert witness's affidavit, "structural damage to [her] house and retaining walls is 'highly likely.'" (Doc. No. 20 at 14) (emphasis in original). Plaintiff also asserts that "Defendant demonstrated reckless disregard for the likelihood of rendering [her] house uninhabitable and sending tons of soils" into waters in the area. Id. These assertions, supported only by reference to Plaintiff's expert affidavit and her own complaint, are the entirety of Plaintiff's argument that she will suffer irreparable harm. Id.

These assertions are unavailing for two reasons. First, Defendants have submitted compelling evidence that Plaintiff substantially overstates the risk of harm in her Memorandum. In reaching his conclusions, Plaintiff's expert appears to have a made assumptions that do not appear to reflect Defendant's actual plan. For instance, Plaintiff's expert assumes that work on

-4-

the Project will disturb the lower retaining wall at Plaintiff's home, that heavy bulldozers will be used to grade the slope, and that work on the Project will kill established vegetation. (Doc. No. 21 at ¶¶ 27, 29, 31, 33). But, as Defendant City of Charlotte's expert attests, Defendants' plans do not include disturbing the lower retaining wall, call for use of a track hoe rather than heavy bulldozers, and involve hydroseeding and erosion control to mitigate erosion. (Doc. No. 28 at 6-7; Doc. No. 28-2 at ¶¶ 15, 16, 28-29). The reliability of the conclusions reached by Plaintiff's expert witness is limited by these faulty assumptions. Given these limitations on the affidavit's reliability and the lack of other evidence to support Plaintiff's claim that there is a likelihood of irreparable harm, the Court finds that Plaintiff has not established the likelihood of irreparable harm as a factual matter.

Second, even if Plaintiff could show a likelihood of harm, Plaintiff would also need to establish that the harm is <u>irreparable</u> to obtain a TRO or preliminary injunction. Apart from a conclusory statement that Plaintiff "is likely to suffer irreparable harm," the section of Plaintiff's Memorandum on irreparable harm does not even attempt an explanation of why the harm she alleges would be <u>irreparable</u>. (Doc. No. 20 at 14-15). Plaintiff has not established why any damage which occurs to her property, even if it is as extensive as she alleges, could not be cured by money damages and subsequent repairs.

In a subsequent section of her brief, Plaintiff expresses the concern that "Defendants are poised to walk away, dumping onto Plaintiff responsibility for the environmental and property damage they will have caused." (Doc. No. 20 at 15). Fortunately for Plaintiff, this is not so. If Defendants do in fact cause "environmental and property damage" in violation of the law, as

Plaintiff asserts, Defendants will not be able to simply "walk away." Plaintiff will still be able to obtain a remedy for such damage in the ordinary course of litigation.

## IV. CONCLUSION

Because Plaintiff has clearly failed to show a likelihood of irreparable harm, Plaintiff cannot satisfy the <u>Winter</u> test, which requires that all four elements of the test be met. Therefore, Plaintiff cannot obtain a TRO or preliminary injunction.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 19) is **DENIED**.

Signed: September 16, 2021

Max O. Cogburn Jr.
United States District Judge