# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:21-cv-232-MOC-DSC

| ILONKA AYLWARD, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| | ) | |
| CITY OF CHARLOTTE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for TRO ("TRO") and Preliminary Injunction. (Doc. No. 77).

Plaintiff filed her Complaint in this action against Defendants on May 19, 2021, (Doc. No. 1), and filed her first Motion seeking a TRO and preliminary injunction on July 7, 2021, (Doc. No. 19), to prevent Defendants from storing materials and constructions equipment on a slope near Plaintiff's home and grading a portion of that slope. The Court denied Plaintiff's motion by order dated September 16, 2021. (Doc. No. 59). In its order, the Court found that Plaintiff was unable to satisfy the Winter test in order to obtain the extraordinary remedy of a TRO or preliminary injunction. (Id.).

Plaintiff has now filed a second motion asking the Court to issue a TRO and preliminary injunction. (Doc. No. 77). Plaintiff now asks the court to issue a TRO and preliminary injunction ordering Defendants to cease certain "blasting operations," make disclosures "regarding blasting

-1-

operation[s]," and "take all measures necessary to remedy the damage caused by blasting." (Id. at 1). However, Plaintiff once again fails to satisfy the Winter test and, thus, the Court cannot grant the relief she seeks. Therefore, Plaintiff's motion will be **DENIED**.

Moreover, it does not appear to the Court based on the existing record that "blasting" has actually occurred as part of Defendants' project. Plaintiff has presented no credible evidence that blasting has occurred, while Defendants have presented credible evidence that a substance known as Dexpan was used to crack and break rock, and that a "Dexpan blowout" occurred. (See Doc. No. 91 at 3; Doc. No. 91-3). The Court has reviewed the video submitted by Plaintiff which appears to depict this event. (Doc. No. 101-1). While it is understandable that an uninformed observer could confuse a "Dexpan blowout" with the use of explosives or blasting agents, this does not mean that Defendants have actually engaged in blasting. Nor does Plaintiff effectively rebut Defendants' and their experts' assertion that blasting did not occur in her Reply. (Doc. No. 100). Thus, a further reason that the Court cannot grant Plaintiff the relief she seeks is that all of her requested relief necessarily assumes Defendants have engaged in blasting—but the evidence before the Court suggests that, in reality, Defendants have not engaged in blasting.

## I. BACKGROUND

This case concerns the Hinsdale-Tinkerbell Storm Drainage Improvement Project ("Project"), a development project of the City of Charlotte and Charlotte-Mecklenburg Storm Water Services intended to reduce flooding and erosion and improve sanitary sewer infrastructure in an area that includes Plaintiff's home. Plaintiff's home is located at 2813 Hinsdale Street in Charlotte, North Carolina. (Doc. No. 21 at ¶ 5). As part of the Project, Defendant City of Charlotte condemned a portion of Plaintiff's property to obtain a temporary construction easement ("TCE")

-2-

Case 3:21-cv-00232-MOC-DSC   Document 106   Filed 09/01/22   Page 2 of 9

to facilitate the City's efforts to replace and update a deteriorated storm drainage culvert located near property owned by Plaintiff. (Doc. No. 28-2 at ¶ 6).

Plaintiff commenced this action on May 19, 2021. (Doc. No. 1). She named the City of Charlotte and Charlotte Mecklenburg Stormwater Services as Defendants, as well as Armstrong Glen, P.C. ("Armstrong Glen"), an engineering firm providing engineering services in connection with the Project, and Joseph H. Letourneau, P.E., an engineer at Armstrong Glen. (Doc. No. 12 at 16–19). Charlotte Mecklenburg Stormwater Services was later terminated as a Defendant because it is not a legal entity capable of being sued. (Doc. No. 69). In her Third Amended Complaint, Plaintiff alleges violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (more commonly known as the Clean Water Act) and constitutional claims under the First and Fourteenth Amendments, brought under the auspices of 42 U.S.C. § 1983. (Doc. No. 95).

Construction related to the Project is now underway. As discussed above, Plaintiff filed this motion on May 12, 2022, seeking a TRO and preliminary injunction ordering Defendants to cease certain "blasting operations," make disclosures "regarding blasting operation[s]," and "take all measures necessary to remedy the damage caused by blasting." (Doc. No. 77 at 1).

## II. LAW GOVERNING TROs AND PRELIMINARY INJUNCTIONS

Applications for issuance of a TRO are governed by FED. R. CIV. P. 65(b). However, "when the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction." Wright and Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.).

