UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-232-MOC-DSC

| ILONKA AYLWARD, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| | ) |
| CITY OF CHARLOTTE, et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants Armstrong Glen, P.C. and Joseph H. Letourneau, P.E.'s (hereinafter jointly referred to as "Defendants Armstrong/Letourneau") Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 111). For the following reasons, Defendants Armstrong/Letourneau's motion is **GRANTED** in part and **DENIED** in part.

I. BACKGROUND

This case arises out of the Hinsdale-Tinkerbell Storm Drainage Improvement Construction Project (the "Project"), a City of Charlotte development project to address stormwater concerns. (Doc. No. 95 at ¶143). Plaintiff owns property located within the boundaries of the Project and claims the Project violates the Clean Water Act ("CWA") and has disturbed Plaintiff's property. (Doc. No. 95 at ¶14).

Defendant Armstrong Glen, P.C. is the engineering firm of record for the Project. Defendant Joseph H. Letourneau is an engineer for Armstrong Glen, P.C., serving as project

1

manager for the Project. Letourneau's responsibilities included preparing and reviewing the Project's plans and advising the City on its compliance with all applicable laws, including the CWA.

Plaintiff filed this action on May 19, 2021 ("First Complaint"). (Doc. No. 1). Shortly thereafter, Plaintiff filed an Amended Complaint ("Second Complaint"). (Doc. No. 12). The Second Complaint was 204 pages long and named as Defendants the "City of Charlotte," "Charlotte Mecklenburg Stormwater Services," Armstrong Glen, P.C., and Joseph H. Letourneau. This Court dismissed Charlotte Mecklenburg Stormwater Services as a defendant, reminded Plaintiff that Rule of Civil Procedure 8(a)(2) requires "a short and plain statement" of Plaintiff's claims, and ordered Plaintiff to file a more definite statement of what actions or inactions by Armstrong Glen and Joseph Letourneau injured Plaintiff, and how such actions subject these defendants to the CWA. (Doc. No. 69). In response, Plaintiff filed another amended complaint ("Third Complaint"). This Third Complaint is 115 pages–251 pages including exhibits–and incorporates the entire second complaint by Reference. (Doc. No. 95).

Plaintiff's Third Complaint contains forty-one separate causes of action. Thirty-six are CWA causes of action, two are Negligence/Professional Malpractice claims against Defendants Armstrong/Letourneau, one is a § 1983 – First Amendment Claim against the City of Charlotte, one is a § 1983 – Equal Protection Clause of the 14th Amendment Claim against the City of Charlotte, and one is a § 1983 – Substantive Due Process Clause of the 14th Amendment Claim against the City of Charlotte.

Defendants Armstrong/Letourneau seek dismissal of claims against Armstrong Glen, P.C. (Counts 1-13), Doc. No. 95 at ¶¶488–536, and Joseph Letourneau (Counts 14-26), Id. at ¶¶537–583. Counts 1-11 and 14-24 alleged violations of the CWA. Counts 12 and 25 allege conspiracy

to violate the CWA. Lastly, Counts 13 and 26 are claims for negligence.

## II. STANDARD OF REVIEW

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## III. DISCUSSION

### a. Clean Water Act Citizen Suits

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a) (2012). The CWA prohibits "the discharge of any pollutant by any person" into the waters of the United States, unless the discharge is in compliance with the CWA. Id. at § 1311(a).

3

One way to discharge a pollutant in compliance with the CWA is by obtaining a discharge permit. Pollutant dischargers can obtain a discharge permit through the National Pollutant Discharge Elimination System ("NPDES") permit program, administered by the Environmental Protection Agency ("EPA") and authorized states. Id. at § 1342(a)-(b). "NPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 174 (2000). "Noncompliance with a permit constitutes a violation of the Act." Id.; see 40 C.F.R. § 122.41(a) (2015).

Enforcement of the CWA primarily "rests with the state and federal governments...." Piney Run Pres. Ass'n v. Cnty. Comm'rs, 523 F.3d 453, 456 (4th Cir. 2008) (quoting Sierra Club v. Hamilton Cnty. Bd. of Cnty. Comm'rs, 504 F.3d 634, 637 (6th Cir. 2007)). However, to ensure "a second level of enforcement," the CWA includes a citizen suit provision, 33 U.S.C. § 1365.

The CWA's citizen suit provision authorizes a private lawsuit against "any person" who is "alleged to be in violation of ... an effluent standard or limitation" under the statute. 33 U.S.C. § 1365(a)(1). Therefore, the citizen suit provision authorizes citizens "to bring suit against any NPDES permit holder who has allegedly violated its permit." Piney Run, 523 F.3d at 456 (quoting Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 152 (4th Cir. 2000) (en banc)). Citizen suits are meant "to supplement rather than to supplant governmental action," allowing citizens "to abate pollution when the government cannot or will not command compliance." Id. (quoting Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60, 62 (1987)).