In evaluating a request for a TRO, the court considers the same factors applied for a preliminary injunction. Pettis v. Law Office of Hutchens, Senter, Kellam & Pettit, No. 3:13-CV-

-3-

00147-FDW, 2014 WL 526105, at *1 (W.D.N.C. Feb. 7, 2014) (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411 (4th Cir. 1999)). In assessing such factors, a plaintiff must demonstrate that:

(1) she is likely to succeed on the merits;

(2) she will likely suffer irreparable harm absent an injunction;

(3) the balance of hardships weighs in her favor; and

(4) the injunction is in the public interest.

League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 236 (4th Cir. 2014), cert. denied, 135 S. Ct. 1735 (2015) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

Preliminary injunctions should not be granted when there is only a "possibility of irreparable harm" because a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (emphasis added)). "Mere injuries, however substantial … are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

### III.  DISCUSSION

Plaintiff cannot satisfy the Winter test. Indeed, the Court finds that Plaintiff cannot satisfy any factor of the Winter test—and to satisfy the test, she would need to satisfy every factor. The Court will discuss each Winter factor in turn.

Likelihood of success on the merits. Plaintiff is unlikely to succeed on the merits with respect to her allegations of blasting or her broader legal claims. As already explained, it does not appear to the Court that any blasting occurred on Plaintiff's property; rather, it appears that Plaintiff confused a Dexpan blowout with the use of explosive agents. Thus, Plaintiff is unlikely to succeed on the merits of any claim predicated on the occurrence of blasting because the Court finds that such blasting did not, in fact, occur.

Furthermore, many of Plaintiff's allegations in her amended complaint appear to lack merit. Based on a review of the record, the Court finds that Plaintiff's Clean Water Act claims are largely speculative and unsubstantiated. While the City must assuredly comply with the Clean Water Act in construction of infrastructure, Plaintiff puts forward little evidence that the City has failed to do so. For instance, Plaintiff argues that "CWA requires all permit holders to be 'persons'" and that, because the Court held that Charlotte Mecklenburg Stormwater Services is not a legal entity capable of being sued, the permits issued in this case are "void ab initio.' (Doc. No. 95 at 40–41). In support of this proposition, Plaintiff cites 33 U.S.C. § 301(a), a provision of the United States Code that was repealed in 1980. 33 U.S.C. § 301(a), repealed. Pub. L. 96-591, § 8(a), Dec. 24, 1980, 94 Stat. 3435. Plaintiff also cites to two provisions of the Code of Federal Regulations, 33 C.F.R. 325.1(d)(8) and 40 C.F.R. § 122.21, neither of which seem to require that a permitee be a legal entity capable of being sued. In any case, even if the proper permitting party was in fact the City of Charlotte or another entity capable of being sued, the Court finds it is unlikely that this would be grounds to void the entire project. Plaintiff also takes issue with the project plans, for instance arguing that they violate "sound engineering practices and standards" and "fail to tie to [sic] the design to Actual Topography and Soil Conditions of the Site." See, e.g., (Doc. No. 95 at

44–45). But on review of the record, Defendants' project plans appear to comply with the law and Plaintiff appears to be wrong.

Plaintiff's constitutional arguments under Section 1983 fare even worse. Plaintiff claims that the City of Charlotte has imposed a "gag provision" and that this amounts to a violation of the First Amendment. (Doc. No. 95 at 106–08). Plaintiff argues that "there is no legitimate municipal interest in endangering lives and safety of its citizens by maintaining secrecy and this encouraging subpar or illegal engineering and land disturbing activities" and that she is "entitled to injunctive and declaratory relief prohibiting the City from 'purchasing silence' of design professional engaged in municipal construction." (Id.). This argument appears unlikely to succeed. First, "gag order" generally refers to a judicial ruling barring public disclosure of discussion (as by the press) of information related to a case. "Gag order," Merriam-Webster Online Dictionary, accessed August 10, 2022. The alleged contractual provisions hardly amounts to an unconstitutional gag order. Second, Plaintiff presents no evidence whatsoever that this alleged contractual provision is, in fact, "endangering lives and safety of [Charlotte] citizens by maintaining secrecy and this [sic] encouraging subpar or illegal engineering and land disturbing activities." Third, the Court is not aware of any First Amendment doctrine that would authorize the Court to grant declaratory and injunctive relief against the City of Charlotte for the alleged provision. Plaintiff may disagree with this provision as a matter of policy but does not appear remotely close to establishing a cognizable First Amendment claim.