### b. Permittee and Non-Permittee Liability under the CWA

Defendants Armstrong/Letourneau argue that only the holder of a discharge permit can be held liable for violations of the effluent standards and limitations established therein, and that any other entity's ability or responsibility to control the discharges is irrelevant. In contrast, Plaintiff asserts that any person with responsibility and control over a discharge can be held liable under the CWA's citizen suit provision. This Court finds Plaintiff's interpretation more persuasive.

"The starting point for interpreting a statute is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). The CWA is broad and imposes liability on "any person" who is alleged to be in violation of permit limitations. Liability is not limited to the permit holder. Instead, "any person" who violates the effluent standards or limitations imposed by the applicable permit can be named a defendant in a citizen suit.

Many courts have determined that a non-permittee can be liable for violating a permit limitation if they have actively directed or caused the unlawful discharges, although some courts have held that liability is limited to a permit holder. See, e.g., Puget Soundkeeper All. v. Cruise Terminals of Am., LLC, 216 F. Supp. 3d 1198, 1206 (W.D. Wash. 2015) (finding that both the Port and its lessee, a cruise terminal operator, could be held liable for unpermitted discharges from the facility); Assateague Coastkeeper v. Alan & Kristin Hudson Farm, 727 F. Supp. 2d 433, 442–43 (D. Md. 2010) (holding that a corporation with extensive control over the permit holder's chicken operations can be liable for violations of the permit limitations); Draper v. H. Roberts Family, LLC, C06-3057CC, 2009 WL 10668404, at **12–13 (N.D. Ga. Mar. 30, 2009) (noting that liability can be imposed on a non-permittee with "day-to-day operational control"); U.S. v.

5

Avatar Holdings, Inc., C93-0281, 1995 WL 871260, at *14 (M.D. Fla. Nov. 22, 1995) (noting that a parent corporation can be liable for its subsidiary's permit violations if the parent engaged in "such actions as directing or causing the violations, or exercising actual and pervasive control of [the subsidiary] to the extent of actually being involved in the daily operations of [the subsidiary]."); United States v. Lambert, 589 F. Supp. 366, 374 (M.D. Fla. 1984) (holding that the wife, as co-owner of the polluted property, was not an appropriate target of civil penalties because she had not "actively directed or caused" the unlawful discharges). But see Black Warrior Riverkeeper v. Thomas, C13-0410AKK, 2013 WL 1663871, at *3 (N.D. Ala. Apr. 12, 2013) (finding that the duty to comply with permit limitations applies only to the permit holder, not to the owner of the facility); Draper, 2009 WL 10668404, at *21 (holding that the contractor who actually discharged pollutants cannot be liable for exceeding permit limits because it was not the permit holder and therefore not subject to the permit's limitations); Sierra Club, Haw. Chapter v. City & Cnty. of Honolulu, 415 F. Supp. 2d 1119, 1128 (D. Haw. 2005) (dismissing claims against director of permit-holding defendant because he was not the permittee and therefore cannot be held liable for its violation). Because this Court agrees with the reasoning of numerous courts, and reads the CWA as imposing broad liability, this Court determines that liability for violations of the CWA's effluent standards and limitations is not limited to permitholders.

### c. Defendants Armstrong/Letourneau are not Liable for CWA Claims as a Permittee or as a Non-Permittee

Plaintiff alleges the Project required permits, permits were improperly issued, and therefore the project was effectively operating without legitimate permits, in violation of the CWA. Moreover, Plaintiff claims that Defendants Armstrong/Letourneau are liable for the

6

alleged violations of effluent standards or limitations because Defendants Armstrong/Letourneau are "operators" of the Project, who have actively directed or caused the alleged unlawful discharges. In response, Defendants contend that all necessary permits for the Project were issued, and, even if the permits were improper, Defendants are not liable because they are not operators.

Regardless of whether the permits were properly issued, Plaintiff has failed to plead sufficient facts to establish a plausible claim that Defendants Armstrong/Letourneau are permittees or operators of the Project. Therefore, Defendants Armstrong/Letourneau cannot be held liable for the alleged CWA violations. The CWA defines "owner or operator" as "any person owning or operating" a facility. 33 U.S.C. § 1321(a)(6) (1986). Although case law specifically defining "operator" under the CWA is sparse at best, two cases help guide this Court's analysis. Draper v. H. Roberts Fam., LLC, No. 1:06-CV-3057-CC, 2009 WL 10668404, at *20 (N.D. Ga. Mar. 30, 2009) defines an operator as "the entity that has day-to-day operational control" of a discharge source. Congruently, Apex Oil Co. v. United States, concluded an entity is an operator where it has the power or capacity to (i) make timely discovery of discharges, (ii) direct the activities of persons who control the mechanisms causing the pollution, and (iii) prevent and abate damage. 530 F.2d 1291, 1293 (8th Cir. 1976), cert. denied, 429 U.S. 827, 1293 (1976) (quoting United States v. Mobil Oil Corp., 464 F.2d 1124, 1127 (5th Cir. 1972)). Both tests emphasize direct control over a project and the authority to directly order or abate acts of pollution.