Plaintiff further alleges that Defendants have violated the Equal Protection Clause because she "has been deprived of her protected interest in property." (Doc. No. 95 at 107–08). She claims that the City of Charlotte has applied the power of eminent domain, the City's erosion and

sedimentation control ordinance, and the Clean Water Act "in a discriminatory manner" and that this violates the Equal Protection Clause. (Id.). Plaintiff does not explain who the City is discriminating against, what legally recognized protected class's interests have been prejudiced, or how the City has used these laws in a discriminatory fashion. This argument is speculative to the point of incoherence. It simply does not appear to the Court that it would be possible for Plaintiff to succeed on this argument under existing Fourteenth Amendment doctrine.

To be clear: the Court does not find that these or other arguments raised by Plaintiff are, in fact, meritless. In ruling on a motion for TRO and preliminary injunction, the Court must necessarily make judgments about the merit of legal arguments before the legal process has run its course, and without the benefit of discovery or additional legal argument by the parties. Therefore, these and other arguments raised by Plaintiff may prove to have merit at some later point. But at present, Plaintiff appears very unlikely to succeed on the merits of her claims.

Ultimately, it appears to the Court that Plaintiff simply does not want Defendants' infrastructure project near her home. While the Court is sympathetic with this desire, municipalities must be able to construct necessary infrastructure and, so long as they comply with applicable laws, are legally empowered to do so. Plaintiff's speculative arguments against Defendants are unlikely to succeed and, thus, she cannot satisfy the Winter test.

Likelihood of irreparable harm. Plaintiff's argument that she would suffer irreparable harm does not in any way establish that she would suffer irreparable harm unless the Court grants her desired TRO and preliminary injunction preventing Defendants from conducting "blasting." (Doc. No. 78 at 18–21). First of all, as discussed above, there is no evidence that Defendants actually

engaged or intend to engage in "blasting." Thus, it would be futile for the Court to enjoin Defendants from "blasting," and it certainly would not prevent irreparable harm to Plaintiff.

Plaintiff cites Int'l Union, United Auto., Aerospace and Agricultural Implement Workers of America, AFL-CIO v. Amerace Corp., Inc., 740 F. Supp. 1072, 1086 (D.N.J. 1990) for the proposition that "Congress impliedly has determined that violations of the (non-technical effluent) standards are sufficiently likely to cause irreparable injury." (Id. at 18). But the case does not actually contain this sentence. Plaintiff appears to be referring to the following sentence: "Congress impliedly has determined that violations of the categorical pretreatment standards are sufficiently likely to cause irreparable injury." Int'l Union, 740 F. Supp. at 1086 (emphasis added). In this case, the District Court of New Jersey appears to have been referring to treatment standards applicable to discharge from sewer systems. Plaintiff's insinuation that this applies to water runoff from the Project appears to be incorrect. Plaintiff also cites a Fourth Circuit case for a similar proposition, Friend of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 157 (4th Cir. 2000), but this case is similarly inapposite because it refers to discharge from an industrial copper recycling facility, as its name suggests. Plaintiff correctly argues that environmental harms are often irreparable. (Doc. No. 95 at 19–21). But it is not clear what, if any, environmental harms would be prevented by issuing the requested TRO and preliminary injunction preventing Defendants from conducting blasting, which they do not appear to have done or intend to do.

The balance of hardships. Because there has not been any blasting nor do Defendants plan to blast, the Court finds that Plaintiff will not suffer any hardship from the failure of the Court to grant this TRO and preliminary injunction. While Defendants will also suffer a minimal hardship if ordered to cease "blasting operations" because they are not conducting any such operations, the

Court will not order Defendants to make disclosures "regarding blasting operation[s]" or "take all measures necessary to remedy the damage caused by blasting" because it would create hardship if the Court issued a confusing order requiring them to take actions to remedy alleged blasting which did not actually occur. (Doc. No. 77 at 1).

<u>The public interest</u>. The Court finds that the public interest is best served by allowing Defendants to continue their infrastructure improvements—improvements which appear to the Court to be in the public interest. The Court further finds that the proposed TRO and preliminary injunction would not advance the public interest.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for TRO and Preliminary Injunction, (Doc. No. 77), will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for a TRO and Preliminary Injunction, (Doc. No. 77), is **DENIED**.

Signed: August 31, 2022

Max O. Cogburn Jr
United States District Judge