Beyond conclusory statements, Plaintiff has failed to offer factual grounding for the assertion that Defendants Armstrong/Letourneau met the requisite control to qualify as operators. Plaintiff has not provided facts to support her assertions that Defendants Armstrong/Letourneau

7

controlled the day-to-day operations of the Project. Moreover, Plaintiff has not provided facts that would support a conclusion that Defendants Armstrong/Letourneau were in a position to: discover discharges, direct activity of person controlling discharges, or abate the damage of alleged discharges. The Armstrong Glen contract demonstrates that Armstrong Glen/Engineer Letourneau were hired to provide consulting services and did not directly control the execution of the Project, because Armstrong Glen/Engineer Letourneau decisions were subject to City approval. Indeed, the contract repeatedly emphasizes that Armstrong Glen/Engineer Letourneau decisions were subject to the City's approval. See, e.g., Doc. No. 1 Ex. 3 at p.4 (stipulating engineer's responsibility to "Serve as City's design professional for the Project as directed by the City's Project Manager"), p.5 ("No changes in Engineer's key personnel shall be made without prior written approval of the City."), p.10 ("Any work performed without prior written approval shall be at the Engineer's expense."), p.13 ("[T]he Engineer shall submit a written Quality Control Program, to address all quality assurance/quality control issues in connection with the Project, for review and approval by the City's Project Manager."). Armstrong/Letourneau's deferential role is stipulated in their contractual obligation to "assist the City in obtaining required approval from such authorities" rather than obtaining the approval itself. (Doc. No. 1, Ex. 3 at 4). Plaintiff's own interactions with Defendants Armstrong/Letourneau underscores this point. Plaintiff's complaint alleges that "[w]hen Plaintiff directed her questions to Mr. Letourneau, P.E., the Stormwater staff interjected and made it impossible for Mr. Letourneau to respond, answering for him." (Doc. No. 12 at ¶350). And when Plaintiff did ultimately meet with Defendant Letourneau, the City Engineer was present and "shut down the conversation." (Id. at ¶351). According to Plaintiff's complaint, Defendant Letourneau himself clarified the limits of Armstrong Glen's authority, responding to Plaintiff's concerns that "Armstrong Glen did not

make design decisions of this magnitude, but, instead, only 'followed client's orders.'" (Id. at ¶354). Plaintiff has made inferences and conclusions which suggest Armstrong/Letourneau took a much more unconstrained post; however, these assertions lack factual substantiation and cannot be accepted.

### d. Remaining Claims Against Armstrong/Letourneau

In addition to alleging that Defendants Armstrong/Letourneau violated the CWA, Plaintiff's Third Complaint asserts that Defendants Armstrong/Letourneau conspired to violate the CWA, that Defendants Armstrong/Letourneau engaged in negligence and/or malpractice that has damaged the structural stability of Plaintiff's real property.

Plaintiff's conspiracy claim must be dismissed. Because Plaintiff has not pled any plausible underlying violation of the CWA by Defendants Armstrong/Letourneau, there is no basis for a conspiracy claim. See Evans v. Star GMC Sales & Serv., Inc., 268 N.C. 544, 547 (1966) ("There is no such thing as a civil action for conspiracy"); Shope v. Boyer, 268 N.C. 401, 405 (1966) ("In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts."). Therefore, Plaintiff's conspiracy causes of action against Defendants Armstrong/Letourneau must be dismissed.

Plaintiff's negligence/malpractice claims were first introduced in Plaintiff's Second Complaint. (Doc. No. 12 ¶¶900–06). This Court finds that Plaintiff has adequately pled sufficient facts to establish a plausible claim that Defendants were negligent, and this negligence resulted in damage to Plaintiff's real property.

### IV. CONCLUSION

Because Plaintiff's complaint fails to demonstrate that Armstrong Glen/Engineer Letourneau was the permittee of the project or the operator of the project–actively directing or

9

causing the alleged unlawful discharges–Plaintiff's claims of CWA violations and conspiracy to violate the CWA against Armstrong Glen/Engineer Letourneau must be dismissed from this case. However, Plaintiff's negligence claims are not dismissed.

## **ORDER**

**IT IS THEREFORE ORDERED** that Defendants Armstrong/Letourneau's Motion to Dismiss, Doc. No. 111, is **GRANTED** in part and **DENIED** in part. In accordance with this order, Plaintiff's claims against Defendants Armstrong/Letourneau of CWA violations and conspiracy to violate the CWA are dismissed.

Signed: April 26, 2023

Max O. Cogburn Jr
United States District Judge